| | |
|---|---|
| 1 | KHAI LEQUANG (SBN 202922)<br>klequang@orrick.com |
| 2 | MELANIE D. PHILLIPS (SBN 245584)<br>mphillips@orrick.com |
| 3 | ORRICK, HERRINGTON & SUTCLIFFE LLP<br>777 South Figueroa Street |
| 4 | Suite 3200<br>Los Angeles, California 90017 |
| 5 | Telephone: 213-629-2020<br>Facsimile: 213-612-2499 |
| 6 | |
| 7 | STEPHEN G. FORESTA (*pro hac vice* to be filed)<br>sforesta@orrick.com |
| 8 | PHILIPP SMAYLOVSKY(*pro hac vice* to be filed)<br>psmaylovsky@orrick.com |
| 9 | ORRICK, HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street |
| 10 | New York, New York 10019<br>Telephone: 212-506-5000 |
| 11 | Facsimile: 212-506-5151 |

FILED
CLERK, U.S. DISTRICT COURT

APR – 6 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

Attorneys for Plaintiff
U.S. BANK NATIONAL ASSOCIATION, AS
SECURITIES INTERMEDIARY FOR LIMA
ACQUISITION LP

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, a national association, as securities intermediary for LIMA ACQUISITION LP,<br><br>Plaintiff,<br><br>v.<br><br>PHL VARIABLE INSURANCE COMPANY, a Connecticut corporation,<br><br>Defendant. | Case No. **CV12 03046-RGK MRWx**<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT;**<br>2. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; AND**<br>3. **UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

1    Plaintiff U.S. Bank National Association, as securities intermediary for Lima

2   Acquisition LP ("Plaintiff"), hereby files this complaint against defendant PHL

3   Variable Insurance Company ("Phoenix" or "Defendant"), and alleges as follows:

4                              **NATURE OF THE ACTION**

5        1.    Plaintiff brings this action seeking compensatory and punitive

6   damages and equitable relief based on Phoenix's failure and refusal to pay the death

7   benefit due under two $10 million dollar life insurance policies insuring the life of

8   Ms. Jane Doe (the "Doe Policies" or "Policies").[1]

9        2.    Phoenix issued the Doe Policies more than six years ago, and since

10  issuing the Policies, Phoenix has received over $2,515,400 in premiums paid to

11  keep the Policies in force.  Ms. Doe passed away on January 28, 2012.  Shortly

12  thereafter, Plaintiff, as the current owner of the Policies, timely submitted a proof of

13  claim to Phoenix seeking payment of the death benefits under the Policies.

14  Phoenix, however, has failed and refused to pay the death benefits and has failed to

15  provide any justification (much less a valid one) for its failure and refusal to pay.

16  Payment of the death benefits is now due and owing.

17       3.    Upon information and belief, Phoenix has deliberately failed and

18  refused to pay this claim, along with claims submitted on a number of other policies

19  owned by Plaintiff, in retaliation for Plaintiff filing a lawsuit against Phoenix,

20  alleging that Phoenix unlawfully raised the cost of insurance rates on many of

21  Plaintiff's and other policyholders' policies.  Plaintiff filed that lawsuit, *U.S. Bank*

22  *National Association v. PHL Variable Insurance Company*, Case No. 2:11-cv-

23  09517-OD (RZx) (the "COI Action"), in the Central District of California on

24  November 16, 2011.

25       4.    Before Plaintiff filed the COI Action, Phoenix promptly paid the death

26  benefit on a claim under one of Plaintiff's other policies, but since Plaintiff filed the

27

28  [1] For privacy reasons, Plaintiff has substituted "Jane Doe" for the name of the actual insured.

- 1 -

1  COI Action, Phoenix has not paid any of Plaintiff's death benefit claims. Plaintiff

2  has thus been forced to file two other lawsuits in addition to this one seeking

3  payment under other policies whose death benefits Phoenix has failed to pay. In

4  other words, while the rest of the life insurance industry, on average, denies less

5  than 2% of all death benefit claims, Phoenix has failed to pay 100% of Plaintiff's

6  death benefit claims submitted since the COI Action was filed.

7        5.      By improperly refusing to pay the death benefits on the Doe Policies,

8  Phoenix has forced Plaintiff to incur the substantial expense and delay of litigation

9  in order to obtain the benefits of the Policies, even after Phoenix has collected

10  premiums on them for over six years. Phoenix's misconduct in refusing to pay the

11  death benefits after collecting premiums for six years constitutes not only express

12  breaches of the Policies, but bad faith. Plaintiff therefore seeks compensatory and

13  punitive damages, as well as equitable relief.

14  **PARTIES**

15        6.      Plaintiff U.S. Bank National Association is a national banking

16  association with its principal place of business in Ohio, and is the securities

17  intermediary for Lima Acquisition LP.

18        7.      Upon information and belief, defendant Phoenix is a Connecticut

19  corporation with its principal place of business and nerve center in Hartford,

20  Connecticut, and Phoenix is authorized to do business in the State of California and

21  regularly conducts its business in the State of California, including within this

22  judicial district.

23  **JURISDICTION AND VENUE**

24        8.      The Court has jurisdiction over this action pursuant to 28 U.S.C.

25  § 1332(a)(2) because the parties are citizens of different states, and the amount in

26  controversy exceeds $75,000, exclusive of interest and costs.

27        9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) and

28  (a)(2) because Defendant resides in this judicial district, and a substantial part of the

COMPLAINT

1    events giving rise to the claims occurred in this judicial district, including issuance
2    of the Doe Policies in California to a trust that resided within this judicial district.

3                              **FACTUAL ALLEGATIONS**

4         10.    In 2006, Phoenix issued Policy No. 97514670 (the "Doe Policy 1")
5    and Policy No. 97514671 (the "Doe Policy 2"), each with a face value of
6    $10,000,000 and each with an Issue Date and Policy Date of December 28, 2005.
7    Copies of the Doe Policies are attached hereto as <u>Exhibit 1</u> and <u>Exhibit 2</u>.[2] The
8    original owner of the Doe Policies was the Jane Doe Life Insurance Trust #2006[3]
9    (the "Doe Trust" or "Trust"), which was also the original beneficiary of the
10   Policies. The original beneficiary of the Doe Trust was the Doe Family Irrevocable
11   Trust (the "Doe Family Trust"). The original trustee of the Doe Trust was Wells
12   Fargo Bank, N.A. The issue state of the Policies is California.

13        11.    California Insurance Code section 10113.5 states that "[a]n individual
14   life insurance policy delivered or issued for delivery in this state shall contain a
15   provision that it is incontestable after it has been in force, during the lifetime of the
16   insured, for a period of not more than two years after its date of issue." The
17   Policies also state: "We cannot contest the validity of the original face amount of
18   this policy after it has been in effect during the Insured's lifetime for two years
19   from the Policy Date (or two years from any reinstatement)." Policies, p. 3 (Exhibit
20   1 and Exhibit 2).

21        12.    The Doe Policies were acquired by Plaintiff after the expiration of the
22   contestability period, and Plaintiff thereafter continued to make all premium
23   payments on the Policies.

24        13.    From the time the Doe Policies were issued effective December 28,
25   2005 and until the Policies matured, all of the premiums that were due under the
26

27   [2] Some of the policy information has been redacted for privacy reasons.
28   [3] As noted above, the true name of the insured has been substituted with "Jane
     Doe," including within the name of the Trust.

COMPLAINT

1  Doe Policies were paid. Indeed, throughout the contestability period, and after,

2  Phoenix continued to accept premiums on the Policies, including over $1.6 million

3  in premiums that were paid after the Policies became incontestable. In total,

4  Phoenix received $2,515,400 in premiums on the Policies.

5       14.    Additionally, on August 3, 2010, well after the contestability period,

6  when Phoenix advised Plaintiff that it had recorded changes of the owners and

7  beneficiaries under the Policies, Phoenix did not raise any questions or concerns

8  about the Policies. Also, on November 4, 2010, Phoenix provided Verifications of

9  Coverage for the Policies, and again did not raise any questions about the Policies

10  or indicate there were any issues with them.

11       15.    Ms. Doe died on January 28, 2012, while both the Policies were in

12  force. Upon information and belief, Phoenix became aware of Ms. Doe's death

13  shortly thereafter.

14       16.    On February 23, 2012, Plaintiff submitted a proof of claim to Phoenix

15  requesting payment of the death benefit under the Doe Policies.

16       17.    The Policies state: "Upon receipt by Us of Due Proof of Death that the

17  Insured died while this policy is In Force, We will pay the death proceeds of this

18  policy." Policies, p. 13 (Exhibit 1 and Exhibit 2). Because Plaintiff had provided

19  Phoenix with proof of Jane Doe's death while the Policies were in force, Phoenix

20  has no basis, and it has provided no basis, for failing and refusing to pay the death

21  benefits under the Policies.

22       18.    California Code of Regulations, Title 10, section 2695.7(b) also states:

23  "Upon receiving proof of claim, every insurer . . . shall immediately, but in no

24  event more than forty (40) calendar days later, accept or deny the claim, in whole or

25  in part. . . ." Subsection (1) further states:

26            Where an insurer denies or rejects a first party claim, in
           whole or in part, it shall do so in writing and shall

27            provide the claimant a statement listing all bases for such
           rejection or denial and the factual and legal bases for

28            each reason given for such rejection or denial which is

then within the insurer's knowledge.  Where an insurer's denial of a first party claim, in whole or in part, is based on a specific statute, applicable law or policy provision, condition or exclusion, the written denial shall include reference thereto and provide an explanation of the application of the statute, applicable law or provision, conditions or exclusion to the claim. . . .

19.   It has been more than 40 calendar days since Plaintiff filed the proof of claim on February 23, 2012, and Plaintiff has not received any notice that complies with section 2695.7(b).

20.   As of the date hereof, Phoenix still has failed and refused to pay the death benefits under the Doe Policies.

## FIRST CAUSE OF ACTION

### For Breach of Contract (Express)

21.   Plaintiff realleges the allegations contained in paragraphs 1 through 20.

22.   The Doe Policies are binding and enforceable contracts.

23.   Defendant breached the Policies by failing and refusing to pay the death benefits due under the Policies.

24.   Plaintiff has performed all of its obligations under the Policies.

25.   As a direct and proximate cause of Defendant's material breaches of the Policies, Plaintiff has been damaged as alleged herein in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### For Breach of Contract (Bad Faith)

26.   Plaintiff realleges the allegations contained in paragraphs 1 through 20.

27.   The Doe Policies are binding and enforceable contracts.

28.   The Doe Policies include an implied covenant that Defendant will act in good faith and deal fairly with Plaintiff.

- - 5 - -

COMPLAINT

29.     Defendant breached the implied covenant of good faith and fair dealing by, among other things, failing and refusing to pay the death benefits due under the Doe Policies, failing and refusing to provide any legal or contractual basis for its failure and refusal to pay the death benefits, and deliberately refusing and delaying the payment of the death benefits in retaliation for Plaintiff filing the COI Action.

30.     As a direct and proximate cause of Defendant's breaches of the implied covenant of good faith and fair dealing, Plaintiff has been damaged as alleged herein in an amount to be proven at trial.

31.     Furthermore, because Defendant acted with a conscious disregard of Plaintiff's rights, and its actions constitute oppression, fraud, or malice under Civil Code section 3294, Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION

### For Unjust Enrichment

32.     Plaintiff realleges the allegations contained in paragraphs 1 through 20.

33.     The premiums under the Doe Policies were fully paid to Defendant, by Plaintiff and prior owners of the Policies, through the maturation of the Policies.

34.     Defendant has retained these premium payments and has refused to pay the benefits due under the Policies.

35.     Defendant's retention of the premiums and refusal to pay the benefits under the Policies has unjustly enriched Defendant at Plaintiff's expense.

36.     Accordingly, Plaintiff is entitled to an order requiring Defendant to pay the benefits due under the Policies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

### On the First Cause of Action

1.     For damages in an amount to be determined at trial;

COMPLAINT

2.    For an award of pre-judgment and post-judgment interest;

3.    For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by law; and

4.    For such other and further relief as the Court may deem proper.

### On the Second Cause of Action

1.    For damages in an amount to be determined at trial;

2.    For an award of pre-judgment and post-judgment interest;

3.    For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by law;

4.    For punitive damages; and

5.    For such other and further relief as the Court may deem proper.

### On the Third Cause of Action

1.    For an order requiring Defendant to pay the benefits due under the Policies;

2.    For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by law; and

3.    For such other and further relief as the Court may deem proper.

Dated:       April 6, 2012                    Orrick, Herrington & Sutcliffe LLP

By: _____ for

KHAI LEQUANG
Attorneys for Plaintiff
U.S. BANK NATIONAL
ASSOCIATION, AS SECURITIES
INTERMEDIARY FOR LIMA
ACQUISITION LP

COMPLAINT

1    **DEMAND FOR JURY TRIAL**

2    Plaintiff hereby demands a jury trial on all issues so triable.

3

4    Dated:        April 6, 2012                    Orrick, Herrington & Sutcliffe LLP

5

6    By:_____

7                                          KHAI LEQUANG
                                        Attorneys for Plaintiff
8                                       U.S. BANK NATIONAL
                                        ASSOCIATION, AS SECURITIES
9                                       INTERMEDIARY FOR LIMA
                                        ACQUISITION LP

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- - 8 - -

COMPLAINT

# EXHIBIT 1

**Document Cover sheet**

Original 





EXHIBIT 1 - PAGE 9

## PHL Variable Insurance Company

**Insured** ███████████████

**Age & Sex**  74 FEMALE

**Policy Number** 97514670

**Face Amount** $10,000,000.00

**Policy Date** DECEMBER 28, 2005

Dear Policyowner:

We agree to pay the benefits of this policy in accordance with its provisions. For service or information on this policy, contract the agent who sold the policy, any of Our agency offices, Our Home Office or Our Customer Service Center.

YOU HAVE A RIGHT TO RETURN THIS POLICY. If for any reason You are not satisfied with this policy, You may return it at any time within 30 days after You receive it to either the agent through whom it was purchased or to Us at Our Main Administrative Office at the following address:

> PHL Variable Insurance Company
> Variable and Universal Life Administration
> P.O. Box 8027
> Boston, MA 02266-8027
> Telephone (800) 541-0171

If returned, the policy will be considered void from the beginning and any premium paid will be refunded to You less any partial withdrawals or any loans taken under the policy.

Signed for PHL Variable Insurance Company at its Home Office, One American Row, Hartford, Connecticut 06115.

Sincerely yours,

PHL Variable Insurance Company

*John H. Beers*

Secretary

*Dona D. Young*

Chairman, President
and Chief Executive Officer

**FLEXIBLE PREMIUM LIFE INSURANCE POLICY**
**Death benefit payable if Insured dies while the Policy is In Force**
**Not Eligible for Annual Dividends**

# SCHEDULE PAGE

The specifications shown below are those in effect initially. They may later be changed for reasons as stated in this policy. Coverage may end if premiums paid are not enough to continue coverage.

### BASIC INFORMATION

**POLICY NUMBER:**          97514670

**POLICY DATE:**            DECEMBER 28, 2005

**FACE AMOUNT:**            $10,000,000.00

**DEATH BENEFIT OPTION:**   A

**OWNER:**                  OWNER AS STATED ON THE APPLICATION UNLESS LATER CHANGED.

**BENEFICIARY:**            AS STATED ON THE APPLICATION UNLESS LATER CHANGED.

### INSURED

| INSURED | ISSUE AGE & SEX | | RISK CLASSIFICATION |
|---|---|---|---|
| ██████████ | 74 | FEMALE | NON-SMOKER |

### PREMIUMS

**ISSUE PREMIUM:**          $192,647.00

**SUBSEQUENT PLANNED ANNUAL PREMIUM:**          $0.00

**TOTAL PREMIUM LIMIT:**    GREATER OF  $5,843,937.56  AND RESULT OF    $765,094.43 MULTIPLIED BY THE NUMBER OF ELAPSED POLICY YEARS (OR FRACTION THEREOF) AFTER DECEMBER 28, 2005

The limit may decrease when monthly charges for any rider or any other monthly charges cease, and may be exceeded if additional premium is needed to prevent policy lapse.

**PREMIUM DUE DATES:**     The amount and time of premium payments following the Policy Date are flexible. Subsequent planned premiums are payable on the THIRTIETH day of each  DECEMBER   thereafter until the Death of the Insured, but not beyond DECEMBER 28, 2031 .

**POLICY VALUE BENCHMARK AMOUNT:**          $8,800,000.00          (See Part 5)

U606

# SCHEDULE PAGE
## CONTINUED

POLICY NUMBER:          97514670

### POLICY CHARGES

SALES CHARGE:        10% of the first $450,000.00    of premium paid in the
first policy year. 5% of any premium paid in excess of
$450,000.00     in the first policy year.
5% of all premiums  paid in policy years 2+.

MONTHLY DEDUCTION:    See Part 5, "Monthly Deduction".  Includes cost of insurance, any
rider charges, any flat extra mortality charges, and monthly
service and expense charges.

MONTHLY SERVICE CHARGE:   $3.50     Guaranteed not to exceed $7.00.

MONTHLY EXPENSE CHARGE:   $50.00 deductible monthly during the first Policy Year.

PARTIAL WITHDRAWAL FEE FOR EACH WITHDRAWAL:  $25.00 (in addition to a partial
Surrender Charge).

SURRENDER CHARGE:      See table on next page.

We will not charge any Policy charges after the Policy Anniversary which follows the Insured's 100th
Birthday.

### OTHER RATES

GUARANTEED MINIMUM INTEREST RATE:  4%.

### LIMITATIONS

MINIMUM LOAN AMOUNT:     $100

PARTIAL WITHDRAWALS:     A Partial Withdrawal will not be permitted in an amount

- less than $500.00;

- which would reduce the Surrender Value to $0.00; or

- which would reduce the face amount below $250,000.

U606 CA

# SCHEDULE PAGE
## (CONTINUED)

POLICY NUMBER:    97514670

### TABLE OF SURRENDER CHARGES

For an explanation of this table, see section entitled "Surrender Value" in Part 5.  The charges shown in this table are stated as of the beginning of the Policy Year indicated. The charge will be level for the first 10 Policy Years and will be prorated on an annual basis beginning in Policy Year 11, unless limited by legal maximums.  In all Policy Years after the 20th policy year, the Surrender Charge is zero.

| POLICY YEAR | CHARGE PER $1,000 OF FACE AMOUNT |
|---|---|
| 1 | 57.6900 |
| 2 | 55.2198 |
| 3 | 52.7915 |
| 4 | 50.4081 |
| 5 | 48.0667 |
| 6 | 45.7623 |
| 7 | 43.4941 |
| 8 | 41.2687 |
| 9 | 39.0973 |
| 10 | 36.9954 |
| 11 | 34.9795 |
| 12 | 33.0540 |
| 13 | 31.2199 |
| 14 | 22.4250 |
| 15 | 10.7250 |
| 16 | 0.0000 |
| 17 | 0.0000 |
| 18 | 0.0000 |
| 19 | 0.0000 |
| 20 | 0.0000 |
| 20+ | 0.0000 |

## SCHEDULE PAGES (CONTINUED)

POLICY NUMBER:     97514670

### TABLE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES
### PER $1000 OF NET AMOUNT AT RISK
### BASED ON 1980 CSO MORTALITY TABLE

| POLICY YEAR | MONTHLY RATE | POLICY YEAR | MONTHLY RATE | POLICY YEAR | MONTHLY RATE |
|---|---|---|---|---|---|
| 01 | 2.75170 | 10 | 7.64670 | 19 | 19.05000 |
| 02 | 3.11000 | 11 | 8.58580 | 20 | 20.95000 |
| 03 | 3.50330 | 12 | 9.61500 | 21 | 23.27580 |
| 04 | 3.92580 | 13 | 10.71500 | 22 | 26.44330 |
| 05 | 4.37750 | 14 | 11.89250 | 23 | 31.31170 |
| 06 | 4.87080 | 15 | 13.13420 | 24 | 39.58080 |
| 07 | 5.42670 | 16 | 14.45920 | 25 | 54.65420 |
| 08 | 6.06330 | 17 | 15.86580 | 26 | 83.33330 |
| 09 | 6.79920 | 18 | 17.38170 | | |

Basis of Calculations:   1980 Commissioner's Standard Ordinary Mortality Smoker/Nonsmoker Distinct Table for each insured's sex and risk class, age nearest birthday, and 4% effective annual interest rate.

Monthly Factor used in determining Cost of Insurance:   1.0032737 (SEE PART 5)

U606

EXHIBIT 1 - PAGE 15

# SCHEDULE PAGE
## (CONTINUED)

POLICY NUMBER:     97514670

## TABLE OF FACE AMOUNTS OF INSURANCE

ISSUE DATE                                          FACE AMOUNT
DECEMBER 28, 2005                                  $10,000,000.00

## RIDERS AND RIDER BENEFITS

| RIDER DESCRIPTION | RIDER DATE OF ISSUE | AMOUNT | RIDER TERMINATION DATE | MONTHLY CHARGE |
|---|---|---|---|---|
| UR11   LIVING BENEFIT RIDER | 12/28/2005 | | | NONE |
| UR69 - AGE 100+ | 12/28/2005 | NOT APPLICABLE | NONE | $0.00 |
| UR77 - EXCHANGE OF INSURED OPTION | 12/28/2005 - EXCHANGE OPTION RIDER | $0.00 | 12/28/2031 | $0 |
| UR73 - LIFEPLAN OPTIONS RIDER | 12/28/2005 | NOT APPLICABLE | NONE | $0.00 |

## BRIEF SUMMARY OF MAIN PROVISIONS

This is only a summary to help You understand the basics of Your policy. The policy provisions spell out the full details of the rights and obligations of the parties to this policy. The policy provisions and not this brief summary are binding on Us. We will pay the benefits of this policy as set forth on the policy Schedule Pages.

There are two Death Benefit Options to choose from, as described in Part 7. Option A is the Face Amount. Option B is the Face Amount plus Policy Value. Under either Option, the Death Benefit must be at least the Minimum Death Benefit as described in Part 7.

The premiums You pay are added to the Policy Value after We deduct any applicable premium expense charges. We make a monthly deduction from the Policy Value to pay the cost of insurance, the cost of any additional benefit riders and certain monthly charges. We determine cost of insurance rates from time to time, with the guarantee that they will never be higher than the maximum provided on the Schedule Pages. The Policy Value is credited with interest at a current rate which We set from time to time but which will not be less per year than the Guaranteed Minimum Interest Rate shown on the Schedule Pages.

The Subsequent Planned Premium shown on the Schedule Pages is the premium You selected in Your application and is the basis for the Policy Summary delivered with this policy. However, You may generally pay premiums when and in the amount You choose provided sufficient premium is paid to maintain the policy In Force. The amount and timing of premium payments will affect the accumulation of Policy Value.

This policy gives You a number of other options. Under stated conditions, You may change the Death Benefit Option, withdraw part of the Surrender Value or surrender the policy for its full Surrender Value. The Surrender Value is based on the Policy Value, minus any applicable Surrender Charges, unpaid issue charges, loans and loan interest.

We pay the insurance proceeds, as described in Part 3, to the beneficiary when We receive due proof that the Insured's death has occurred while this policy is In Force.

We pay the Surrender Value, as described in Part 5, to You if the Insured is living on the surrender date and this policy is then In Force.

You may change the premiums and Death Benefit Option, subject to Our approval. Certain changes may require evidence of insurability.

See the policy provisions for details.

**READ YOUR POLICY CAREFULLY. IT IS A CONTRACT BETWEEN YOU AND US.**

U606

EXHIBIT 1 - PAGE 16

# TABLE OF CONTENTS

SCHEDULE PAGE

BRIEF SUMMARY OF MAIN PROVISIONS

PART1: DEFINITIONS ........................................ 1

PART2: GENERAL PROVISIONS ........................ 2
    Effective Date of Insurance .......................... 2
    The Policy and Application .......................... 2
    Not Eligible for Annual Dividends ............ 2
    Revised Schedule Pages ............................. 2
    Age ................................................................. 3
    Misstatement of Age or Sex ...................... 3
    Contestability .............................................. 3
    Insurability Requirements After Issue .... 3
    Suicide Exclusion ....................................... 4
    Termination .................................................. 4
    Minimum Policy Values .............................. 4

PART 3: OWNER, COLLATERAL
ASSIGNMENT, BENEFICIARY ....................... 4
    Owner ........................................................... 4
    Rights of Owner .......................................... 4
    Collateral Assignment ............................... 5
    Beneficiary ................................................... 5
    How to Change the Beneficiary ............... 6

PART 4: PREMIUMS ......................................... 6
    Payments ..................................................... 6
    Total Premium Limit ................................... 6
    Grace Period and Lapse ............................. 7
    Reinstatement .............................................. 7

PART 5: POLICY VALUES ................................ 8
    Basics of Calculations ............................... 8
    Policy Value ................................................. 8
    Interest Rate ................................................ 9
    Benchmark Interest Bonus ........................ 9
    Monthly Deduction ..................................... 10
    Cost of Insurance ....................................... 10
    Cost of Insurance Rates ............................ 10
    Surrender Value .......................................... 11
    Partial Withdrawals .................................... 11

PART 6: POLICY LOANS ................................ 12
    When Available ........................................... 12
    Amount Available ........................................ 12
    Loan Interest .............................................. 12
    Debt ............................................................. 13
    Repayment .................................................. 13

PART 7: INSURANCE COVERAGE
PROVISIONS ................................................. 13
    Death Proceeds .......................................... 13
    Interest on Insurance Proceeds ............... 14
    Death Benefit .............................................. 14
    Minimum Death Benefit ............................. 14
    Death Benefit Following Insured's
        Age 100 ................................................... 14
    Change in Death Benefit Option ............. 15
    Request for a Decrease in Face
        Amount .................................................... 15

PART 8: MISCELLANEOUS
PROVISIONS ................................................. 15
    Annual Report ............................................. 16
    Projection of Benefits and Values ........... 16
    Notices by Us .............................................. 16
    Deferment of Certain Payments .............. 16
    Claims of Creditors .................................... 16
    Corrections .................................................. 16

PART 9: PAYMENT OPTIONS ........................ 16
    Who May Elect Payments Options .......... 16
    How to Elect a Payment Option .............. 17
    What Payment Options Are Available ..... 17
    Other Payment Options ............................. 19
    Additional Interest ..................................... 19

PART 10: TABLE OF PAYMENT OPTION
AMOUNTS ..................................................... 19
    Adjusted Age .............................................. 19
    Tables for Options 3, 4 and 5 .................. 21
    Table for Option 7 ...................................... 22

U606

EXHIBIT 1 - PAGE 17

# PART 1: DEFINITIONS

**Assigns**

Any persons to whom You assign an interest in this policy if We have notice of the assignment in accordance with the provisions stated in Part 3.

**Death Benefit Option**

The type of Death Benefit in effect as described in Part 7.

**Due Proof of Death**

A certified death certificate, an order of a court of competent jurisdiction, or any other proof acceptable to Us.

**In Force**

The policy has not terminated or otherwise lapsed in accordance with the Grace Period and Lapse Provision in Part 4.

**In Writing (Written Notice) (Written Request)**

Is a written form signed by You, satisfactory to Us and received at Our Home Office or Our Main Administrative Office.

**Monthly Calculation Day**

The first Monthly Calculation Day is the same day as the Policy Date. Subsequent Monthly Calculation Days are the same days of each month thereafter or, if such day does not fall within a given month, the last day of that month will be the Monthly Calculation Day.

**Subsequent Planned Premium**

The premium shown on the Schedule Page, which is the premium You selected in Your application and is the basis for the Policy Summary delivered with this policy.

**Policy Anniversary**

The anniversary of the Policy Date.

**Policy Date**

The Policy Date shown on the Schedule Pages from which Policy Years and Policy Anniversaries are measured.

**Policy Debt**

Unpaid policy loans with accrued interest.

**Policy Month**

The period from one Monthly Calculation Day up to but not including the next Monthly Calculation Day.

**Policy Value**

The Policy Value as defined in Part 5.

**Policy Year**

The first Policy Year is the one-year period from the Policy Date to, but not including, the first Policy Anniversary. Each succeeding Policy Year is the one-year period from the Policy Anniversary up to but not including the next Policy Anniversary.

**Surrender Value**

The Surrender Value as defined in Part 5. The Surrender Value is the Policy Value on the date of surrender less any applicable surrender charge, unpaid issue charge, and less any Policy Debt.

**We (Our, Us)**

PHL Variable Insurance Company.

**You (Your)**

The owner of this policy at the time an owner's right is exercised.

# PART 2:  GENERAL PROVISIONS

**Effective Date of Insurance**

This policy will be In Force from the Policy Date until terminated in accordance with its terms, provided the first Issue Premium shown on the Schedule Pages is paid on or before delivery of this policy while the Insured is alive.

**The Policy and Application**

This policy, including the Schedule Pages (and any supplements or changes thereto), any riders or endorsements to it, and the application for it (and any supplemental applications) constitute the entire contract between You and Us.

This policy is made in consideration of the application and the payment of premiums as provided in this policy. We rely on all statements made by or for the Insured in the written application. Each statement made in an application will, in the absence of fraud, be deemed a representation and not a warranty. No statement will be used to void this policy or in defense of a claim under this policy unless:

1. it is contained in the application or in a supplemental application; and

2. a copy of that application is attached to this policy when issued or made a part of this policy when changes become effective.

Any change in the provisions of the policy, including modifying the policy, waiving any of its conditions, or making an agreement for the Company, to be in effect, must be In Writing and signed by one of Our executive officers and countersigned by Our registrar or one of Our executive officers. This policy is issued by Us at Our Main Administrative Office in Hartford, Connecticut. Any benefits payable under this policy are payable at Our Main Administrative Office.

**Not eligible for Annual Dividends**

This policy is non-participating and therefore is not eligible for annual dividends. This means that You are not entitled to participate in company profits.

**Revised Schedule Pages**

The   Schedule Pages issued with the policy show the initial policy data in effect for this policy on the Policy Date. Some of this policy data may change by an action You request or take or by a change You make. Any of these changes will be reflected in Revised Schedule Pages which supplement or restate the Schedule Pages and show the effective date of the change. We will send You such Revised Schedule Pages along with a copy of any supplemental application, and they will become part of this policy as of their effective date.

U606

EXHIBIT 1 - PAGE 19

**Age**

Issue Age means the Insured's age on the Policy Date as of the Insured's nearest birthday. The attained age of the Insured on any Policy Anniversary and for the entire Policy Year then starting is the Issue Age plus the number of Policy Years since the Policy Date.

**Misstatement of Age or Sex**

If the age or sex of the Insured is misstated, the Policy Value and any Death Benefits payable shall be adjusted on the basis of the difference between the monthly deductions made and the monthly deductions which should have been made, accumulated at the interest rates that were credited to the Policy Value.

In the event of death, the recalculation, in and of itself, will not result in termination of the policy prior to the date of death. We will not pay less on the date of death on the policy after recalculation than the Surrender Value determined based upon the misstated age.

**Contestability**

We cannot contest the validity of the original face amount of this policy after it has been in effect during the Insured's lifetime for two years from the Policy Date (or two years from any reinstatement).

While insurance is contestable, We may rescind the insurance or deny a claim on the basis of:

1. a misstatement in the application or supplemental application for this policy or any face amount increase; or

2. a misstatement in the reinstatement application if there has been a reinstatement of this policy.

If We contest the validity of all or a portion of the face amount provided under this policy, the amount We pay with respect to the contested amount will be limited to the higher of a return of any paid premium required by Us for the contested face amount or the sum of any monthly deductions made under this policy for the contested face amount.

**Insurability Requirements After Issue**

To make some changes or elections under this policy after it is issued, the Insured must meet Our insurability requirements (medical and/or financial) as follows:

1. evidence of the Insured's insurability must be given that is satisfactory to Us; and

2. under Our underwriting standards, the Insured must be in a Risk Classification that is the same as, or better than, the Risk Classification for this policy at issue.

U606

EXHIBIT 1 - PAGE 20

**Suicide Exclusion**

If the Insured, whether sane of insane, dies by suicide within two years from the Policy Date, (or within two years from any reinstatement of the policy) and while the policy is In Force, Our liability shall be limited to an amount equal to the premiums paid on this policy less any debt owed Us and less any partial withdrawals.

**Termination**

If not previously terminated, this policy will terminate automatically on the earliest of:

1. the date the Insured dies; or

2. the date the grace period expires without the payment of sufficient premium in accordance with the Grace Period and Lapse Provision in Part 4.

**Minimum Policy Value**

All of the values under this policy are equal to or more than the minimum required on the Policy Date by the state in which this policy was delivered. The method of computation of the values under this policy has been filed as may be required with the Insurance Department of the state in which this policy was delivered.

# PART 3: OWNER, COLLATERAL ASSIGNMENT, BENEFICIARY

**Owner**

The Insured is the owner of this policy, unless otherwise provided in the application or be later transfer of ownership.

**Rights of Owner**

While the Insured is living, You may, as the owner, exercise all rights provided by this policy or allowed by Us. Consent of any beneficiary not irrevocably named or any contingent owner is not required. By Written Notice You may:

1. Transfer ownership to a new owner.

2. Name or change a contingent owner to succeed to the rights of the owner at the owner's death. If there is no contingent owner at the owner's death, ownership will pass to the Insured, except as You may have otherwise directed In Writing.

3. Receive any amounts payable under this policy during the Insured's lifetime.

4. Change the beneficiary of the death benefit. See Part 3.

5. Change the Subsequent Planned Premium payment amount and frequency. See Part 4.

6. Obtain a partial withdrawal. See Part 5.

7. Surrender this policy for its cash Surrender Value. See Part 5.

8. Obtain policy loans. See part 6.

U606

—4—

EXHIBIT 1 - PAGE 21

9.  Request changes in the insurance amount. See Part 7.

10. Change the Death Benefit Option. See Part 7.

11. Select a payment option for any cash Surrender Value that becomes payable. See Part 10.

12. Assign, release or surrender any of Your interest in the policy.

Exercise of any of these rights will, to the extent thereof, assign, release or surrender the interest of the Insured and all other beneficiaries and owners under this policy.

An ownership transfer designation or change of designation will be effective as of the date the notice was signed, subject to any action taken by Us before We record such notice. A transfer of ownership (or absolute assignment) is not the same as a "collateral assignment" as described in the next paragraph, and the new owner is not an "assignee" as these terms are used in this policy.

**Collateral Assignment**

By Written Notice You may assign an interest in this policy as collateral to a collateral assignee. The collateral assignment or a certified copy of it must be filed with Us at Our Main Administrative Office. When filed, it will bind Us as of the date of the assignment, subject to any action taken by Us before such filing. We shall not be responsible for the validity of any assignment. The interest of the assignee shall be prior to the interest of any beneficiary not irrevocably named or any contingent owner. A collateral assignee cannot change the beneficiary, owner or contingent owner.

**Beneficiary**

Unless another payment option is elected as described in Part 10, any death proceeds that become payable will be paid in equal shares to such beneficiaries living at the death of the Insured as stated in the application or as later changed. Payments will be made successively in the following order:

a)  Primary beneficiaries;

b)  Contingent beneficiaries, if any, provided no primary beneficiary is living at the death of the Insured;

c)  You or Your executor or administrator, provided no primary or contingent beneficiary is living at the death of the insured, or in the absence of a beneficiary designation.

Unless otherwise stated, the relationship of a beneficiary is the relationship to the insured.

EXHIBIT 1 - PAGE 22

**How to Change the Beneficiary**

You may change the beneficiary by Written Notice filed with Us at Our Main Administrative Office. When We receive it, the change will relate back and take effect as of the date it was signed by You. However, the change will be subject to any payments made or actions taken by Us before We received the notice at Our Main Administrative Office.

## PART 4: PREMIUMS

**Payments**

The Issue Premium as shown on the Schedule Pages is payable on or before delivery of this policy. The Insured must be alive when that premium is paid.

Subject to the limitations stated below, You may pay additional premiums at any time prior to age 100 while this policy is In Force. All premiums are payable at Our Main Administrative Office or to an authorized agent of ours. You may request a receipt signed by one of Our executive officers.

On Written Request We will send Subsequent Planned Premium notices to You. These notices can be sent annually, semi-annually or quarterly. Premiums may also be paid at other intervals, or under automatic collection methods, subject to Our consent. We may limit the number and amount of premium payments in any Policy Year.

The minimum premium payment amount that We will accept is $25. Any premium payment that would increase the Death Benefit by more than it would increase the Policy Value, shall be subject to evidence of insurability satisfactory to Us. To the extent of such evidence, the Contestability and Suicide Exclusion provisions will apply. The application for such evidence is attached to and will be made part of the policy.

**Total Premium Limit**

The total premium limit is shown on the Schedule Pages and is applied to the sum of all premiums received by Us to date, excluding premiums applied to debt repayment, reduced by the sum of all partial withdrawals paid by Us to date. If the total premium limit is exceeded, We will refund the excess with interest at an annual rate of not less than 4%, not later than 60 days after the end of the Policy Year in which the limit was exceeded. The Policy Value will be adjusted to reflect such refund.

The total premium limit may be exceeded if additional premium is needed to prevent lapse under the Grace Period And Lapse provision, and such additional premium is permitted by federal tax laws or regulations such that this policy continues to meet the Definition of Life Insurance.

The total premium limit may change due to:

a) change in Death Benefit Option;

U606

EXHIBIT 1 - PAGE 23

b) a decrease of face amount;

c) a partial withdrawal;

d) addition, change or termination of a rider; or

e) a change in federal tax law or regulations.

If the total premium limit changes, We will send You Revised Schedule Pages reflecting the change. However, We reserve the right to require that the policy be returned to Us to endorse the change.

**Grace Period and Lapse**

During the first seven Policy Years, if on any Monthly Calculation Day the required monthly deduction exceeds the Policy Value less any Policy Debt, a grace period of 61 days will be allowed for the payment of an additional premium. Such additional premium must be sufficient to increase such value on that Monthly Calculation Day to cover three monthly deductions.

After the seventh Policy Year, if on any Monthly Calculation Day the required monthly deduction exceeds the Surrender Value, a grace period of 61 days will be allowed for the payment of an additional premium. Such additional premium must be sufficient to increase such value on that Monthly Calculation Day to cover three monthly deductions.

The policy will continue In Force during such grace period. We will mail to You and any Assigns at the post office addresses last known to Us a Written Notice as to the amount of premium required. If such premium amount is not postmarked as having been mailed to Us by the end of the grace period, the policy will lapse without value, but not before 30 days have elapsed since We mailed Our Written Notice to You and any Assigns. The date of lapse will be the Monthly Calculation Day on which the deduction was to be made, and any insurance and rider benefits provided under this policy will terminate as of that date.

**Reinstatement**

If this policy terminates, in accordance with the Grace Period and Lapse Provision, You may reinstate this policy back to an "In Force" status within five years after the expiration of the Grace Period. Reinstatement must become effective prior to age 100 and while the Insured is alive. We will not approve a request for a reinstatement until We receive at Our Main Administrative Office all of the following:

1. a Written Request for reinstatement;

2. evidence of insurability satisfactory to Us;

3. if applicable, payment or reinstatement of any Policy Debt as of the date of lapse; and

U606

–7–

EXHIBIT 1 - PAGE 24

4.  the payment of a reinstatement premium while the Insured is alive which equals an amount needed to provide for a positive Surrender Value as of the date of lapse, plus three monthly deductions. However, during the first seven Policy Years, the reinstatement premium will equal an amount needed to provide for a positive Policy Value (less any Policy Debt) as of the date of lapse, plus three monthly deductions.

Subject to the foregoing conditions, the effective date of a reinstatement will be the Monthly Calculation Day following the date We approve the request for reinstatement. If We approve it on a Monthly Calculation Day, the effective date will be that Monthly Calculation Day.

The Policy Value as of the effective date of a reinstatement shall equal the reinstatement premium received, plus any Policy Debt in effect as of the date of lapse, minus the monthly deduction for the month then starting.

# PART 5: POLICY VALUES

The premiums You pay, minus the premium expense charges shown on the Schedule Pages, are added to the policy's Policy Value. We make monthly deductions from the Policy Value to cover the cost of insurance, the cost of any additional benefit riders and the monthly charges shown on the Schedule Pages. We also deduct any partial withdrawals You make and charges for them, as well as any charges for face amount decreases. The Policy Value earns interest. Details are provided below. We will keep You informed of the current Policy Value by sending You an Annual Report as described in Part 8 of this policy.

**Basis of Calculations**

Minimum Surrender Values are determined from the Basis of Calculations shown on the Schedule Pages. The Guaranteed Maximum Insurance Rates shown on the Schedule Pages are also based on this Table.

**Policy Value**

Policy Value is to be calculated as follows:

1.  In each Monthly Calculation Day following the Policy Date, the Policy Value will equal $(A + B + C - D - E)$;

2.  on a day of the month other than a Monthly Calculation Day, it will equal $(A + C)$;

3.  on the Policy Date, it will equal all premiums received, net of any premium expense charges, minus E; where:

    A= the Policy Value on the prior Monthly Calculation Day, after assessment of the monthly deduction on that day;

    B= one month's interest on A, including any Benchmark Interest Bonus;

C= all premiums received, net of any premium expense charges, since the prior Monthly Calculation Day, plus interest thereon to the end of the Policy Month, or any earlier date on which the Policy Value is being determined;

D= any partial withdrawal, and charge for it, being made as of that Monthly Calculation Day; and

E= the monthly deduction for the month then starting (no monthly deduction is made if the policy is surrendered for its full Surrender Value as of that Monthly Calculation Day).

**Interest Rate**

We will, from time to time, determine the interest rate used in the calculation of the Policy Value, based on Our anticipation of future investment earnings, mortality, persistency and expense/administrative costs. We will determine the interest rate at least once each year. We may, in Our sole discretion, change the interest rate. Changes made will be in accordance with procedures and standards on file with the Insurance Department of the state where this policy was delivered. Changes in the rate will apply to all policies in the same investment class. Any interest credited in excess of the Guaranteed Minimum Interest Rate is referred to as "excess interest." The effective annual interest rate will never be less than the Guaranteed Minimum Interest Rate shown on the Schedule Pages.

We may credit different interest rates on loaned and unloaned portions of the Policy Value. The rate in effect on a given date for unloaned amounts is referred to as the "current interest rate." The rate in effect on a given date for loaned amounts will be no less than the Loan Interest Rate in effect on that date less 2%. All interest rates are stated as effective annual rates. Interest will be compounded at least monthly to yield the effective annual rate.

**Benchmark Interest Bonus**

Beginning in the third Policy Year of this policy, in addition to interest being credited under the policy on each Monthly Calculation Day, We will also credit an interest bonus on each Monthly Calculation Day on amounts in excess of the Policy Value Benchmark Amount, shown on the Schedule Page. The Bonus Interest Rate will be equal to:

1. An annual effective rate of 1% if the Current Interest Rate is 5% or greater; or

2. An annual effective rate of .5% if the Current Interest Rate is at least 4.5% but less than 5%; or

3. An annual effective rate of 0% if the Current Interest Rate is less than 4.5%.

This bonus will be equal to (A x B), where:

A= the Bonus Interest Rate; and

B= the excess of the unloaned portion of the Policy Value over the Policy Value Benchmark Amount, shown on the Schedule Page.

U606

EXHIBIT 1 - PAGE 26

**Monthly Deduction**

The monthly deduction is the amount deducted from the Policy Value on the Policy Date and on each Monthly Calculation Day to pay the cost of insurance, the cost for any additional benefit riders and monthly charges for the Policy Month starting on that day. The monthly deduction will be equal to:

$$(A + B + C); \text{ where:}$$

A= the cost of insurance (as defined in the Cost of Insurance provision below);

B= the monthly cost for any additional benefit riders as shown on the Schedule Pages;

C= the Monthly Service Charge shown on the Schedule Pages, and if applicable, one-twelfth of the Issue Charge.

**Cost of Insurance**

The cost of insurance is the amount We charge each month for providing the insurance coverage. The cost of insurance is equal to:

$$(A \times (B - C)) + D; \text{ where}$$

A= the applicable cost of insurance rate for the Insured's risk class, based upon the Net Amount at Risk and Insured's risk class, including any applicable substandard mortality percentage extra. The Net Amount at Risk is equal to (B-C) below;

B= the Death Benefit at the beginning of the Policy Month, divided by the Monthly Factor shown on the Schedule Pages;

C= the Policy Value at the beginning of the Policy Month, after the Monthly Service Charge and, when applicable, one-twelfth of the Issue Charge, and prior to subtracting the Cost of Insurance for that month;

D= the Substandard (Temporary or Permanent) Extra Charge, if any, shown on the Schedule Pages.

In item B "Death Benefit" means the Death Benefit as defined in Part 7 but prior to subtracting the cost of insurance for that month from any Policy Value element.

**Cost of Insurance Rates**

The cost of insurance rate for each Policy Month is based on the Insured's age at issue, risk class and sex, and on policy duration. The rate used in computing the cost of insurance is obtained from the Table of Guaranteed Maximum Cost of Insurance Rates shown on the Schedule Pages for the insured risk classification(s), or such lower rate as We may declare. At least 31 days before the start of the Policy Year, We will send You a notice of any change in rates.

No more frequent than once per year and no less frequent than once every five years, We will review the monthly Cost of Insurance Rates to determine if these rates should be changed However, the rates will never exceed the Guaranteed Maximum Cost of Insurance Rates shown on the Schedule Pages. Our right to change rates also is subject to the following terms:

1. Any change in rates will be made on a uniform basis for all insureds in the same class. No change in rates will occur due to any change in the Insured's health or occupation.

2. Any change in rates will be determined prospectively. We will not distribute past gains or recoup prior losses, if any, by changing the rates.

3. Any change in rates will be based on a change in Our expectations of future investment earnings, mortality, persistency and expense/administrative costs.

4. Any change in rates will comply with any procedures and standards that may be on file with the insurance official of the jurisdiction where this policy is delivered.

The Monthly Service Charge, shown on the Schedule Pages, is subject to change based on Our expectations of future investment earnings, mortality, persistency and expense/administrative costs, subject to the maximum Monthly Service Charge stated on the Schedule Pages.

**Surrender Value**

You may surrender this policy for its Surrender Value at any time, by sending Us a Written Request along with this policy on or before such Monthly Calculation Day.

The Surrender Value on any date is the Policy Value on that date minus any applicable surrender charge as shown in the Table of Surrender Charges on the Schedule Pages, minus any Policy Debt, minus any unpaid issue charge. If the surrender is requested within 30 days after a Policy Anniversary, the Surrender Value shall not be less than the Surrender Value on the Policy Anniversary less any debt, partial withdrawals and charges made or incurred since the Policy Anniversary. The Surrender Value is never less than zero.

If this policy is terminated, the remaining schedule of Surrender Charges will be suspended. When this policy is reinstated, the remaining schedule of Surrender Charges also will be reinstated. The Surrender Charges are based on the period of time the policy is in effect. When reinstated, the schedule of Surrender Charges will start from the point where the schedule was suspended.

**Partial Withdrawals**

You may withdraw part of the Surrender Value as of any Monthly Calculation Day while the Insured is living, subject to the charges and limitations shown on the Schedule Pages. We must receive your Written Request for partial withdrawal on or before the Monthly Calculation Day on which the partial withdrawal is to be effective. The Policy Value will be reduced by the amount withdrawn, a partial surrender charge and a partial withdrawal fee.

–11–

EXHIBIT 1 - PAGE

The partial surrender charge is equal to a pro-rata portion of the surrender charge that would apply to a full surrender. The partial surrender charge is determined by multiplying the full surrender charge by a fraction equal to the partial surrender amount payable divided by the result of subtracting the applicable surrender charge from the Policy Value.

The partial withdrawal fee is shown on the Schedule Pages.

Under Death Benefit Option A (the Face Amount), the Face Amount is decreased by the same amount of reduction as the Policy Value.

Under Death Benefit Option B (the Face Amount plus the Policy Value), the Face Amount does not change.

A partial withdrawal will not be permitted which would reduce the Face Amount below Our then current Minimum Face Amount, or the Surrender Value to zero.

# PART 6: POLICY LOANS

**When Available**

You may obtain a loan from Us at any time, on assignment of the policy to Us as security, if it has a Surrender Value greater than zero.

**Amount Available**

The amount of any loan may not exceed the lesser of:

* the Surrender Value of this policy projected from the date of the loan to the next Policy Anniversary based upon guaranteed assumptions, minus loan interest charges through the next Policy Anniversary; and

* the current Surrender Value of this policy.

If on any Monthly Calculation Day the Policy Debt exceeds the Policy Value minus any applicable surrender charge then in effect, this policy will lapse according to the terms of the Grace Period and Lapse provision.

A loan will not be permitted in an amount less than the Minimum Loan Amount shown on the Schedule Pages, except if the amount to be loaned equals the full loaned amount then remaining.

We reserve the right to defer the granting of a loan, other than for the payment of any premium to Us, for six months after submission of a loan application.

Loan interest will accrue on a daily basis from the date of the loan, and is payable in arrears.

**Loan Interest**

Loans will bear interest at such rate or rates as established by Us for any period during which loans are outstanding. Each year We will set the rate that will apply during the next Policy Year. Such rate will be effective at the beginning of that year and will apply to both new and any outstanding loans under this policy.

EXHIBIT 1 - PAGE 29

We will notify You of the initial loan interest rate at the time a policy loan is made, or as soon as practical thereafter. If there are any outstanding loans, except for purposes of reinstatement, We will give You advance notice of any increase in the rate.

There is a maximum limit on the interest rate We can set. The maximum limit is the Published Monthly Average for the calendar month ending two months before the Policy Year begins or the Guaranteed Minimum Interest Rate used in computing the Policy Value plus 1%, whichever is higher.

The Published Monthly Average will be:

A. The Corporate Bond Yield Average – Monthly Average Corporates as published by Moody's Investors Service, Inc. or any successor to that Service; or

B. If that Monthly Average is no longer published, a substantially similar average, established by regulation issued by the insurance supervisory official of the state where this policy was delivered.

If the maximum limit for a Policy Year is at least 1/2% higher than the rate in effect for the previous year, We may increase the rate to not more than that limit.

If the maximum limit for a Policy Year is at least 1/2% lower than the rate in effect for the previous Policy Year, We must decrease the rate to not more than that limit.

**Debt**

As used in this policy, "debt" or "Policy Debt" means all loans existing on this policy plus accrued interest. When this policy terminates, We will add to any existing debt interest accrued from the prior Policy Anniversary to the termination date.

**Repayment**

The whole or any part of a loan may be repaid at any time while this policy is in effect. Any moneys received will be applied directly to reduce the debt unless specified as a premium payment. We will not accept partial payments in amounts less than $25.

# PART 7: INSURANCE COVERAGE PROVISIONS

**Death Proceeds**

Upon receipt by Us of Due Proof of Death that the Insured died while this policy is In Force, We will pay the death proceeds of this policy. The death proceeds at the death of the Insured are equal to:

a) the Death Benefit, as described below, in effect on the Insured's date of death; PLUS

b) any insurance then in effect on the life of the Insured that is provided by any additional benefit riders; PLUS

c) any premiums received by Us after the Monthly Calculation Day just prior to the Date of Death and on or before the Date of Death; MINUS

U606

EXHIBIT 1 - PAGE 30

d) Any partial withdrawals made after the Date of Death and prior to receipt of Written Notice of the insured's death; MINUS

e) Any debt then existing on this policy; MINUS

f) Any monthly deductions not already made up to and including the Policy Month of death.

**Interest on Insurance Proceeds**

We will pay interest on any death proceeds from the date of death to the date of payment. The amount of interest will be the same as would be paid were the death proceeds left for that period of time to earn interest under Payment Option 2. However, in no case will the amount of interest be less than the minimum required in Your state.

**Death Benefit**

The Death Benefit under this policy will be determined under either Option A or Option B, whichever is chosen and is then in effect, but in no event while the policy is In Force will it be less than the Minimum Death Benefit described below.

Option A: The Face Amount on that date.

Option B: The Face Amount plus the Policy Value on that date.

**Minimum Death Benefit**

The Minimum Death Benefit will be equal to a percentage of the Policy Value as of the insured's attained age at the beginning of the Policy Year in which the insureds death occurs, as follows:

| ATTAINED AGE | % OF POLICY VALUE | ATTAINED AGE | % OF POLICY VALUE | ATTAINED AGE | % OF POLICY VALUE |
|---|---|---|---|---|---|
| 0-40 | 250% | 54 | 157% | 68 | 117% |
| 41 | 243% | 55 | 150% | 69 | 116% |
| 42 | 236% | 56 | 146% | 70 | 115% |
| 43 | 229% | 57 | 142% | 71 | 113% |
| 44 | 222% | 58 | 138% | 72 | 111% |
| 45 | 215% | 59 | 134% | 73 | 109% |
| 46 | 209% | 60 | 130% | 74 | 107% |
| 47 | 203% | 61 | 128% | 75 | 105% |
| 48 | 197% | 62 | 126% | 76-90 | 105% |
| 49 | 191% | 63 | 124% | 91 | 104% |
| 50 | 185% | 64 | 122% | 92 | 103% |
| 51 | 178% | 65 | 120% | 93 | 102% |
| 52 | 171% | 66 | 119% | 94 | 101% |
| 53 | 164% | 67 | 118% | 95 and over | 100% |

**Death Benefit Following Insured's Age 100**

After the Policy Anniversary which follows the Insured's birthday, the Death Benefit will equal the Policy Value. Monthly Service Charges and Cost of Insurance Charges will not be deducted after this anniversary, nor can any premiums be paid. Policy loans and partial withdrawals will continue to be made available after this anniversary.

U606

EXHIBIT 1 - PAGE 31

**Change in Death Benefit Option**

The Face Amount and Death Benefit Option You have chosen initially are shown on the initial Schedule Pages. While this policy is In Force, You may request In Writing to change the Death Benefit Option. Any change will be subject to the following:

1.  A change in Death Benefit Option will require that there be no *immediate change in Our insurance risk*. To assure this, when We approve a change from Option A to Option B, We will decrease the Face Amount by the Policy Value. Such a change from Option A to Option B may not be made if it would reduce the Face Amount below the Minimum Face Amount shown on the Schedule Pages. Similarly, when We approve a change from Option B to Option A, We will increase the Face Amount by the Policy Value. We will not require evidence of insurability for a change in Death Benefit Option. You are limited to one change in Death Benefit Option for each Policy Year.

2.  The effective date of any change will be the Monthly Calculation Day next following Our approval of Your Written Request for change. This date will be shown on the Revised Schedule Pages that We will send You.

**Request for a Decrease in Face Amount**

You may request a decrease in face amount at any time after the first Policy Year. The decrease requested must at least equal $25,000 and the face amount remaining after the decrease must at least equal $250,000. All requests to decrease the face amount must be In Writing and will be effective on the first Monthly Calculation Day following the date We approve the request. We reserve the right to require that this policy first be returned to Us before the decrease is made. Upon a decrease in face amount, a partial surrender charge will be deducted from the Policy Value based on the amount of the decrease. The charge will equal the applicable surrender charge that would then apply to a full surrender multiplied by the result of dividing the decrease in face amount by the face amount of the policy before the decrease. We will send You a Revised Schedule Page reflecting the change.

# PART 8: MISCELLANEOUS PROVISIONS

**Annual Report**

We will send You, without charge, a report for each Policy Year which includes:

1.  the current Policy Value, Death Benefit, Face Amount and Surrender Value;

2.  any partial withdrawals, premiums paid, interest credited and charges made during the year;

3.  any outstanding policy loans and new loans and loan repayments made during the year; and

U606

–15–

EXHIBIT 1 - PAGE 32

4.   any other information required by the insurance supervisory official of the state in which this policy was delivered.

You have the right to request an illustrative report at any time. We reserve the right to charge up to $25.00 for the report.

**Projection of Benefits and Values**

We will provide You, on Written Request and payment of Our service fee of up to $25.00, a projection of illustrative future benefits and values under Your policy. We may limit the number of such projections in any Policy Year.

**Notices By Us**

Whenever We are required to give notice to You, it shall be deemed given if We mail it to You and, unless otherwise specified, to the assignee of record, if any, in a postage-paid envelope mailed by first class mail to the last known address of record at Our Main Administrative Office.

**Deferment of Certain Payments**

We may defer, for not more than six months after We receive Written Request, the payment of the Surrender Value due to surrender or partial withdrawal or the making of any loan. If payment is deferred 31 days or more on any surrender, interest will be paid at an effective annual rate of 4.00% on the amount deferred, from the date the request is received to the date of payment.

**Claims of Creditors**

The proceeds and any income payments under this policy shall not be subject to the claims of creditors and shall be exempt from legal process, levy or attachment to the extent allowed by law.

**Corrections**

We reserve the right to correct any clerical errors in this policy, or in Our administration of the policy.

# PART 9: PAYMENT OPTIONS

**Who May Elect Payment Options**

The surrender or death proceeds of this policy will be paid in one sum unless otherwise provided. As an alternative to payment in one sum as provided under Option 1, the proceeds may be applied under one or more of the alternative income payment options described in this Part.

However, Our consent is required for the election of an income payment option by a fiduciary or any entity other than a natural person. Our consent is also required for elections by any Assigns or an owner other than the Insured if the owner has been changed.

Except for Option 7 which is not available for death proceeds, You may elect any payment option for payment of the death proceeds. You may also designate or change one or more beneficiaries who will be the payee or payees under that Option. You may only do this during the lifetime of the Insured. If no election is in effect when the death benefit becomes payable, the beneficiary may elect any payment option other than Option 7. The payment options are also available to the payee of any Surrender Value that becomes payable under this policy.

U606 CA

EXHIBIT 1 - PAGE 33

Unless We agree otherwise, all payments under any Option chosen will be made to the designated payee or to his or her executor or administrator. We may require proof of age of any payee or payees on whose life payments depend as well as proof of the continued survival of any such payee(s).

**How To Elect a Payment Option**

The election of an income payment option must be In Writing. You can elect that the payments be made on an annual, semi-annual, quarterly, or monthly basis provided that each installment will at least equal $25. We also require that at least $1,000 be applied under any option chosen.

**What Payment Options Are Available**

This section provides a brief description of the various payment options that are available. In Part 10 You will find tables illustrating the guaranteed installment amount provided by several of the Options described in this section. The amounts shown for Option 4, Option 5 and Option 7 are the minimum monthly payments for each $1,000 applied. The actual payments will be based on the monthly payment rates We are using when the first payment is due. They will not be less than shown in the tables.

Option 1 — Payment in one sum

Option 2 — Left to earn interest

We pay interest on the amount left with Us under this Option as a principal sum.

We guarantee that at least one of the versions of this Option will provide interest at a rate of at least 3% per year.

Option 3 — Payments for a specified period

Equal income installments are paid for a specified period of years whether the payee lives or dies. The first payment will be on the date of settlement.

The Option 3 Table shows the guaranteed amount of each installment for monthly and annual payment frequencies. The table assumes an interest rate of 3% per year on the unpaid balance. The actual interest rate is guaranteed not to be less than this minimum rate.

Option 4 — Life annuity with specified period certain

Equal installments are paid until the later of:

a) the death of the payee;

b) the end of the period certain.

U606ZZPH
EXHIBIT 1 - PAGE 34

The first payment will be on the date of settlement. The period certain must be chosen at the time this Option is elected. The periods certain that may be chosen are as follows:

a) ten years;

b) twenty years;

c)   until the installments paid refund the amount applied under this Option. If the payee is not living when the final payment falls due, that payment will be limited to the amount which needs to be added to the payments already made to equal the amount applied under this Option.

If, for the age of the payee, a period certain is chosen that is shorter than another period certain paying the same installment amount, We will deem the longer period certain as having been elected.

Any life annuity as may be provided under this Option is calculated using an interest assumption of 3 3/8%, except that any life annuity providing a period certain of twenty years or more is calculated using an interest rate of 3 1/4%.

Option 5–  Life annuity

Equal installments are paid only during the lifetime of the payee. The first payment will be on the date of settlement.

Any life annuity as may be provided under this Option is calculated using an interest rate of 3 1/2%.

Option 6–  Payments of a specified amount

Equal installments of a specified amount, out of the principal sum and interest on that sum, are paid until the principal sum remaining is less than the amount of the installment. When that happens, the principal sum remaining with accrued interest will be paid as a final payment. The first payment will be on the date of settlement. The payments will include interest on the principal sum remaining at a rate guaranteed to at least equal 3% per year. This interest will be credited at the end of each year. If the amount of interest credited at the end of a year exceeds the income payments made in the last 12 months, that excess will be paid in one sum on the date credited.

EXHIBIT 1 - PAGE 35

Option 7 – Joint survivorship annuity with a 10-year period certain

This payment option is not available for death proceeds. This Option is only available if the policy is surrendered within 6 months of the Policy Anniversary nearest the Insured's 55th, 60th, or 65th birthday. The first payment will be on the date of settlement. Equal income installments are paid until the latest of:

a)  the end of the 10-year period certain;
b)  the death of the Insured;

c)  the death of the other named annuitant.

The other annuitant must be named at the time this Option is elected and cannot later be changed. That annuitant must have an adjusted age as defined in Part 10 of at least 40.

Any joint survivorship annuity as may be provided under this Option is calculated using an interest rate of 3 3/8%.

**Other Payment Options**   We may offer other payment options or alternative versions of the options listed in the above section.

**Additional Interest**   In addition to:

a)  the interest of 3% per year guaranteed on the principal sum remaining with Us under Option 2 or 6; and

b)  the interest of 3% per year included in the installments payable under Option 3;

We will pay or credit at the end of each year such additional interest as We may declare.

## PART 10: TABLES OF PAYMENT OPTION AMOUNTS

The installment amounts shown in the tables that follow are shown for each $1,000 applied. Amounts for payment frequencies, periods or ages not shown will be furnished upon request. Under Options 4 and 5, the installment amount for younger ages than shown will be the same as for the first age shown and for older ages than shown, it will be the same amount as for the last age shown.

**Adjusted Age**   The term "age" as used in the tables refers to the adjusted age. Under Options 4 and 5, the adjusted age is defined as follows:

a)  for Surrender Values, the age of the payee on the payee's nearest birthday to the Policy Anniversary nearest the date of surrender;

U606                                 – 19 –                        U606ZZPJ

EXHIBIT 1 - PAGE 36

a) for death benefits, the age of the payee on the payee's birthday nearest the effective date of the payment option elected.

Under Option 7, the adjusted age is the age on the nearest birthday to the Policy Anniversary nearest the date of surrender. The table for Option 7 only shows the amounts for annuitants of the opposite sex. Rates for annuitants of the same sex will be furnished upon request.

EXHIBIT 1 - PAGE 37

### Option 3 - Payments for a specified period

| Number of Years | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|
| Annual Installment $ | 211.99 | 179.22 | 155.83 | 138.31 | 124.69 | 113.82 | 104.93 | 97.54 | 91.29 |
| Monthly Installment $ | 17.91 | 15.14 | 13.16 | 11.68 | 10.53 | 9.61 | 8.86 | 8.24 | 7.71 |

| Number of Years | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 25 | 30 |
|---|---|---|---|---|---|---|---|---|---|
| Annual Installment $ | 85.95 | 81.33 | 77.29 | 73.74 | 70.59 | 67.78 | 65.26 | 55.76 | 49.53 |
| Monthly Installment $ | 7.26 | 6.87 | 6.53 | 6.23 | 5.96 | 5.73 | 5.51 | 4.71 | 4.18 |

### *Option 4 - Life annuity with specified period certain

| Age of Payee | Installment Refund | | 10 Years Certain | | 20 Years Certain | | Age of Payee | Installment Refund | | 10 Years Certain | | 20 Years Certain | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Male | Fe-Male | Male | Fe-Male | Male | Fe-Male | | Male | Fe-Male | Male | Fe-Male | Male | Fe-Male |
| 10 | $3.08 | $3.03 | $3.08 | $2.99 | $3.00 | $2.94 | 50 | $4.36 | $4.12 | $4.50 | $4.10 | $4.28 | $3.99 |
| 15 | 3.14 | 3.09 | 3.15 | 3.04 | 3.07 | 3.00 | 55 | 4.76 | 4.47 | 4.95 | 4.47 | 4.61 | 4.31 |
| 20 | 3.22 | 3.16 | 3.24 | 3.11 | 3.15 | 3.07 | 60 | 5.28 | 4.93 | 5.54 | 4.96 | 4.97 | 4.67 |
| 25 | 3.33 | 3.24 | 3.34 | 3.20 | 3.25 | 3.15 | 65 | 5.97 | 5.54 | 6.30 | 5.63 | 5.29 | 5.06 |
| 30 | 3.45 | 3.35 | 3.47 | 3.30 | 3.38 | 3.25 | 70 | 6.91 | 6.39 | 7.24 | 6.50 | 5.43 | 5.31 |
| 35 | 3.61 | 3.48 | 3.64 | 3.43 | 3.55 | 3.38 | 75 | 8.21 | 7.57 | 8.26 | 7.56 | 5.44 | 5.40 |
| 40 | 3.80 | 3.64 | 3.86 | 3.60 | 3.74 | 3.54 | 80 | 10.04 | 9.26 | 9.12 | 8.60 | 5.46 | 5.46 |
| 45 | 4.05 | 3.85 | 4.14 | 3.82 | 3.99 | 3.74 | 85 | 12.61 | 11.68 | 9.60 | 9.31 | 5.46 | 5.46 |

### *Option 5 - Life annuity

| Age of Payee | Male | Female | Age of Payee | Male | Female |
|---|---|---|---|---|---|
| 10 | $3.17 | $3.12 | 50 | $4.62 | $4.28 |
| 15 | 3.24 | 3.18 | 55 | 5.12 | 4.68 |
| 20 | 3.32 | 3.25 | 60 | 5.79 | 5.24 |
| 25 | 3.42 | 3.34 | 65 | 6.75 | 6.04 |
| 30 | 3.56 | 3.44 | 70 | 8.15 | 7.22 |
| 35 | 3.73 | 3.58 | 75 | 10.26 | 9.03 |
| 40 | 3.95 | 3.75 | 80 | 13.54 | 11.88 |
| 45 | 4.24 | 3.98 | 85 | 18.72 | 16.54 |

**\* Option 7 - Joint survivorship annuity with 10-year period certain**

| Age of Other Annuit- ant F | Age of Insured Male | | Age of Other Annuit- ant F | Age of Insured Male | | Age of Other Annuit- ant M | Age of Insured Female | | Age of Other Annuit- ant M | Age of Insured Female | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 55 | 60 | | 55 | 60 | | 55 | 60 | | 55 | 60 |
| 40 | $3.62 | $3.64 | 60 | $4.43 | $4.64 | 40 | $3.72 | $3.77 | 60 | $4.34 | $4.64 |
| 45 | 3.80 | 3.83 | 65 | 4.61 | 4.93 | 45 | 3.89 | 3.97 | 65 | 4.44 | 4.82 |
| 50 | 4.00 | 4.07 | 70 | 4.75 | 5.18 | 50 | 4.06 | 4.19 | 70 | 4.50 | 4.95 |
| 55 | 4.22 | 4.34 | 75 | 4.86 | 5.36 | 55 | 4.22 | 4.43 | 75 | 4.54 | 5.03 |

\* Minimum monthly income for each $1,000 applied

U606

EXHIBIT 1 - PAGE 39

# AGE 100+ RIDER

This rider is part of the policy to which it is attached.  Except as stated in this rider, it is subject to all of the provisions contained in the policy.

**Rider Date:**                    DECEMBER 28, 2005

**Rider Charge Date:**          N/A

## DEFINITIONS

**Age 100 Anniversary**
The Policy Anniversary nearest the Insured's 100th birthday.

## GENERAL

**Death Proceeds**
While this rider is in effect, the "Death Proceeds" provision of the basic policy is amended by adding the following to the end of that provision:

On and after the Age 100 Anniversary, the death proceeds at the death of the Insured are equal to:

a)    the Death Benefit, as described below;  MINUS

b)    any partial withdrawals made after the Date of Death and prior to receipt of Written Notice of the insured's death; MINUS

c)    any debt then existing on this policy

**Death Benefit Following Insured's Age 100**
While this rider is in effect, the "Death Benefit Following Insured's Age 100" provision of the basic policy is replaced with the following:

On and after the Age 100 Anniversary, the death benefit will equal 1 or 2, whichever is greater:

1.    the face amount of the basic policy on the date of the insured's death, plus the Total Rider Insurance Amount under the Individual Term Rider as of the day before the Age 100 Anniversary provided the Individual Term Rider was in effect on that date; or

2.    the Policy Value on the date of the insured's death.

Monthly Service Charges and Cost of Insurance Charges will not be deducted after this anniversary, nor can any premiums be paid.  Policy loans and partial withdrawals will continue to be made available after this anniversary.

**Under federal tax law, this policy may not qualify as life insurance after the Age 100 Anniversary. It may be subject to adverse tax consequences and a tax advisor should be consulted before You choose to continue the policy after the Age 100 Anniversary.**

UR69 CA

- 1 -

EXHIBIT 1 - PAGE 40

**Monthly Rider Charges**
There is no charge for this rider.

**Termination of This Rider**
This rider will terminate on the first of any of the following events to occur:

1. the date of full surrender or lapse of the basic policy;

2. Our receipt of Your Written Request to cancel this rider, which shall be effective as of the next Monthly Calculation Day; or

3. the date of the insured's death.

Upon termination of this rider the "Death Benefit Following Insured's Age 100" provision in the policy will become operative including any consequent reduction in death benefit to equal the Policy Value. No retroactive assessment will be made for monthly deductions waived under this rider.

PHL Variable Insurance Company

*Dona D. Young*

Chairman, President
and Chief Executive Officer

UR69 CA

- 2 -

EXHIBIT 1 - PAGE 41

# ACCELERATED BENEFIT RIDER

This Rider is part of the Policy to which it is attached, effective as of the Rider Date, if it is listed on the Policy's Schedule Page or in an Endorsement after that page. You should therefore review the Policy's Schedule Page for applicability. Except as stated in this Rider, it is subject to all of the provisions contained in the Policy.

**THE BENEFIT PAID UNDER THIS RIDER MAY BE TAXABLE. YOU SHOULD CONSULT YOUR PERSONAL TAX ADVISOR REGARDING POSSIBLE TAX CONSEQUENCES.**

| | |
|---|---|
| **Rider Date** | SAME AS POLICY DATE |
| **Maximum Administrative Charge** | $300.00 |
| **Maximum Proportion Allowable** | 75% |
| **Maximum Accelerated Benefit** | $250,000 |
| **Minimum Remaining Face Amount** | $10,000 |
| **Definitions** | **Insured** is the person covered under the basic Policy. |

**You (Your)** is the owner of the Policy to which this Rider is attached.

**We (Our, Us)** refers to PHL Variable Insurance Company.

**Eligible Amount** is the amount of insurance under the Policy that is eligible for accelerated payment. It is equal to the death benefit of the basic Policy at the time of claim plus any term insurance amounts In Force provided by Rider on the life of the Insured, which provides coverage renewable to the Insured's attained age 95 or beyond, but exclusive of any other supplemental Rider death benefits.

**Proportion** is the percentage of the Eligible Amount that will be accelerated under this Rider. The Proportion is chosen by You at the time of election of an accelerated benefit, subject to the following limitations. The Proportion elected:

  1. can be no more than the Maximum Proportion Allowable as specified in this Rider;

  2. cannot result in a remaining death benefit below the minimum as specified in this Rider; and

  3. cannot result in a Requested Benefit that exceeds the Maximum Accelerated Benefit as specified in this Rider.

This Rider terminates upon payment of the accelerated benefit.

**Maximum Accelerated Benefit** is the amount shown on the first page of this Rider. This Maximum Accelerated Benefit applies, in aggregate, to all policies issued on the Insured by Us.

**Requested Benefit** is the Proportion multiplied by the Eligible Amount.

**Terminal Illness** is an illness or condition that is expected to result in the Insured's death within six months based on evidence satisfactory to Us as defined under the Proof of Terminal Illness section below.

**Rider Description**

This Rider allows You to elect an accelerated benefit upon terminal illness of the Insured. The election must be made by a Written Request signed by You. We must also receive proof satisfactory to Us of the Insured's terminal illness as described in the Proof of Terminal Illness section below. The amount of the accelerated benefit will be adjusted as described under the Payment Made to You section below. The resulting payment will be made in a lump sum. Policy Values, cash Surrender Values, loan values and the death benefit as specified in the Policy to which this Rider is attached will be reduced if You receive an accelerated benefit. There is no premium charge for this Rider.

**Payment Made To You**

The amount of the payment made to You will be determined by discounting the Requested Benefit at Our then current discounting rate for a period of twelve (12) months, to reflect the early payment of insurance proceeds under the Policy.

Our discounting rate will be subject to the higher of:

1. 5%; or
2. the Published Monthly Average for the calendar month ending two months before the Policy Anniversary on or immediately preceding the date that We receive Your Written Request for payment under this Rider.

The Published Monthly Average will be:

a. The Corporate Bond Yield Average -- Monthly Average Corporates as published by Moody's Investors Service, Inc. or any successor to that Service; or

b. If that Monthly Average is no longer published, a substantially similar average, established by regulation for policy loan rates issued by the Insurance Department of the state where the Rider was delivered will be applicable.

If the discounting rate computed for a Policy Year is no more than 1/2% higher than the rate in effect for the previous Policy Year, then We will maintain such prior year's rate.

If the discounting rate computed for a Policy Year is no more than 1/2% lower than the rate in effect for the previous Policy Year, then We may, at Our discretion, maintain such prior year's rate.

If the cash Surrender Value multiplied by the Proportion exceeds the discounted value, then the discounted Requested Benefit will be increased to equal such greater amount.

The discounted Requested Benefit is reduced by the Proportion of any Policy debt, including any unpaid loan interest, and the Proportion of any other amounts due Us from You. This result is then reduced by Our then current Administrative Charge for benefits under this type of Rider, not to exceed the maximum as specified in this Rider. The amount that remains is the payment that will be made to You.

In the event that the Insured dies after the Written Request but before We make the payment, and We receive Written Notice at Our Main Administrative Office during this period of this event, the request will be considered void, and no payment will be made under this Rider.

**Effect On Contract**

The following values will be reduced by the Proportion at the time the payment is made to You:

1. the future planned premium payable on the basic Policy;

2. the face amount of the Policy at the time of claim;

3. the cash value (Policy Value);

4. any remaining Surrender Charge;

5. the cash Surrender Value; and

6. any Policy debt including any unpaid loan interest.

If this Rider is attached to a variable life insurance policy that permits fund investment in various subaccounts of Our Variable Universal Life Separate Account, the reduction in Policy Value will be achieved through a proportionate reduction in this Policy's share in the value of each subaccount based on the allocation You request at the time of Your accelerated benefit request. If no allocation request is made, the assignment to each subaccount will be made in the same manner as provided for monthly deductions.

Future values under the Policy will be determined in a manner consistent with that under the original Policy, as adjusted to reflect the above reductions. We will mail to You a new policy Schedule Page reflecting any payment made under this Rider.

**Proof of Terminal Illness**

A licensed physician, who is not Yourself or a member of Your family, must provide Us with evidence satisfactory to Us of the Insured's terminal illness. We reserve the right to obtain a second medical opinion from a physician of Our choosing at Our expense.

**Conditions**

Payment under this Rider is subject to the following conditions:

1. The Policy must not have lapsed.

2. We will require the consent of any assignees and irrevocable beneficiaries to any request for payment under this Rider.

3. No payments will be made under this Rider to satisfy the claims, demands, or obligations of any creditor, trustee in bankruptcy or governmental agency, or arising under any court order directed against You, to the extent that We have written notice thereof.

EXHIBIT 1 - PAGE 44

**Rider Termination**

This Rider will terminate on the earliest of:

1. Lapse or surrender of this Policy to which it is attached.
2. Our receipt of Your written request to terminate this Rider; or
3. Payment of any benefit under this Rider.

PHL Variable Insurance Company

*John H. Beers*

Secretary

UR11                                              4

EXHIBIT 1 - PAGE 45

# Life Plan Options Rider

This rider is part of the policy to which it is attached.  Except as stated in this rider, it is subject to all of the provisions contained in the policy.

## DEFINITIONS

Option Review Period
The 90-day period immediately preceding the 5th, 10th and 15th Policy Anniversaries.

Individual Term Life Rider
As used in this rider form "Individual Term Life Rider" refers to any of the following riders: Individual Term Rider, Individual Term Insurance Rider, Policy Term Rider, Policy Term Insurance Rider, Phoenix Individual Edge Term Rider, or the Variable Policy Term Rider.

## OPTION BENEFITS

Increased Coverage Determination without Medical Exam
Policies that include both this rider and the Individual Term Life Rider are eligible during each Option Review Period, while both such riders are in effect, for an increase in their term insurance rider amount up to a maximum lifetime increase of $1,000,000, with underwriting and our agreement to such increase determined without the inconvenience of an additional medical exam.  Our other ordinary underwriting rules will continue to apply and thus the increase in coverage is still subject to our normal underwriting approval.

Other conditions that apply to this option are as follows:
- The basic policy face amount must be at least $1,000,000 at original issue of the basic policy.
- The insured must be attained age 65 or younger on the last day of the Option Review Period.
- The risk classification of the insured must be standard through Table D (200%) at original issue of the basic policy.
- The insured must be alive and meet our underwriting requirements at the time of your request for the increase in term rider face amount.
- The Individual Term Life Rider must either already be attached to the policy or then currently approved and available for sale in the state of applicable jurisdiction.
- There is a maximum lifetime increase of $1,000,000 per insured life.

Reduced Coverage without Surrender Charge
During each Option Review Period you may request a decrease in the face amount of the policy without our assessment of the partial surrender charge that, under the terms of your basic policy, would otherwise apply.  In such case the surrender charge remaining under the policy will continue to be calculated as if such decrease in face amount had not been made.

Other conditions that apply to this option are as follows:
- The basic policy face amount must be at least $1,000,000 at original issue of the basic policy.
- Total option reductions of the basic policy face amount may not exceed the lesser of 50% of the initial basic policy face amount or $5,000,000 in combined aggregate of all option reductions for all Our policies on the same insured.

UR73

EXHIBIT 1 - PAGE 46

Exchange for Annuity without Surrender Charge

During each Option Review Period beginning with the 90-day period preceding the 10th policy anniversary, you may request that the policy be surrendered as part of an exchange request to an eligible annuity offered by us. In such an exchange, we would not assess the surrender charge that would otherwise apply. In such case, the new annuity will reflect the usual surrender charges that would ordinarily apply for new business.

Other conditions that apply to this option are as follows:
* The basic policy face amount must be at least $1,000,000 at original issue of the basic policy.


## TERMINATION OF THIS RIDER

This rider will terminate on the first of any of the following events to occur:

1. exercise of the Exchange for Annuity without Surrender Charge Option;

2. the 15th policy anniversary;

3. termination of the basic policy.




PHL Variable Insurance Company

*Dona D. Young*

Chairman, President
and Chief Executive Officer

UR73

EXHIBIT 1 - PAGE 47

# EXCHANGE OF INSURED OPTION RIDER

This rider is part of the policy to which it is attached. Except as stated in this rider, it is subject to all of the provisions contained in the policy.

**The Exchange Option**
While this rider is in effect and subject to its terms, you have the option to exchange your policy ("the exchange policy") for a new policy on the life of a substitute insured.

**How to Exercise This Option**
To exercise this option, You must file an application with Us at Our Main Administrative Office. It must be signed by You. We must also receive:

1. Evidence that You have a satisfactory insurable interest in the life of the substitute insured.

2. Evidence that the substitute insured is insurable under our established practice in the selection of risks for the amount and plan applied for. Selection of risks includes health and non-health factors.

3. The release of any lien against or assignment of your policy. You may instead submit written approval by the lienholder or assigns of the exchange policy in a form satisfactory to Us with such other documents as We may reasonably require.

4. The surrender and release of the exchange policy.

5. Payment of any amounts due to Us for the exchange as described in the Exchange Adjustments.

Unless otherwise provided in the application, the owner and the beneficiary of the new policy will be the same as under the exchange policy. Any subsequent changes will be governed by provisions of the new policy.

The Date of Exchange will be the policy anniversary following the later of:

1. Our receipt of the application;

2. Payment of the Exchange Adjustments, if any; and

3. Our approval of the insurable interest.

The new policy will take effect on the Date of Exchange. When the new policy takes effect, the exchange policy will terminate.

**The New Policy**
The Policy Date of the new policy will be the Date of Exchange.

The issue age of the Insured under the new policy will be determined based upon the substitute insured's age on his or her birthday nearest the date of issue of the new policy.

The new policy on the life of the substitute insured will be written on any plan of universal life insurance issued with a level face amount issued by Us at the time of the exchange. The new policy will be subject to Our published issue rules (e.g., age and amount limits) for the plan chosen which are in effect at that time. The risk classification and any exclusions applicable to the new policy will be determined in accordance with Our rules and practices in effect on the date of exchange. The rates for the new policy will be based on Our published rates in effect on the Date of Exchange.

The face amount of the new policy will equal the basic face amount of the exchange policy without regard to any riders under the exchange policy, except as provided below.  The Policy Value of the exchange policy on the Date of Exchange will be applied as premium to the new policy, but without any issue or sales charge applied under the new policy.

**Exchange Adjustments**
The owner must pay an amount equal to the excess, if any, of the surrender charge in effect on the exchange policy over the surrender charge for the new policy.  All such surrender charges will be determined as of the Date of Exchange.

In some cases, the amount of Policy Value that may be applied to the new policy may exceed the premium limit for the new policy. In that event, We will return such excess Policy Value to You in cash.

**Monthly Rider Charges**
There are no Monthly Charges for coverage under this rider.

**Termination of This Rider**
This rider will terminate on the first of any of the following events to occur:

1.  Termination of the exchange policy;

2.  Lapse or Exchange of the exchange policy;

3.  Our receipt at Our Home Office of a Written Request to cancel this rider; and

4.  Death of the insured.

PHL Variable Insurance Company

*Dona D. Young*

Chairman, President
and Chief Executive Officer

 **PHOENIX**

**Policy Acceptance Form**

P.O. Box 8027
Boston, MA 02266-8027
Underwriting Service Center

Company is defined as indicated below:

☐ Phoenix Life and Annuity Company
☒ PHL Variable Insurance Company

| Agency: E7500 | Insured(s): ██████████ |
|---|---|
| Policy Number: 97514670 | |

## DECLARATION:

The insured(s) declares that the statements made in the application remain full, complete, and true as of this date; that since the date of the application, no insured has applied to any insurance company or society without receiving the exact policy applied for or had any symptoms, diseases or disorders for which advice has been sought.

All insured(s) must attest to the above declaration. If any insured cannot attest to the above statement, please so indicate by checking the box next to that insured's signature below and complete a Health Statement Form for that insured. **PLEASE NOTE: Home Office approval of the Health Statement Form is necessary before the policy is in effect.**

**AMENDMENTS:**   The application for Policy No.  97514670  is amended as follows:

**There is no coverage under application #v08311050379328 dated 09/28/2005.**
**The application Part 1 is hereby amended to reflect the company name as PHL Variable Insurance Company.**

It is agreed that the above declaration and amendments are part of the application and shall be part of the policy.

**DELIVERY RECEIPT:** To be completed when policy is delivered. If a Health Statement Form is required, please consult with your agent before completing this section.

This certifies that as the policy owner, (check ONE only):

☐  I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information.

☐  I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information, and authorize _____ to hold such policy on my behalf.

| Date | _____ | Insured(s) | _____ | ☐ |
|---|---|---|---|---|
| Signed at | _____ | | _____ | ☐ |
| Witness | _____ | | _____ | ☐ |
| Owner | _____ | | _____ | ☐ |
| Owner | (If other than Insured) _____ | | _____ | ☐ |

If owner is a firm or corporation, please give the name of the firm or corporation and the title of the officer signing for the firm or corporation.

**AGENT:** ORIGINAL to Underwriting and Issue, YELLOW copy to Agent, PINK copy to remain with policy.

EXHIBIT 1 - PAGE 50

HWR11771    10-99

**◈PHOENIX** PO Box 8027
Boston MA 02266-8027

Application for Life Insurance
Part 1

Company is defined as indicated below: (check one)
☑ Phoenix Life Insurance Company   ☐ PHL Variable Insurance Company   ☐ Phoenix Life and Annuity Company

**Section I - Proposed Insured**

Birthdate (Month, Day, Year)

Business Address (include Street, Apt, Number, City, State, and ZIP Code)    Bus. Phone No. (include Ext.)
(   )

Email Address

**Section II - Ownership**

☐ A.  Insured
☐ B.  Successive Owners
☐ B1.  Owners Jointly
☐ C.  Corporation, its successors or assigns (include state of incorporation)

☐ D.  Partnership (Include Name of all Partners - if partnership is limited, indicate which partners are general partners)
☐ E.  Sole Proprietorship (Include Name of Sole Proprietor)
☑ F.  Trust (Include Name and Date of Trust, Name of Trustee(s) and Grantor)

(Complete section below if B, C, D, E or F are checked)
If Owner is other than Proposed Insured, Premium Notice will be sent to:

Owner's Name

Mailing Address
Owner's Email A
Social Security

Contingent Owner
Name _____    Date of Birth _____
Relationship _____
Ultimate Owner: Check one. If none checked, insured will be ultimate owner.
☐ Insured   ☐ Executor or administrator of the survivor of the primary and contingent owners

**Section III - Beneficiary Designation**

| Primary Beneficiary | Relationship to Proposed Insured | Date of Birth (if Available) | Social Security No. (if known) |
|---|---|---|---|
| | | | |

☐ If more than 1 Beneficiary, each of the Contingent Beneficiaries listed shall receive an equal interest.

| First Contingent Beneficiary | Relationship to Proposed Insured | Date of Birth (if Available) | Social Security No. (if known) |
|---|---|---|---|
| | | | |
| Second Contingent Beneficiary | Relationship to Proposed Insured | Date of Birth (if Available) | Social Security No. (if known) |
| | | | |

If Trust is primary beneficiary: (check one)
☐ Trust under Insured's will
☑ Inter vivos – Name of Trustee
Date of Trust

To qualify for payment, beneficiary must be living. (Check A or B, otherwise A will apply)
☑ A. at the Proposed Insured's death.   ☐ B. on the 30th day after the date of the Proposed Insured's death.

OL2773                               1 of 5        v01131030432851                    4-02

**Section IV - Coverage Applied For**

Plan of Insurance
*PHOENIX ACCUMULATOR UL II*

Basic Policy Amount
$ *10,000,000*

**Section V - VARIABLE/UNIVERSAL PLANS of Insurance - Riders and Features**

First Year Anticipated, BILLED Premium (Excluding 1035 Exchange, Lump Sum Funds, etc.)
*$950,000*

Scheduled Planned Annual Premium
*$ -0- YR. 2   $395 YES/YR. THEREAFTER*

- [ ] Disability Waiver of a Specified Amount
  Amount $_____
- [ ] Accidental Death Benefit Rider
- [ ] Death Benefit Protection Rider
  - [ ] Age 70   [ ] Age 80   [ ] Age 100
- [ ] Purchase Protector _____ units
- [ ] Child's Term Rider
- [ ] Family Term Rider
- [x] Living Benefit Rider
- [ ] Guaranteed Death Benefit Rider
- [ ] Guaranteed Extension Rider
- [ ] Cash Value Accumulation Rider
- [x] Age 100 + Rider
- [ ] Individual Term Rider $ _____

Death Benefit Option: (check one) if none checked, Option 1 will apply.
- [x] Option 1 - Level Face Amount
- [ ] Option 2 - Increasing Face Amount

Face Amount Increase Options:
- [ ] _____ % percentage increase
- [ ] $ _____ Fixed Dollar Increase
- [ ] Increase Equal to Premiums Paid

Policy Option: (check one) if none checked, Option A will apply.
- [ ] Policy Option A
- [ ] Policy Option B
- [ ] Policy Option C
- [ ] Other _____
- [ ] Other _____
- [ ] Other _____
- [ ] Other _____

**Temporary Money Market Allocation**
If the state of issue does not require refund of premium during the Right To Cancel Period, but you prefer to temporarily allocate your premiums to the Money Market subaccount until the end of the Right to Cancel Period, as stated in the policy, indicate: [ ] Yes  [ ] No

**Telephone/Electronic Authorization**
I will receive this privilege automatically. By checking "Yes", I am authorizing and directing the Company to act on telephone or electronic instructions from my licensed agent who can furnish proper identification. The Company will use reasonable procedures to confirm that these instructions are authorized and genuine. As long as these procedures are followed, the Company and its affiliates and their directors, trustees, officers, employees, representatives and/or agents, will be held harmless for any claim, liability, loss or cost.
[ ] Yes  [ ] No

**Electronic Delivery Authorization**
By checking "Yes", I am authorizing the Company to provide my statements, prospectuses and other information electronically if available. I understand that I must have internet access to use this service and there may be access fees charged by the internet service provider. [ ] Yes  [ ] No

**Section VI - Suitability**
Do you understand that if you have purchased a Variable Life Policy and the Death Benefit may be variable or fixed under certain conditions and that the Death Benefit and Cash Values under any Variable Policy may increase or decrease in amount or duration based on the investment experience of the underlying subaccounts? [ ] Yes  [ ] No

If you are purchasing a Variable Life Policy, do you believe it is suitable to meet your financial objectives? [ ] Yes  [ ] No

If I have purchased a Variable Life Policy, I confirm that I have received the prospectus for that policy and its underlying funds.

Illustrations of benefits including death benefits, policy values and cash surrender values are available on request.

**Section VII - Complete if Temporary Insurance is Requested**
If either of the following questions are answered "Yes" or left blank, no agent or broker is authorized to accept money and a Temporary Insurance Agreement may not be issued, and no coverage will take effect.

| Yes | No | |
|-----|-----|---|
| [ ] | [ ] | 1. Within the past two years have you been treated for heart disease, stroke, or cancer or had such treatment recommended? |
| [ ] | [ ] | 2. Within the past 60 days have you been scheduled or advised to have any diagnostic test (excluding HIV tests or surgery not yet performed? |

$_____ has been paid by _____ to the Licensed Agent/Registered Representative indicated in this application, for proposed insurance applied for in this application. This sum is to be applied in accordance with and subject to the terms of the Temporary Insurance Receipt bearing the same number as this application.

NO. 946   P. 3                                                                   PHOENIX LIFE   JAN. 19, 2007  9:14AM

EXHIBIT 1 - PAGE 52

**Section VIII - TERM/WHOLE LIFE PLANS of Insurance - Riders and Features**

☐ Accidental Death Benefit
☐ Disability Waiver of Premium on Insured
☐ Purchase Protector _____ units
☐ Family Protection
☐ Children's Protection _____ units
☐ Living Benefit Rider
☐ Other _____
Cost of Living is automatic (No COL for Term products) unless this box is checked ☐ I do not desire Cost of Living

*Additional Death Benefit Riders:*
Primary Insurance Term Rider (PITR)  $ _____
Other Rider Name _____ Amount $ _____

☐ Paid-Up Additions Purchase Options Rider (PAPOR) (check one)
☐ PAPOR A-Flexible   ☐ PAPOR B-Flexible with Optionterm
Number of years payable _____
Intended premium payments for the first 7 years:
Year 1 _____   Year 5 _____
Year 2 _____   Year 6 _____
Year 3 _____   Year 7 _____
Year 4 _____   Maximum Amount $ _____

**Dividend Option:**
☐ Optionterm
Optionterm Death Benefit $ _____
Premium Paying Coverage ☐ Yes   ☐ No or
% of Increase _____
☐ Accumulate at Interest (ACCUM)
☐ Paid-up Additions Insurance (PUA)
☐ One Year Term with Balance to:
☐ Cash   ☐ PUA   ☐ ACCUM   ☐ RP
☐ Reduce Premium (RP)
☐ Cash
☐ Other _____
☐ Other _____

*Automatic Premium Loan, if applicable*
☐ Yes   ☐ No

Policy Loan Interest Rate, if applicable (if none checked, "Variable" will apply.)
☐ Variable   ☐ Fixed

**Section IX - Mode of Premium Payment - (Please note, there is a higher cost associated with the purchase of a Whole Life or Term policy. If the mode of payment is other than on an annual pay basis, please consult with your Licensed Agent/Registered Representative.)**

☑ Annual   ☐ Quarterly   ☐ Semi-Annual
☐ Monthly (Variable Life insurance only)   ☐ PCS (Phoenix Check-O-Matic Service)
Minimum Monthly Check for Each Service - $25.00

Multiple Billing Option - Give # or Details _____
☐ List Bill   ☐ Employee Insurance Counseling Service (EICS)   ☐ Salary Allotment   ☐ Pension   ☐ Money Purchase Pension
☐ Other _____

If electing PCS, complete the following:
Existing Policy Number or PCS File Number _____

**Authorization Agreement for Preauthorized Payments**
I (we) hereby authorize the Company (Note: Company is defined as indicated on page 1 of application) to initiate debit entries to my (our) checking account and the depository named below.

**Information for New Account**
Attach a void check to furnish encoding details.
If the depositor's name is not imprinted on the check, fill it in here exactly as it appears in the bank records.

*Attach Void Check Here*

Signature of depositor (if different from owner) _____

Send premium notices to: (in addition to owner)
☐ Insured at   ☐ Home Address   ☐ Business Address
☑ Other (Name, Relationship to Owner and Address)

01273

EXHIBIT 1 - PAGE 53

**Section X - Existing Life Insurance**

Describe all additional coverage in force. Include individual and group. If no coverage inforce, check here ☐.

| Company | Issue Date | Plan | Amount | Personal / Business | |
|---|---|---|---|---|---|
| AMERICAN NAT'L INS. CO. | 1980's | UNIV. LIFE | $ 550,000 | ☑ | ☐ |
| | | | $ | ☐ | ☐ |
| | | | $ | ☐ | ☐ |

Total Life Insurance in force (if none, indicate) $ 550,000  Total Accidental Death Benefit in force (if none, indicate) $ NONE

| Yes | No | | |
|---|---|---|---|
| ☑ | ☐ | 1. | Are there any life insurance policies or annuity contracts, owned by, or on the life of, the applicants or the insureds or the owner(s) or the annuitant? |
| ☐ | ☑ | 2. | With this policy, do you plan to replace (in whole or in part) now or in the future any existing life insurance or annuity contract in force with this policy? |
| ☐ | ☑ | 3. | Do you plan to utilize values from any existing life insurance policy or annuity contract (through loans, surrenders or otherwise) to pay any initial or subsequent premium(s) for this policy? |

For all "Yes" answers above, please provide the following information

| Company | Issue Date | Plan | Amount | Personal / Business | |
|---|---|---|---|---|---|
| SAME AS ABOVE | | | $ | ☐ | ☐ |
| | | | $ | ☐ | ☐ |
| | | | $ | ☐ | ☐ |

**Section XI - Income**

| Earned Income | Unearned Income | Net Worth |
|---|---|---|
| a. $20,000/YEAR | b. $130,000/YEAR | c. SEE INFO IN FILE |

**Section XII - Additional Information**

1. Have you used tobacco or nicotine products in any form in the last 10 years? If "Yes," please circle the product(s) used: cigarettes, cigars, pipes, snuff, smokeless or chewing tobacco, nicotine patch or gum.
   If "Yes," check one: ☐ Use currently   ☐ Date quit _____

2. Have you ever applied for life, accident, or health insurance and been declined, postponed, or been offered a policy differing in plan, amount or premium rate from that applied for? (If "Yes," give date, company and reason).

3. Are you negotiating for other insurance? (If "Yes," name companies and total amount to be placed in force.)

4. Do you intend to live or travel outside the United States or Canada? (If "Yes," state where and for how long).

5. Have you flown during the past three years as a pilot, student pilot or crew member? (If "Yes," complete Aviation Questionnaire).

6. Have you participated in the past 3 years or plan to engage in any extreme sport activities such as motorized vehicle, or parachute jumping, or underwater diving, or any other extreme avocation? (If "Yes," complete Avocation Questionnaire).

7. Have you in the past three years been the driver of a motor vehicle involved in an accident, or charged with a moving violation of any motor vehicle law, or had your driver's license suspended or revoked?

8. Have you ever been convicted of a felony or do you have charges pending?

Give full details for all "Yes" answers above. If necessary, use an additional piece of paper and please sign it.

| Question # | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |

EXHIBIT 1 - PAGE 54

F. 5   NO. 946   PHOENIX LIFE   JAN. 19, 2009   9:13AM

**Section XIII – Medical History** (Not necessary to complete if medical or paramedical exam has been ordered)



Have you ever had, or been told by a physician or other health care provider that you have:

1. High blood pressure or hypertension?
2. Pain, pressure, or discomfort in the chest, angina pectoris, palpitations, swelling of the ankles, or undue shortness of breath?
3. Heart disease, coronary artery disease, cardiomyopathy, heart failure, atrial fibrillation, heart rhythm abnormality, heart murmur, congenital heart disease or valvular heart disease?
4. Peripheral vascular disease, claudication, narrowing or blockage of arteries or veins?
5. Asthma, pulmonary fibrosis, chronic cough, emphysema, pneumonia, or any other lung disease?
6. Neurologic disease, seizures, fainting, falls, concussion, stroke, transient ischemic attack (TIA), tremor, neuropathy, weakness, Parkinson's disease, memory loss, dementia, or any other disease of the brain or nervous system?
7. Depression, bipolar disorder, schizophrenia, anxiety, or other psychiatric illness?
8. Arthritis, lupus, or any musculoskeletal or skin disorder?
9. Ulcers, abdominal pain, colitis, Crohn's disease, gall bladder disease, liver disease, hepatitis, jaundice, pancreatitis, or any other disease of the gastrointestinal system?
10. Diabetes, kidney disease, kidney stones, bladder disorder, prostate disorder, protein or blood in the urine?
11. Endocrine disorder, including disorder of the thyroid, parathyroid, adrenal, or pituitary glands?
12. Acquired Immune Deficiency Syndrome (AIDS) or any other immunologic disorder?
13. Anemia, bleeding or clotting disorder, or any other disorder of the blood or bone marrow?
14. Cancer of any type, tumor (benign or malignant), leukemia, lymphoma, or Hodgkin's disease?

15. Are you taking any kind of medicine, therapy, or treatment regularly or at frequent intervals?
16. Have you ever been treated for alcoholism or been advised to limit or stop your use of alcohol?
17. Have you ever used narcotics, barbiturates, amphetamines, hallucinogens, or any prescription drug except in accordance with a physician's instructions?
18. Have you ever been a patient in any hospital, treatment center, or similar facility within the last 10 years?
19. Have you had, or been advised to have, any surgery, X-rays, electrocardiograms, blood studies (excluding HIV or AIDS tests), or other tests within the last 5 years?
20. Other than above, have you had any other physical or psychological disorder or been treated by a physician or other health care provider for any reason within the past 5 years?

Please provide details of "YES" answers (include question number, diagnosis, date of occurrence, hospital or treating physician's name and address, and current status). Use OL1590 if additional space is necessary to record all details.

Phoenix reserves the right to require additional medical information, medical examination or testing to complete the underwriting process.

OL2773                                    5 of 8              v011310304320951                    4-02

EXHIBIT 1 - PAGE 55

### Authorization To Obtain Information

I authorize any physician, health care provider, hospital, clinic or other medically-related facility, insurance company or the Medical Information Bureau (MIB), having any records or knowledge of me or my health, to provide any such information to Phoenix Life Insurance Company and its affiliated insurers (Phoenix) or its reinsurers. I authorize any of the above sources in relation to Phoenix or its reinsurers, any of my information relating to alcohol use, drug use and mental health care.

Medical information will be used only for the purpose of risk evaluation and determining eligibility for benefits under any policies issued. Phoenix may disclose information it has obtained to others as permitted or required by law, including the MIB, our reinsurers and other persons or entities performing business or legal services in connection with this application, any contract issued pursuant to it or in connection with the determination of eligibility for benefits under an existing policy. Information that is not personally identifiable may be used for insurance statistical studies.

If insurance on any minor child is applied for, this authorization extends to records and knowledge of that child and that child's health. To facilitate rapid submission of information, I authorize all of the above sources, except MIB, to give such records or knowledge to any agency employed by Phoenix to collect and transmit such information.

I authorize consumer reporting agencies, insurance companies, motor vehicle departments, my attorneys, accountants and business associates and the MIB to provide any information to Phoenix or its reinsurers that may affect my insurability. This may include information about my occupation, participation in hazardous activities, motor vehicle record, foreign travel, finances, and other insurance coverage in place.

I acknowledge that I have received a copy of the Notice of Information Practices, including information about Investigative Consumer Reports and the Medical Information Bureau. I authorize the preparation of an investigative consumer report.

This authorization shall continue to be valid for thirty months from the date it is signed unless otherwise required by law. A photocopy of this signed authorization shall be as valid as the original. This authorization may be revoked by writing to Phoenix prior to the time the insurance coverage has been placed in force. I understand my authorized representative or I may receive a copy of this authorization on request.

☐ I do  ☐ I do not (check one) require that I be interviewed in connection with any investigative consumer report that may be prepared.

I have reviewed this application, and the statements made herein are those of the proposed insured and all such statements made by the proposed insured in Part I or and in Part II of this application are full, complete, and true to the best knowledge and belief of the undersigned and have been correctly recorded.

I understand that I) no statement made to, or information acquired by any Licensed Agent/Registered Representative who takes this application, shall bind the Company unless stated in Part I and/or Part II of this application, and II) the Licensed Agent/Registered Representative has no authority to make, modify, alter or discharge any contract thereby applied for.

I understand and agree that the insurance applied for shall not take effect unless and until each of the following has occurred: the policy has been issued by the Company; the premium required for issuance of the policy has been paid in full during the lifetime of the insured; all the representations made in the application remain true, complete and accurate as of the intent of such dates, and there has been no change in the health of any proposed insured that would change the answers to any of the questions in the application.

I understand that if there is any change in my health or physical condition, or if I visit a physician or am hospitalized, subsequent to the date I complete the application or provide any information to be contained in this application, I will inform the Company as soon as possible.

Under penalty of perjury, I confirm that (a) the Social Security or Tax Identification Number shown above is correct, and (b) that I am not subject to back-up withholding. (Strike this out and initial if not true).

Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud as determined by a court of competent jurisdiction.

If I have applied for the Living Benefit Rider, I confirm that I have received a copy of the disclosure form, Summary of Coverage for Accelerated Benefit Rider.

[black redaction block]

The Producer hereby confirms he/she has truly and accurately recorded on the application the information supplied by the Proposed Insured; and that he/she is qualified and authorized to discuss the contract herein applied for.

Will the proposed insured replace (in whole or in part) any existing life insurance or annuity contract in force with the policy applied for?  ☐ Yes  ☐ No

Will the proposed insured utilize values from another insurance policy (through loans, surrenders or otherwise) or annuity to pay for the initial or subsequent premium(s) for the policy applied for?  ☐ Yes  ☐ No

Are there any life insurance policies or annuity contracts owned by or on the life of the applicant or the insured or the owner(s) or the annuitant?  ☐ Yes  ☐ No

[black redaction block]

01.2721                                                6 of 5                    V011341030432851                    4-02

EXHIBIT 1 - PAGE 56

Sep 26 05 01:49p    Lynda Lyles    805 850-6738    p.2

⊕PHOENIX

EXHIBIT 1 - PAGE 57

# EXHIBIT 2

**Document Cover sheet**

Original 





EXHIBIT 2 - PAGE 58

## PHL Variable Insurance Company

**Insured** ███████████████████

**Age & Sex**  74 FEMALE

**Policy Number**  97514671

**Face Amount**  $10,000,000.00

**Policy Date**  DECEMBER 28, 2005

Dear Policyowner:

We agree to pay the benefits of this policy in accordance with its provisions. For service or information on this policy, contract the agent who sold the policy, any of Our agency offices, Our Home Office or Our Customer Service Center.

YOU HAVE A RIGHT TO RETURN THIS POLICY. If for any reason You are not satisfied with this policy, You may return it at any time within 30 days after You receive it to either the agent through whom it was purchased or to Us at Our Main Administrative Office at the following address:

> PHL Variable Insurance Company
> Variable and Universal Life Administration
> P.O. Box 8027
> Boston, MA 02266-8027
> Telephone (800) 541-0171

If returned, the policy will be considered void from the beginning and any premium paid will be refunded to You less any partial withdrawals or any loans taken under the policy.

Signed for PHL Variable Insurance Company at its Home Office, One American Row, Hartford, Connecticut 06115.

Sincerely yours,

PHL Variable Insurance Company

*John M. Beere*

Secretary

*Dona D. Young*

Chairman, President
and Chief Executive Officer

**FLEXIBLE PREMIUM LIFE INSURANCE POLICY**
**Death benefit payable if Insured dies while the Policy is In Force**
**Not Eligible for Annual Dividends**

U606 CA

EXHIBIT 2 - PAGE 59

# SCHEDULE PAGE

The specifications shown below are those in effect initially. They may later be changed for reasons as stated in this policy. Coverage may end if premiums paid are not enough to continue coverage.

## BASIC INFORMATION

**POLICY NUMBER:**          97514671

**POLICY DATE:**            DECEMBER 28, 2005

**FACE AMOUNT:**            $10,000,000.00

**DEATH BENEFIT OPTION:**   A

**OWNER:**                  OWNER AS STATED ON THE APPLICATION UNLESS LATER CHANGED.

**BENEFICIARY:**            AS STATED ON THE APPLICATION UNLESS LATER CHANGED.

### INSURED

| INSURED | ISSUE AGE & SEX | RISK CLASSIFICATION |
|---------|-----------------|---------------------|
| ██████ | 74     FEMALE   | NON-SMOKER |

## PREMIUMS

**ISSUE PREMIUM:**          $192,647.00

**SUBSEQUENT PLANNED ANNUAL PREMIUM:**              $0.00

**TOTAL PREMIUM LIMIT:**    GREATER OF   $5,843,937.56   AND RESULT OF   $765,094.43 MULTIPLIED BY THE NUMBER OF ELAPSED POLICY YEARS (OR FRACTION THEREOF) AFTER DECEMBER 28, 2005

The limit may decrease when monthly charges for any rider or any other monthly charges cease, and may be exceeded if additional premium is needed to prevent policy lapse.

**PREMIUM DUE DATES:**      The amount and time of premium payments following the Policy Date are flexible. Subsequent planned premiums are payable on the THIRTIETH day of each DECEMBER thereafter until the Death of the Insured, but not beyond DECEMBER 28, 2031     .

**POLICY VALUE BENCHMARK AMOUNT:**  $8,800,000.00        (See Part 5)

U606

# SCHEDULE PAGE
## CONTINUED

POLICY NUMBER:                97514671

### POLICY CHARGES

SALES CHARGE:            10% of the first $450,000.00    of premium paid in the
first policy year. 5% of any premium paid in excess of
$450,000.00    in the first policy year.
5% of all premiums  paid in policy years 2+.

MONTHLY DEDUCTION:      See Part 5, "Monthly Deduction". Includes cost of insurance, any
rider charges, any flat extra mortality charges, and monthly
service and expense charges.

MONTHLY SERVICE CHARGE:   $3.50    Guaranteed not to exceed $7.00.

MONTHLY EXPENSE CHARGE:   $50.00 deductible monthly during the first Policy Year.

PARTIAL WITHDRAWAL FEE FOR EACH WITHDRAWAL:  $25.00 (in addition to a partial
Surrender Charge).

SURRENDER CHARGE:        See table on next page.

We will not charge any Policy charges after the Policy Anniversary which follows the Insured's 100th
Birthday.

### OTHER RATES

GUARANTEED MINIMUM INTEREST RATE:  4%.

### LIMITATIONS

MINIMUM LOAN AMOUNT:     $100

PARTIAL WITHDRAWALS:     A Partial Withdrawal will not be permitted in an amount

- less than $500.00;

- which would reduce the Surrender Value to $0.00; or

- which would reduce the face amount below $250,000.

U606 CA

# SCHEDULE PAGE
## (CONTINUED)

POLICY NUMBER:   97514671

## TABLE OF SURRENDER CHARGES

For an explanation of this table, see section entitled "Surrender Value" in Part 5.  The charges shown in this table are stated as of the beginning of the Policy Year indicated. The charge will be level for the first 10 Policy Years and will be prorated on an annual basis beginning in Policy Year 11, unless limited by legal maximums.   In all Policy Years after the 20th policy year, the Surrender Charge is zero.

| POLICY YEAR | CHARGE PER $1,000 OF FACE AMOUNT |
|---|---|
| 1 | 57.6900 |
| 2 | 55.2198 |
| 3 | 52.7915 |
| 4 | 50.4081 |
| 5 | 48.0667 |
| 6 | 45.7623 |
| 7 | 43.4941 |
| 8 | 41.2687 |
| 9 | 39.0973 |
| 10 | 36.9954 |
| 11 | 34.9795 |
| 12 | 33.0540 |
| 13 | 31.2199 |
| 14 | 22.4250 |
| 15 | 10.7250 |
| 16 | 0.0000 |
| 17 | 0.0000 |
| 18 | 0.0000 |
| 19 | 0.0000 |
| 20 | 0.0000 |
| 20+ | 0.0000 |

EXHIBIT 2 - PAGE 62
PAGE 3 OF 5

# SCHEDULE PAGES (CONTINUED)

POLICY NUMBER:     97514671

## TABLE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES
## PER $1000 OF NET AMOUNT AT RISK
## BASED ON 1980 CSO MORTALITY TABLE

| POLICY YEAR | MONTHLY RATE | POLICY YEAR | MONTHLY RATE | POLICY YEAR | MONTHLY RATE |
|---|---|---|---|---|---|
| 01 | 2.75170 | 10 | 7.64670 | 19 | 19.05000 |
| 02 | 3.11000 | 11 | 8.58580 | 20 | 20.95000 |
| 03 | 3.50330 | 12 | 9.61500 | 21 | 23.27580 |
| 04 | 3.92580 | 13 | 10.71500 | 22 | 26.44330 |
| 05 | 4.37750 | 14 | 11.89250 | 23 | 31.31170 |
| 06 | 4.87080 | 15 | 13.13420 | 24 | 39.58080 |
| 07 | 5.42670 | 16 | 14.45920 | 25 | 54.65420 |
| 08 | 6.06330 | 17 | 15.86580 | 26 | 83.33330 |
| 09 | 6.79920 | 18 | 17.38170 | | |

Basis of Calculations:   1980 Commissioner's Standard Ordinary Mortality Smoker/Nonsmoker Distinct Table for each insured's sex and risk class, age nearest birthday, and 4% effective annual interest rate.

Monthly Factor used in determining Cost of Insurance:   1.0032737 (SEE PART 5)

U606

# SCHEDULE PAGE
## (CONTINUED)

POLICY NUMBER:      97514671

### TABLE OF FACE AMOUNTS OF INSURANCE

ISSUE DATE                                                    FACE AMOUNT
DECEMBER 28, 2005                                            $10,000,000.00

### RIDERS AND RIDER BENEFITS

| RIDER DESCRIPTION | RIDER DATE OF ISSUE | AMOUNT | RIDER TERMINATION DATE | MONTHLY CHARGE |
|---|---|---|---|---|
| UR11   LIVING BENEFIT RIDER | 12/28/2005 | | | NONE |
| UR69 - AGE 100+ | 12/28/2005 | NOT APPLICABLE | NONE | $0.00 |
| UR77 - EXCHANGE OF INSURED OPTION     - EXCHANGE OPTION RIDER | 12/28/2005 | $0.00 | 12/28/2031 | $0 |
| UR73 - LIFEPLAN OPTIONS RIDER | 12/28/2005 | NOT APPLICABLE | NONE | $0.00 |

U606

## BRIEF SUMMARY OF MAIN PROVISIONS

This is only a summary to help You understand the basics of Your policy. The policy provisions spell out the full details of the rights and obligations of the parties to this policy. The policy provisions and not this brief summary are binding on Us. We will pay the benefits of this policy as set forth on the policy Schedule Pages.

There are two Death Benefit Options to choose from, as described in Part 7. Option A is the Face Amount. Option B is the Face Amount plus Policy Value. Under either Option, the Death Benefit must be at least the Minimum Death Benefit as described in Part 7.

The premiums You pay are added to the Policy Value after We deduct any applicable premium expense charges. We make a monthly deduction from the Policy Value to pay the cost of insurance, the cost of any additional benefit riders and certain monthly charges. We determine cost of insurance rates from time to time, with the guarantee that they will never be higher than the maximum provided on the Schedule Pages. The Policy Value is credited with interest at a current rate which We set from time to time but which will not be less per year than the Guaranteed Minimum Interest Rate shown on the Schedule Pages.

The Subsequent Planned Premium shown on the Schedule Pages is the premium You selected in Your application and is the basis for the Policy Summary delivered with this policy. However, You may generally pay premiums when and in the amount You choose provided sufficient premium is paid to maintain the policy In Force. The amount and timing of premium payments will affect the accumulation of Policy Value.

This policy gives You a number of other options. Under stated conditions, You may change the Death Benefit Option, withdraw part of the Surrender Value or surrender the policy for its full Surrender Value. The Surrender Value is based on the Policy Value, minus any applicable Surrender Charges, unpaid issue charges, loans and loan interest.

We pay the insurance proceeds, as described in Part 3, to the beneficiary when We receive due proof that the Insured's death has occurred while this policy is In Force.

We pay the Surrender Value, as described in Part 5, to You if the Insured is living on the surrender date and this policy is then In Force.

You may change the premiums and Death Benefit Option, subject to Our approval. Certain changes may require evidence of insurability.

See the policy provisions for details.

**READ YOUR POLICY CAREFULLY. IT IS A CONTRACT BETWEEN YOU AND US.**

U606

EXHIBIT 2 - PAGE 65

# TABLE OF CONTENTS

SCHEDULE PAGE

BRIEF SUMMARY OF MAIN PROVISIONS

PART1: DEFINITIONS.................................... 1

PART2: GENERAL PROVISIONS................ 2
   Effective Date of Insurance.................. 2
   The Policy and Application.................. 2
   Not Eligible for Annual Dividends.......... 2
   Revised Schedule Pages..................... 2
   Age......................................... 3
   Misstatement of Age or Sex................ 3
   Contestability.............................. 3
   Insurability Requirements After Issue... 3
   Suicide Exclusion.......................... 4
   Termination................................ 4
   Minimum Policy Values..................... 4

PART 3: OWNER, COLLATERAL
ASSIGNMENT, BENEFICIARY................ 4
   Owner...................................... 4
   Rights of Owner............................ 4
   Collateral Assignment...................... 5
   Beneficiary................................ 5
   How to Change the Beneficiary............. 6

PART 4: PREMIUMS............................ 6
   Payments................................... 6
   Total Premium Limit....................... 6
   Grace Period and Lapse.................... 7
   Reinstatement............................. 7

PART 5: POLICY VALUES...................... 8
   Basics of Calculations..................... 8
   Policy Value............................... 8
   Interest Rate.............................. 9
   Benchmark Interest Bonus.................. 9
   Monthly Deduction........................ 10
   Cost of Insurance........................ 10
   Cost of Insurance Rates.................. 10
   Surrender Value.......................... 11
   Partial Withdrawals...................... 11

PART 6: POLICY LOANS..................... 12
   WhenAvailable............................ 12
   Amount Available......................... 12
   Loan Interest............................ 12
   Debt..................................... 13
   Repayment................................ 13

PART 7: INSURANCE COVERAGE
PROVISIONS.................................. 13
   Death Proceeds........................... 13
   Interest on Insurance Proceeds........... 14
   Death Benefit............................ 14
   Minimum Death Benefit.................... 14
   Death Benefit Following Insured's
      Age 100.............................. 14
   Change in Death Benefit Option........... 15
   Request for a Decrease in Face
      Amount............................... 15

PART 8: MISCELLANEOUS
PROVISIONS.................................. 15
   Annual Report............................ 16
   Projection of Benefits and Values........ 16
   Notices by Us............................ 16
   Deferment of Certain Payments............ 16
   Claims of Creditors...................... 16
   Corrections.............................. 16

PART 9: PAYMENT OPTIONS.................. 16
   Who May Elect Payments Options........... 16
   How to Elect a Payment Option............ 17
   What Payment Options Are Available 17
   Other Payment Options.................... 19
   Additional Interest...................... 19

PART 10: TABLE OF PAYMENT OPTION
AMOUNTS.................................... 19
   Adjusted Age............................. 19
   Tables for Options 3, 4 and 5............ 21
   Table for Option 7....................... 22

EXHIBIT 2 - PAGE 66

# PART 1: DEFINITIONS

**Assigns**

Any persons to whom You assign an interest in this policy if We have notice of the assignment in accordance with the provisions stated in Part 3.

**Death Benefit Option**

The type of Death Benefit in effect as described in Part 7.

**Due Proof of Death**

A certified death certificate, an order of a court of competent jurisdiction, or any other proof acceptable to Us.

**In Force**

The policy has not terminated or otherwise lapsed in accordance with the Grace Period and Lapse Provision in Part 4.

**In Writing (Written Notice) (Written Request)**

Is a written form signed by You, satisfactory to Us and received at Our Home Office or Our Main Administrative Office.

**Monthly Calculation Day**

The first Monthly Calculation Day is the same day as the Policy Date. Subsequent Monthly Calculation Days are the same days of each month thereafter or, if such day does not fall within a given month, the last day of that month will be the Monthly Calculation Day.

**Subsequent Planned Premium**

The premium shown on the Schedule Page, which is the premium You selected in Your application and is the basis for the Policy Summary delivered with this policy.

**Policy Anniversary**

The anniversary of the Policy Date.

**Policy Date**

The Policy Date shown on the Schedule Pages from which Policy Years and Policy Anniversaries are measured.

**Policy Debt**

Unpaid policy loans with accrued interest.

**Policy Month**

The period from one Monthly Calculation Day up to but not including the next Monthly Calculation Day.

**Policy Value**

The Policy Value as defined in Part 5.

**Policy Year**

The first Policy Year is the one-year period from the Policy Date to, but not including, the first Policy Anniversary. Each succeeding Policy Year is the one-year period from the Policy Anniversary up to but not including the next Policy Anniversary.

**Surrender Value**

The Surrender Value as defined in Part 5. The Surrender Value is the Policy Value on the date of surrender less any applicable surrender charge, unpaid issue charge, and less any Policy Debt.

**We (Our, Us)**

PHL Variable Insurance Company.

**You (Your)**

The owner of this policy at the time an owner's right is exercised.

U606

–1–

# PART 2:  GENERAL PROVISIONS

**Effective Date of Insurance**

This policy will be In Force from the Policy Date until terminated in accordance with its terms, provided the first Issue Premium shown on the Schedule Pages is paid on or before delivery of this policy while the Insured is alive.

**The Policy and Application**

This policy, including the Schedule Pages (and any supplements or changes thereto), any riders or endorsements to it, and the application for it (and any supplemental applications) constitute the entire contract between You and Us.

This policy is made in consideration of the application and the payment of premiums as provided in this policy. We rely on all statements made by or for the Insured in the written application. Each statement made in an application will, in the absence of fraud, be deemed a representation and not a warranty. No statement will be used to void this policy or in defense of a claim under this policy unless:

1. it is contained in the application or in a supplemental application; and

2. a copy of that application is attached to this policy when issued or made a part of this policy when changes become effective.

Any change in the provisions of the policy, including modifying the policy, waiving any of its conditions, or making an agreement for the Company, to be in effect, must be In Writing and signed by one of Our executive officers and countersigned by Our registrar or one of Our executive officers. This policy is issued by Us at Our Main Administrative Office in Hartford, Connecticut. Any benefits payable under this policy are payable at Our Main Administrative Office.

**Not eligible for Annual Dividends**

This policy is non-participating and therefore is not eligible for annual dividends. This means that You are not entitled to participate in company profits.

**Revised Schedule Pages**

The Schedule Pages issued with the policy show the initial policy data in effect for this policy on the Policy Date. Some of this policy data may change by an action You request or take or by a change You make. Any of these changes will be reflected in Revised Schedule Pages which supplement or restate the Schedule Pages and show the effective date of the change. We will send You such Revised Schedule Pages along with a copy of any supplemental application, and they will become part of this policy as of their effective date.

U606

-2-

EXHIBIT 2 - PAGE 68

**Age**

Issue Age means the Insured's age on the Policy Date as of the Insured's nearest birthday. The attained age of the Insured on any Policy Anniversary and for the entire Policy Year then starting is the Issue Age plus the number of Policy Years since the Policy Date.

**Misstatement of Age or Sex**

If the age or sex of the Insured is misstated, the Policy Value and any Death Benefits payable shall be adjusted on the basis of the difference between the monthly deductions made and the monthly deductions which should have been made, accumulated at the interest rates that were credited to the Policy Value.

In the event of death, the recalculation, in and of itself, will not result in termination of the policy prior to the date of death. We will not pay less on the date of death on the policy after recalculation than the Surrender Value determined based upon the misstated age.

**Contestability**

We cannot contest the validity of the original face amount of this policy after it has been in effect during the Insured's lifetime for two years from the Policy Date (or two years from any reinstatement).

While insurance is contestable, We may rescind the insurance or deny a claim on the basis of:

1.  a misstatement in the application or supplemental application for this policy or any face amount increase; or

2.  a misstatement in the reinstatement application if there has been a reinstatement of this policy.

If We contest the validity of all or a portion of the face amount provided under this policy, the amount We pay with respect to the contested amount will be limited to the higher of a return of any paid premium required by Us for the contested face amount or the sum of any monthly deductions made under this policy for the contested face amount.

**Insurability Requirements After Issue**

To make some changes or elections under this policy after it is issued, the Insured must meet Our insurability requirements (medical and/or financial) as follows:

1.  evidence of the Insured's insurability must be given that is satisfactory to Us; and

2.  under Our underwriting standards, the Insured must be in a Risk Classification that is the same as, or better than, the Risk Classification for this policy at issue.

U606

–3–

EXHIBIT 2 - PAGE 69

**Suicide Exclusion**

If the Insured, whether sane of insane, dies by suicide within two years from the Policy Date, (or within two years from any reinstatement of the policy) and while the policy is In Force, Our liability shall be limited to an amount equal to the premiums paid on this policy less any debt owed Us and less any partial withdrawals.

**Termination**

If not previously terminated, this policy will terminate automatically on the earliest of:

1. the date the Insured dies; or

2. the date the grace period expires without the payment of sufficient premium in accordance with the Grace Period and Lapse Provision in Part 4.

**Minimum Policy Value**

All of the values under this policy are equal to or more than the minimum required on the Policy Date by the state in which this policy was delivered. The method of computation of the values under this policy has been filed as may be required with the Insurance Department of the state in which this policy was delivered.

## PART 3: OWNER, COLLATERAL ASSIGNMENT, BENEFICIARY

**Owner**

The Insured is the owner of this policy, unless otherwise provided in the application or be later transfer of ownership.

**Rights of Owner**

While the Insured is living, You may, as the owner, exercise all rights provided by this policy or allowed by Us. Consent of any beneficiary not irrevocably named or any contingent owner is not required. By Written Notice You may:

1. Transfer ownership to a new owner.

2. Name or change a contingent owner to succeed to the rights of the owner at the owner's death. If there is no contingent owner at the owner's death, ownership will pass to the Insured, except as You may have otherwise directed In Writing.

3. Receive any amounts payable under this policy during the Insured's lifetime.

4. Change the beneficiary of the death benefit. See Part 3.

5. Change the Subsequent Planned Premium payment amount and frequency. See Part 4.

6. Obtain a partial withdrawal. See Part 5.

7. Surrender this policy for its cash Surrender Value. See Part 5.

8. Obtain policy loans. See part 6.

9.  Request changes in the insurance amount. See Part 7.

10. Change the Death Benefit Option. See Part 7.

11. Select a payment option for any cash Surrender Value that becomes payable. See Part 10.

12. Assign, release or surrender any of Your interest in the policy.

Exercise of any of these rights will, to the extent thereof, assign, release or surrender the interest of the Insured and all other beneficiaries and owners under this policy.

An ownership transfer designation or change of designation will be effective as of the date the notice was signed, subject to any action taken by Us before We record such notice. A transfer of ownership (or absolute assignment) is not the same as a "collateral assignment" as described in the next paragraph, and the new owner is not an "assignee" as these terms are used in this policy.

**Collateral Assignment**

By Written Notice You may assign an interest in this policy as collateral to a collateral assignee. The collateral assignment or a certified copy of it must be filed with Us at Our Main Administrative Office. When filed, it will bind Us as of the date of the assignment, subject to any action taken by Us before such filing. We shall not be responsible for the validity of any assignment. The interest of the assignee shall be prior to the interest of any beneficiary not irrevocably named or any contingent owner. A collateral assignee cannot change the beneficiary, owner or contingent owner.

**Beneficiary**

Unless another payment option is elected as described in Part 10, any death proceeds that become payable will be paid in equal shares to such beneficiaries living at the death of the Insured as stated in the application or as later changed. Payments will be made successively in the following order:

a) Primary beneficiaries;

b) Contingent beneficiaries, if any, provided no primary beneficiary is living at the death of the Insured;

c) You or Your executor or administrator, provided no primary or contingent beneficiary is living at the death of the insured, or in the absence of a beneficiary designation.

Unless otherwise stated, the relationship of a beneficiary is the relationship to the insured.

U606

EXHIBIT 2 - PAGE 71

**How to Change the Beneficiary**

You may change the beneficiary by Written Notice filed with Us at Our Main Administrative Office. When We receive it, the change will relate back and take effect as of the date it was signed by You. However, the change will be subject to any payments made or actions taken by Us before We received the notice at Our Main Administrative Office.

# PART 4: PREMIUMS

**Payments**

The Issue Premium as shown on the Schedule Pages is payable on or before delivery of this policy. The Insured must be alive when that premium is paid.

Subject to the limitations stated below, You may pay additional premiums at any time prior to age 100 while this policy is In Force. All premiums are payable at Our Main Administrative Office or to an authorized agent of ours. You may request a receipt signed by one of Our executive officers.

On Written Request We will send Subsequent Planned Premium notices to You. These notices can be sent annually, semi-annually or quarterly. Premiums may also be paid at other intervals, or under automatic collection methods, subject to Our consent. We may limit the number and amount of premium payments in any Policy Year.

The minimum premium payment amount that We will accept is $25. Any premium payment that would increase the Death Benefit by more than it would increase the Policy Value, shall be subject to evidence of insurability satisfactory to Us. To the extent of such evidence, the Contestability and Suicide Exclusion provisions will apply. The application for such evidence is attached to and will be made part of the policy.

**Total Premium Limit**

The total premium limit is shown on the Schedule Pages and is applied to the sum of all premiums received by Us to date, excluding premiums applied to debt repayment, reduced by the sum of all partial withdrawals paid by Us to date. If the total premium limit is exceeded, We will refund the excess with interest at an annual rate of not less than 4%, not later than 60 days after the end of the Policy Year in which the limit was exceeded. The Policy Value will be adjusted to reflect such refund.

The total premium limit may be exceeded if additional premium is needed to prevent lapse under the Grace Period And Lapse provision, and such additional premium is permitted by federal tax laws or regulations such that this policy continues to meet the Definition of Life Insurance.

The total premium limit may change due to:

a) change in Death Benefit Option;

b) a decrease of face amount;

c) a partial withdrawal;

d) addition, change or termination of a rider; or

e) a change in federal tax law or regulations.

If the total premium limit changes, We will send You Revised Schedule Pages reflecting the change. However, We reserve the right to require that the policy be returned to Us to endorse the change.

**Grace Period and Lapse**

During the first seven Policy Years, if on any Monthly Calculation Day the required monthly deduction exceeds the Policy Value less any Policy Debt, a grace period of 61 days will be allowed for the payment of an additional premium. Such additional premium must be sufficient to increase such value on that Monthly Calculation Day to cover three monthly deductions.

After the seventh Policy Year, if on any Monthly Calculation Day the required monthly deduction exceeds the Surrender Value, a grace period of 61 days will be allowed for the payment of an additional premium. Such additional premium must be sufficient to increase such value on that Monthly Calculation Day to cover three monthly deductions.

The policy will continue In Force during such grace period. We will mail to You and any Assigns at the post office addresses last known to Us a Written Notice as to the amount of premium required. If such premium amount is not postmarked as having been mailed to Us by the end of the grace period, the policy will lapse without value, but not before 30 days have elapsed since We mailed Our Written Notice to You and any Assigns. The date of lapse will be the Monthly Calculation Day on which the deduction was to be made, and any insurance and rider benefits provided under this policy will terminate as of that date.

**Reinstatement**

If this policy terminates, in accordance with the Grace Period and Lapse Provision, You may reinstate this policy back to an "In Force" status within five years after the expiration of the Grace Period. Reinstatement must become effective prior to age 100 and while the Insured is alive. We will not approve a request for a reinstatement until We receive at Our Main Administrative Office all of the following:

1. a Written Request for reinstatement;

2. evidence of insurability satisfactory to Us;

3. if applicable, payment or reinstatement of any Policy Debt as of the date of lapse; and

-7-

EXHIBIT 2 - PAGE 73

4.  the payment of a reinstatement premium while the Insured is alive which equals an amount needed to provide for a positive Surrender Value as of the date of lapse, plus three monthly deductions. However, during the first seven Policy Years, the reinstatement premium will equal an amount needed to provide for a positive Policy Value (less any Policy Debt) as of the date of lapse, plus three monthly deductions.

Subject to the foregoing conditions, the effective date of a reinstatement will be the Monthly Calculation Day following the date We approve the request for reinstatement. If We approve it on a Monthly Calculation Day, the effective date will be that Monthly Calculation Day.

The Policy Value as of the effective date of a reinstatement shall equal the reinstatement premium received, plus any Policy Debt in effect as of the date of lapse, minus the monthly deduction for the month then starting.

## PART 5: POLICY VALUES

The premiums You pay, minus the premium expense charges shown on the Schedule Pages, are added to the policy's Policy Value. We make monthly deductions from the Policy Value to cover the cost of insurance, the cost of any additional benefit riders and the monthly charges shown on the Schedule Pages. We also deduct any partial withdrawals You make and charges for them, as well as any charges for face amount decreases. The Policy Value earns interest. Details are provided below. We will keep You informed of the current Policy Value by sending You an Annual Report as described in Part 8 of this policy.

**Basis of Calculations**

Minimum Surrender Values are determined from the Basis of Calculations shown on the Schedule Pages. The Guaranteed Maximum Insurance Rates shown on the Schedule Pages are also based on this Table.

**Policy Value**

Policy Value is to be calculated as follows:

1.  In each Monthly Calculation Day following the Policy Date, the Policy Value will equal $(A + B + C - D - E)$;

2.  on a day of the month other than a Monthly Calculation Day, it will equal $(A + C)$;

3.  on the Policy Date, it will equal all premiums received, net of any premium expense charges, minus E; where:

    $A=$  the Policy Value on the prior Monthly Calculation Day, after assessment of the monthly deduction on that day;

    $B=$  one month's interest on A, including any Benchmark Interest Bonus;

C= all premiums received, net of any premium expense charges, since the prior Monthly Calculation Day, plus interest thereon to the end of the Policy Month, or any earlier date on which the Policy Value is being determined;

D= any partial withdrawal, and charge for it, being made as of that Monthly Calculation Day; and

E= the monthly deduction for the month then starting (no monthly deduction is made if the policy is surrendered for its full Surrender Value as of that Monthly Calculation Day).

**Interest Rate**

We will, from time to time, determine the interest rate used in the calculation of the Policy Value, based on Our anticipation of future investment earnings, mortality, persistency and expense/administrative costs. We will determine the interest rate at least once each year. We may, in Our sole discretion, change the interest rate. Changes made will be in accordance with procedures and standards on file with the Insurance Department of the state where this policy was delivered. Changes in the rate will apply to all policies in the same investment class. Any interest credited in excess of the Guaranteed Minimum Interest Rate is referred to as "excess interest." The effective annual interest rate will never be less than the Guaranteed Minimum Interest Rate shown on the Schedule Pages.

We may credit different interest rates on loaned and unloaned portions of the Policy Value. The rate in effect on a given date for unloaned amounts is referred to as the "current interest rate." The rate in effect on a given date for loaned amounts will be no less than the Loan Interest Rate in effect on that date less 2%. All interest rates are stated as effective annual rates. Interest will be compounded at least monthly to yield the effective annual rate.

**Benchmark Interest Bonus**

Beginning in the third Policy Year of this policy, in addition to interest being credited under the policy on each Monthly Calculation Day, We will also credit an interest bonus on each Monthly Calculation Day on amounts in excess of the Policy Value Benchmark Amount, shown on the Schedule Page. The Bonus Interest Rate will be equal to:

1. An annual effective rate of 1% if the Current Interest Rate is 5% or greater; or

2. An annual effective rate of .5% if the Current Interest Rate is at least 4.5% but less than 5%; or

3. An annual effective rate of 0% if the Current Interest Rate is less than 4.5%.

This bonus will be equal to (A x B), where:

A= the Bonus Interest Rate; and

B= the excess of the unloaned portion of the Policy Value over the Policy Value Benchmark Amount, shown on the Schedule Page.

EXHIBIT 2 - PAGE 75

**Monthly Deduction**

The monthly deduction is the amount deducted from the Policy Value on the Policy Date and on each Monthly Calculation Day to pay the cost of insurance, the cost for any additional benefit riders and monthly charges for the Policy Month starting on that day. The monthly deduction will be equal to:

$$(A + B + C); \text{ where:}$$

A= the cost of insurance (as defined in the Cost of Insurance provision below);

B= the monthly cost for any additional benefit riders as shown on the Schedule Pages;

C= the Monthly Service Charge shown on the Schedule Pages, and if applicable, one-twelfth of the Issue Charge.

**Cost of Insurance**

The cost of insurance is the amount We charge each month for providing the insurance coverage. The cost of insurance is equal to:

$$(A \times (B - C)) + D; \text{ where}$$

A= the applicable cost of insurance rate for the Insured's risk class, based upon the Net Amount at Risk and Insured's risk class, including any applicable substandard mortality percentage extra. The Net Amount at Risk is equal to (B−C) below;

B= the Death Benefit at the beginning of the Policy Month, divided by the Monthly Factor shown on the Schedule Pages;

C= the Policy Value at the beginning of the Policy Month, after the Monthly Service Charge and, when applicable, one-twelfth of the Issue Charge, and prior to subtracting the Cost of Insurance for that month;

D= the Substandard (Temporary or Permanent) Extra Charge, if any, shown on the Schedule Pages.

In item B "Death Benefit" means the Death Benefit as defined in Part 7 but prior to subtracting the cost of insurance for that month from any Policy Value element.

**Cost of Insurance Rates**

The cost of insurance rate for each Policy Month is based on the Insured's age at issue, risk class and sex, and on policy duration. The rate used in computing the cost of insurance is obtained from the Table of Guaranteed Maximum Cost of Insurance Rates shown on the Schedule Pages for the insured risk classification(s), or such lower rate as We may declare. At least 31 days before the start of the Policy Year, We will send You a notice of any change in rates.

U606

EXHIBIT 2 - PAGE 76

No more frequent than once per year and no less frequent than once every five years, We will review the monthly Cost of Insurance Rates to determine if these rates should be changed. However, the rates will never exceed the Guaranteed Maximum Cost of Insurance Rates shown on the Schedule Pages. Our right to change rates also is subject to the following terms:

1. Any change in rates will be made on a uniform basis for all insureds in the same class. No change in rates will occur due to any change in the Insured's health or occupation.

2. Any change in rates will be determined prospectively. We will not distribute past gains or recoup prior losses, if any, by changing the rates.

3. Any change in rates will be based on a change in Our expectations of future investment earnings, mortality, persistency and expense/administrative costs.

4. Any change in rates will comply with any procedures and standards that may be on file with the insurance official of the jurisdiction where this policy is delivered.

The Monthly Service Charge, shown on the Schedule Pages, is subject to change based on Our expectations of future investment earnings, mortality, persistency and expense/administrative costs, subject to the maximum Monthly Service Charge stated on the Schedule Pages.

**Surrender Value**

You may surrender this policy for its Surrender Value at any time, by sending Us a Written Request along with this policy on or before such Monthly Calculation Day.

The Surrender Value on any date is the Policy Value on that date minus any applicable surrender charge as shown in the Table of Surrender Charges on the Schedule Pages, minus any Policy Debt, minus any unpaid issue charge. If the surrender is requested within 30 days after a Policy Anniversary, the Surrender Value shall not be less than the Surrender Value on the Policy Anniversary less any debt, partial withdrawals and charges made or incurred since the Policy Anniversary. The Surrender Value is never less than zero.

If this policy is terminated, the remaining schedule of Surrender Charges will be suspended. When this policy is reinstated, the remaining schedule of Surrender Charges also will be reinstated. The Surrender Charges are based on the period of time the policy is in effect. When reinstated, the schedule of Surrender Charges will start from the point where the schedule was suspended.

**Partial Withdrawals**

You may withdraw part of the Surrender Value as of any Monthly Calculation Day while the Insured is living, subject to the charges and limitations shown on the Schedule Pages. We must receive your Written Request for partial withdrawal on or before the Monthly Calculation Day on which the partial withdrawal is to be effective. The Policy Value will be reduced by the amount withdrawn, a partial surrender charge and a partial withdrawal fee.

The partial surrender charge is equal to a pro-rata portion of the surrender charge that would apply to a full surrender. The partial surrender charge is determined by multiplying the full surrender charge by a fraction equal to the partial surrender amount payable divided by the result of subtracting the applicable surrender charge from the Policy Value.

The partial withdrawal fee is shown on the Schedule Pages.

Under Death Benefit Option A (the Face Amount), the Face Amount is decreased by the same amount of reduction as the Policy Value.

Under Death Benefit Option B (the Face Amount plus the Policy Value), the Face Amount does not change.

A partial withdrawal will not be permitted which would reduce the Face Amount below Our then current Minimum Face Amount, or the Surrender Value to zero.

## PART 6: POLICY LOANS

**When Available**

You may obtain a loan from Us at any time, on assignment of the policy to Us as security, if it has a Surrender Value greater than zero.

**Amount Available**

The amount of any loan may not exceed the lesser of:

- the Surrender Value of this policy projected from the date of the loan to the next Policy Anniversary based upon guaranteed assumptions, minus loan interest charges through the next Policy Anniversary; and

- the current Surrender Value of this policy.

If on any Monthly Calculation Day the Policy Debt exceeds the Policy Value minus any applicable surrender charge then in effect, this policy will lapse according to the terms of the Grace Period and Lapse provision.

A loan will not be permitted in an amount less than the Minimum Loan Amount shown on the Schedule Pages, except if the amount to be loaned equals the full loaned amount then remaining.

We reserve the right to defer the granting of a loan, other than for the payment of any premium to Us, for six months after submission of a loan application.

Loan interest will accrue on a daily basis from the date of the loan, and is payable in arrears.

**Loan Interest**

Loans will bear interest at such rate or rates as established by Us for any period during which loans are outstanding. Each year We will set the rate that will apply during the next Policy Year. Such rate will be effective at the beginning of that year and will apply to both new and any outstanding loans under this policy.

EXHIBIT 2 - PAGE 78

We will notify You of the initial loan interest rate at the time a policy loan is made, or as soon as practical thereafter. If there are any outstanding loans, except for purposes of reinstatement, We will give You advance notice of any increase in the rate.

There is a maximum limit on the interest rate We can set. The maximum limit is the Published Monthly Average for the calendar month ending two months before the Policy Year begins or the Guaranteed Minimum Interest Rate used in computing the Policy Value plus 1%, whichever is higher.

The Published Monthly Average will be:

A.  The Corporate Bond Yield Average − Monthly Average Corporates as published by Moody's Investors Service, Inc. or any successor to that Service; or

B.  If that Monthly Average is no longer published, a substantially similar average, established by regulation issued by the insurance supervisory official of the state where this policy was delivered.

If the maximum limit for a Policy Year is at least 1/2% higher than the rate in effect for the previous year, We may increase the rate to not more than that limit.

If the maximum limit for a Policy Year is at least 1/2% lower than the rate in effect for the previous Policy Year, We must decrease the rate to not more than that limit.

**Debt**

As used in this policy, "debt" or "Policy Debt" means all loans existing on this policy plus accrued interest. When this policy terminates, We will add to any existing debt interest accrued from the prior Policy Anniversary to the termination date.

**Repayment**

The whole or any part of a loan may be repaid at any time while this policy is in effect. Any moneys received will be applied directly to reduce the debt unless specified as a premium payment. We will not accept partial payments in amounts less than $25.

# PART 7: INSURANCE COVERAGE PROVISIONS

**Death Proceeds**

Upon receipt by Us of Due Proof of Death that the Insured died while this policy is In Force, We will pay the death proceeds of this policy. The death proceeds at the death of the Insured are equal to:

a)  the Death Benefit, as described below, in effect on the Insured's date of death; PLUS

b)  any insurance then in effect on the life of the Insured that is provided by any additional benefit riders; PLUS

c)  any premiums received by Us after the Monthly Calculation Day just prior to the Date of Death and on or before the Date of Death; MINUS

EXHIBIT 2 - PAGE 79

d)   Any partial withdrawals made after the Date of Death and prior to receipt of Written Notice of the insured's death; MINUS

e)   Any debt then existing on this policy; MINUS

f)   Any monthly deductions not already made up to and including the Policy Month of death.

**Interest on Insurance Proceeds**

We will pay interest on any death proceeds from the date of death to the date of payment. The amount of interest will be the same as would be paid were the death proceeds left for that period of time to earn interest under Payment Option 2. However, in no case will the amount of interest be less than the minimum required in Your state.

**Death Benefit**

The Death Benefit under this policy will be determined under either Option A or Option B, whichever is chosen and is then in effect, but in no event while the policy is In Force will it be less than the Minimum Death Benefit described below.

Option A: The Face Amount on that date.

Option B: The Face Amount plus the Policy Value on that date.

**Minimum Death Benefit**

The Minimum Death Benefit will be equal to a percentage of the Policy Value as of the insured's attained age at the beginning of the Policy Year in which the insureds death occurs, as follows:

| ATTAINED AGE | % OF POLICY VALUE | ATTAINED AGE | % OF POLICY VALUE | ATTAINED AGE | % OF POLICY VALUE |
|---|---|---|---|---|---|
| 0-40 | 250% | 54 | 157% | 68 | 117% |
| 41 | 243% | 55 | 150% | 69 | 116% |
| 42 | 236% | 56 | 146% | 70 | 115% |
| 43 | 229% | 57 | 142% | 71 | 113% |
| 44 | 222% | 58 | 138% | 72 | 111% |
| 45 | 215% | 59 | 134% | 73 | 109% |
| 46 | 209% | 60 | 130% | 74 | 107% |
| 47 | 203% | 61 | 128% | 75 | 105% |
| 48 | 197% | 62 | 126% | 76-90 | 105% |
| 49 | 191% | 63 | 124% | 91 | 104% |
| 50 | 185% | 64 | 122% | 92 | 103% |
| 51 | 178% | 65 | 120% | 93 | 102% |
| 52 | 171% | 66 | 119% | 94 | 101% |
| 53 | 164% | 67 | 118% | 95 and over | 100% |

**Death Benefit Following Insured's Age 100**

After the Policy Anniversary which follows the Insured's birthday, the Death Benefit will equal the Policy Value. Monthly Service Charges and Cost of Insurance Charges will not be deducted after this anniversary, nor can any premiums be paid. Policy loans and partial withdrawals will continue to be made available after this anniversary.

U606

EXHIBIT 2 - PAGE 80

**Change in Death Benefit Option**

The Face Amount and Death Benefit Option You have chosen initially are shown on the initial Schedule Pages. While this policy is In Force, You may request In Writing to change the Death Benefit Option. Any change will be subject to the following:

1. A change in Death Benefit Option will require that there be *no immediate change* in Our insurance risk. To assure this, when We approve a change from Option A to Option B, We will decrease the Face Amount by the Policy Value. Such a change from Option A to Option B may not be made if it would reduce the Face Amount below the Minimum Face Amount shown on the Schedule Pages. Similarly, when We approve a change from Option B to Option A, We will increase the Face Amount by the Policy Value. We will not require evidence of insurability for a change in Death Benefit Option. You are limited to one change in Death Benefit Option for each Policy Year.

2. The effective date of any change will be the Monthly Calculation Day next following Our approval of Your Written Request for change. This date will be shown on the Revised *Schedule Pages* that We will send You.

**Request for a Decrease in Face Amount**

You may request a decrease in face amount at any time after the first Policy Year. The decrease requested must at least equal $25,000 and the face amount remaining after the decrease must at least equal $250,000. All requests to decrease the face amount must be In Writing and will be effective on the first Monthly Calculation Day following the date We approve the request. We reserve the right to require that this policy first be returned to Us before the decrease is made. Upon a decrease in face amount, a partial surrender charge will be deducted from the Policy Value based on the amount of the decrease. The charge will equal the applicable surrender charge that would then apply to a full surrender multiplied by the result of dividing the decrease in face amount by the face amount of the policy before the decrease. We will send You a Revised Schedule Page reflecting the change.

## PART 8: MISCELLANEOUS PROVISIONS

**Annual Report**

We will send You, without charge, a report for each Policy Year which includes:

1. the current Policy Value, Death Benefit, Face Amount and Surrender Value;

2. any partial withdrawals, premiums paid, interest credited and charges made during the year;

3. any outstanding policy loans and new loans and loan repayments made during the year; and

U606

EXHIBIT 2 - PAGE 81

4.  any other information required by the insurance supervisory official of the state in which this policy was delivered.

You have the right to request an illustrative report at any other time. We reserve the right to charge up to $25.00 for the report.

**Projection of Benefits and Values**

We will provide You, on Written Request and payment of Our service fee of up to $25.00, a projection of illustrative future benefits and values under Your policy. We may limit the number of such projections in any Policy Year.

**Notices By Us**

Whenever We are required to give notice to You, it shall be deemed given if We mail it to You and, unless otherwise specified, to the assignee of record, if any, in a postage-paid envelope mailed by first class mail to the last known address of record at Our Main Administrative Office.

**Deferment of Certain Payments**

We may defer, for not more than six months after We receive Written Request, the payment of the Surrender Value due to surrender or partial withdrawal or the making of any loan. If payment is deferred 31 days or more on any surrender, interest will be paid at an effective annual rate of 4.00% on the amount deferred, from the date the request is received to the date of payment.

**Claims of Creditors**

The proceeds and any income payments under this policy shall not be subject to the claims of creditors and shall be exempt from legal process, levy or attachment to the extent allowed by law.

**Corrections**

We reserve the right to correct any clerical errors in this policy, or in Our administration of the policy.

# PART 9: PAYMENT OPTIONS

**Who May Elect Payment Options**

The surrender or death proceeds of this policy will be paid in one sum unless otherwise provided. As an alternative to payment in one sum as provided under Option 1, the proceeds may be applied under one or more of the alternative income payment options described in this Part.

However, Our consent is required for the election of an income payment option by a fiduciary or any entity other than a natural person. Our consent is also required for elections by any Assigns or an owner other than the Insured if the owner has been changed.

Except for Option 7 which is not available for death proceeds, You may elect any payment option for payment of the death proceeds. You may also designate or change one or more beneficiaries who will be the payee or payees under that Option. You may only do this during the lifetime of the Insured. If no election is in effect when the death benefit becomes payable, the beneficiary may elect any payment option other than Option 7. The payment options are also available to the payee of any Surrender Value that becomes payable under this policy.

Unless We agree otherwise, all payments under any Option chosen will be made to the designated payee or to his or her executor or administrator. We may require proof of age of any payee or payees on whose life payments depend as well as proof of the continued survival of any such payee(s).

**How To Elect a Payment Option**

The election of an income payment option must be In Writing. You can elect that the payments be made on an annual, semi-annual, quarterly, or monthly basis provided that each installment will at least equal $25. We also require that at least $1,000 be applied under any option chosen.

**What Payment Options Are Available**

This section provides a brief description of the various payment options that are available. In Part 10 You will find tables illustrating the guaranteed installment amount provided by several of the Options described in this section. The amounts shown for Option 4, Option 5 and Option 7 are the minimum monthly payments for each $1,000 applied. The actual payments will be based on the monthly payment rates We are using when the first payment is due. They will not be less than shown in the tables.

Option 1 – Payment in one sum

Option 2 – Left to earn interest

We pay interest on the amount left with Us under this Option as a principal sum.

We guarantee that at least one of the versions of this Option will provide interest at a rate of at least 3% per year.

Option 3 – Payments for a specified period

Equal income installments are paid for a specified period of years whether the payee lives or dies. The first payment will be on the date of settlement.

The Option 3 Table shows the guaranteed amount of each installment for monthly and annual payment frequencies. The table assumes an interest rate of 3% per year on the unpaid balance. The actual interest rate is guaranteed not to be less than this minimum rate.

Option 4 – Life annuity with specified period certain

Equal installments are paid until the later of:

a) the death of the payee;

b) the end of the period certain.

EXHIBIT 2 - PAGE 83

The first payment will be on the date of settlement. The period certain must be chosen at the time this Option is elected. The periods certain that may be chosen are as follows:

a) ten years;

b) twenty years;

c)   until the installments paid refund the amount applied under this Option. If the payee is not living when the final payment falls due, that payment will be limited to the amount which needs to be added to the payments already made to equal the amount applied under this Option.

If, for the age of the payee, a period certain is chosen that is shorter than another period certain paying the same installment amount, We will deem the longer period certain as having been elected.

Any life annuity as may be provided under this Option is calculated using an interest assumption of 3 3/8%, except that any life annuity providing a period certain of twenty years or more is calculated using an interest rate of 3 1/4%.

Option 5–  Life annuity

Equal installments are paid only during the lifetime of the payee. The first payment will be on the date of settlement.

Any life annuity as may be provided under this Option is calculated using an interest rate of 3 1/2%.

Option 6–  Payments of a specified amount

Equal installments of a specified amount, out of the principal sum and interest on that sum, are paid until the principal sum remaining is less than the amount of the installment. When that happens, the principal sum remaining with accrued interest will be paid as a final payment. The first payment will be on the date of settlement. The payments will include interest on the principal sum remaining at a rate guaranteed to at least equal 3% per year. This interest will be credited at the end of each year. If the amount of interest credited at the end of a year exceeds the income payments made in the last 12 months, that excess will be paid in one sum on the date credited.

EXHIBIT 2 - PAGE 84

Option 7 – Joint survivorship annuity with a 10-year period certain

This payment option is not available for death proceeds. This Option is only available if the policy is surrendered within 6 months of the Policy Anniversary nearest the Insured's 55th, 60th, or 65th birthday. The first payment will be on the date of settlement. Equal income installments are paid until the latest of:

a) the end of the 10-year period certain;

b) the death of the Insured;

c) the death of the other named annuitant.

The other annuitant must be named at the time this Option is elected and cannot later be changed. That annuitant must have an adjusted age as defined in Part 10 of at least 40.

Any joint survivorship annuity as may be provided under this Option is calculated using an interest rate of 3 3/8%.

**Other Payment Options**

We may offer other payment options or alternative versions of the options listed in the above section.

**Additional Interest**

In addition to:

a) the interest of 3% per year guaranteed on the principal sum remaining with Us under Option 2 or 6; and

b) the interest of 3% per year included in the installments payable under Option 3;

We will pay or credit at the end of each year such additional interest as We may declare.

# PART 10: TABLES OF PAYMENT OPTION AMOUNTS

The installment amounts shown in the tables that follow are shown for each $1,000 applied. Amounts for payment frequencies, periods or ages not shown will be furnished upon request. Under Options 4 and 5, the installment amount for younger ages than shown will be the same as for the first age shown and for older ages than shown, it will be the same amount as for the last age shown.

**Adjusted Age**

The term "age" as used in the tables refers to the adjusted age. Under Options 4 and 5, the adjusted age is defined as follows:

a) for Surrender Values, the age of the payee on the payee's nearest birthday to the Policy Anniversary nearest the date of surrender;

EXHIBIT 2 - PAGE 85

a) for death benefits, the age of the payee on the payee's birthday nearest the effective date of the payment option elected.

Under Option 7, the adjusted age is the age on the nearest birthday to the Policy Anniversary nearest the date of surrender. The table for Option 7 only shows the amounts for annuitants of the opposite sex. Rates for annuitants of the same sex will be furnished upon request.

EXHIBIT 2 - PAGE 86

### Option 3 – Payments for a specified period

| Number of Years | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|
| Annual Installment $ | 211.99 | 179.22 | 155.83 | 138.31 | 124.69 | 113.82 | 104.93 | 97.54 | 91.29 |
| Monthly Installment $ | 17.91 | 15.14 | 13.16 | 11.68 | 10.53 | 9.61 | 8.86 | 8.24 | 7.71 |

| Number of Years | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 25 | 30 |
|---|---|---|---|---|---|---|---|---|---|
| Annual Installment $ | 85.95 | 81.33 | 77.29 | 73.74 | 70.59 | 67.78 | 65.26 | 55.76 | 49.53 |
| Monthly Installment $ | 7.26 | 6.87 | 6.53 | 6.23 | 5.96 | 5.73 | 5.51 | 4.71 | 4.18 |

### *Option 4 – Life annuity with specified period certain

| Age of Payee | Installment Refund | | 10 Years Certain | | 20 Years Certain | | Age of Payee | Installment Refund | | 10 Years Certain | | 20 Years Certain | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Male | Female | Male | Female | Male | Female | | Male | Female | Male | Female | Male | Female |
| 10 | $3.08 | $3.03 | $3.08 | $2.99 | $3.00 | $2.94 | 50 | $4.36 | $4.12 | $4.50 | $4.10 | $4.28 | $3.99 |
| 15 | 3.14 | 3.09 | 3.15 | 3.04 | 3.07 | 3.00 | 55 | 4.76 | 4.47 | 4.95 | 4.47 | 4.61 | 4.31 |
| 20 | 3.22 | 3.16 | 3.24 | 3.11 | 3.15 | 3.07 | 60 | 5.28 | 4.93 | 5.54 | 4.96 | 4.97 | 4.67 |
| 25 | 3.33 | 3.24 | 3.34 | 3.20 | 3.25 | 3.15 | 65 | 5.97 | 5.54 | 6.30 | 5.63 | 5.29 | 5.06 |
| 30 | 3.45 | 3.35 | 3.47 | 3.30 | 3.38 | 3.25 | 70 | 6.91 | 6.39 | 7.24 | 6.50 | 5.43 | 5.31 |
| 35 | 3.61 | 3.48 | 3.64 | 3.43 | 3.55 | 3.38 | 75 | 8.21 | 7.57 | 8.26 | 7.56 | 5.44 | 5.40 |
| 40 | 3.80 | 3.64 | 3.86 | 3.60 | 3.74 | 3.54 | 80 | 10.04 | 9.26 | 9.12 | 8.60 | 5.46 | 5.46 |
| 45 | 4.05 | 3.85 | 4.14 | 3.82 | 3.99 | 3.74 | 85 | 12.61 | 11.68 | 9.60 | 9.31 | 5.46 | 5.46 |

### *Option 5 – Life annuity

| Age of Payee | Male | Female | Age of Payee | Male | Female |
|---|---|---|---|---|---|
| 10 | $3.17 | $3.12 | 50 | $4.62 | $4.28 |
| 15 | 3.24 | 3.18 | 55 | 5.12 | 4.68 |
| 20 | 3.32 | 3.25 | 60 | 5.79 | 5.24 |
| 25 | 3.42 | 3.34 | 65 | 6.75 | 6.04 |
| 30 | 3.56 | 3.44 | 70 | 8.15 | 7.22 |
| 35 | 3.73 | 3.58 | 75 | 10.26 | 9.03 |
| 40 | 3.95 | 3.75 | 80 | 13.54 | 11.88 |
| 45 | 4.24 | 3.98 | 85 | 18.72 | 16.54 |

**\* Option 7 - Joint survivorship annuity with 10-year period certain**

| Age of Other Annuit- ant F | Age of Insured Male | | Age of Other Annuit- ant F | Age of Insured Male | | Age of Other Annuit- ant M | Age of Insured Female | | Age of Other Annuit- ant M | Age of Insured Female | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 55 | 60 | | 55 | 60 | | 55 | 60 | | 55 | 60 |
| 40 | $3.62 | $3.64 | 60 | $4.43 | $4.64 | 40 | $3.72 | $3.77 | 60 | $4.34 | $4.64 |
| 45 | 3.80 | 3.83 | 65 | 4.61 | 4.93 | 45 | 3.89 | 3.97 | 65 | 4.44 | 4.82 |
| 50 | 4.00 | 4.07 | 70 | 4.75 | 5.18 | 50 | 4.06 | 4.19 | 70 | 4.50 | 4.95 |
| 55 | 4.22 | 4.34 | 75 | 4.86 | 5.36 | 55 | 4.22 | 4.43 | 75 | 4.54 | 5.03 |

\* Minimum monthly income for each $1,000 applied

EXHIBIT 2 - PAGE 88

# AGE 100+ RIDER

This rider is part of the policy to which it is attached.  Except as stated in this rider, it is subject to all of the provisions contained in the policy.

**Rider Date:**  DECEMBER 28, 2005

**Rider Charge Date:**  N/A

## DEFINITIONS

**Age 100 Anniversary**
The Policy Anniversary nearest the Insured's 100th birthday.

## GENERAL

**Death Proceeds**
While this rider is in effect, the "Death Proceeds" provision of the basic policy is amended by adding the following to the end of that provision:

On and after the Age 100 Anniversary, the death proceeds at the death of the insured are equal to:

a)   the Death Benefit, as described below;  MINUS

b)   any partial withdrawals made after the Date of Death and prior to receipt of Written Notice of the insured's death; MINUS

c)   any debt then existing on this policy

**Death Benefit Following Insured's Age 100**
While this rider is in effect, the "Death Benefit Following Insured's Age 100" provision of the basic policy is replaced with the following:

On and after the Age 100 Anniversary, the death benefit will equal 1 or 2, whichever is greater:

1.   the face amount of the basic policy on the date of the insured's death, plus the Total Rider Insurance Amount under the Individual Term Rider as of the day before the Age 100 Anniversary provided the Individual Term Rider was in effect on that date; or

2.   the Policy Value on the date of the insured's death.

Monthly Service Charges and Cost of Insurance Charges will not be deducted after this anniversary, nor can any premiums be paid.  Policy loans and partial withdrawals will continue to be made available after this anniversary.

**Under federal tax law, this policy may not qualify as life insurance after the Age 100 Anniversary. It may be subject to adverse tax consequences and a tax advisor should be consulted before You choose to continue the policy after the Age 100 Anniversary.**

UR69 CA

- 1 -

EXHIBIT 2 - PAGE 89

**Monthly Rider Charges**
There is no charge for this rider.

**Termination of This Rider**
This rider will terminate on the first of any of the following events to occur:

1.  the date of full surrender or lapse of the basic policy;

2.  Our receipt of Your Written Request to cancel this rider, which shall be effective as of the next Monthly Calculation Day; or

3.  the date of the insured's death.

Upon termination of this rider the "Death Benefit Following Insured's Age 100" provision in the policy will become operative including any consequent reduction in death benefit to equal the Policy Value. No retroactive assessment will be made for monthly deductions waived under this rider.

PHL Variable Insurance Company

*Dona D. Young*

Chairman, President
and Chief Executive Officer

UR69 CA

EXHIBIT 2 - PAGE 90

# ACCELERATED BENEFIT RIDER

This Rider is part of the Policy to which it is attached, effective as of the Rider Date, if it is listed on the Policy's Schedule Page or in an Endorsement after that page. You should therefore review the Policy's Schedule Page for applicability. Except as stated in this Rider, it is subject to all of the provisions contained in the Policy.

**THE BENEFIT PAID UNDER THIS RIDER MAY BE TAXABLE. YOU SHOULD CONSULT YOUR PERSONAL TAX ADVISOR REGARDING POSSIBLE TAX CONSEQUENCES.**

| | |
|---|---|
| **Rider Date** | SAME AS POLICY DATE |
| **Maximum Administrative Charge** | $300.00 |
| **Maximum Proportion Allowable** | 75% |
| **Maximum Accelerated Benefit** | $250,000 |
| **Minimum Remaining Face Amount** | $10,000 |

**Definitions**

**Insured** is the person covered under the basic Policy.

**You (Your)** is the owner of the Policy to which this Rider is attached.

**We (Our, Us)** refers to PHL Variable Insurance Company.

**Eligible Amount** is the amount of insurance under the Policy that is eligible for accelerated payment. It is equal to the death benefit of the basic Policy at the time of claim plus any term insurance amounts In Force provided by Rider on the life of the Insured, which provides coverage renewable to the Insured's attained age 95 or beyond, but exclusive of any other supplemental Rider death benefits.

**Proportion** is the percentage of the Eligible Amount that will be accelerated under this Rider. The Proportion is chosen by You at the time of election of an accelerated benefit, subject to the following limitations. The Proportion elected:

1. can be no more than the Maximum Proportion Allowable as specified in this Rider;

2. cannot result in a remaining death benefit below the minimum as specified in this Rider; and

3. cannot result in a Requested Benefit that exceeds the Maximum Accelerated Benefit as specified in this Rider.

This Rider terminates upon payment of the accelerated benefit.

**Maximum Accelerated Benefit** is the amount shown on the first page of this Rider. This Maximum Accelerated Benefit applies, in aggregate, to all policies issued on the Insured by Us.

**Requested Benefit** is the Proportion multiplied by the Eligible Amount.

**Terminal Illness** is an illness or condition that is expected to result in the Insured's death within six months based on evidence satisfactory to Us as defined under the Proof of Terminal Illness section below.

**Rider Description**

This Rider allows You to elect an accelerated benefit upon terminal illness of the Insured. The election must be made by a Written Request signed by You. We must also receive proof satisfactory to Us of the Insured's terminal illness as described in the Proof of Terminal Illness section below. The amount of the accelerated benefit will be adjusted as described under the Payment Made to You section below. The resulting payment will be made in a lump sum. Policy Values, cash Surrender Values, loan values and the death benefit as specified in the Policy to which this Rider is attached will be reduced if You receive an accelerated benefit. There is no premium charge for this Rider.

**Payment Made To You**

The amount of the payment made to You will be determined by discounting the Requested Benefit at Our then current discounting rate for a period of twelve (12) months, to reflect the early payment of insurance proceeds under the Policy.

Our discounting rate will be subject to the higher of:

1. 5%; or
2. the Published Monthly Average for the calendar month ending two months before the Policy Anniversary on or immediately preceding the date that We receive Your Written Request for payment under this Rider.

The Published Monthly Average will be:

a. The Corporate Bond Yield Average –– Monthly Average Corporates as published by Moody's Investors Service, Inc. or any successor to that Service; or
b. If that Monthly Average is no longer published, a substantially similar average, established by regulation for policy loan rates issued by the Insurance Department of the state where the Rider was delivered will be applicable.

If the discounting rate computed for a Policy Year is no more than 1/2% higher than the rate in effect for the previous Policy Year, then We will maintain such prior year's rate.

If the discounting rate computed for a Policy Year is no more than 1/2% lower than the rate in effect for the previous Policy Year, then We may, at Our discretion, maintain such prior year's rate.

If the cash Surrender Value multiplied by the Proportion exceeds the discounted value, then the discounted Requested Benefit will be increased to equal such greater amount.

UR11                                      2

EXHIBIT 2 - PAGE 92

The discounted Requested Benefit is reduced by the Proportion of any Policy debt, including any unpaid loan interest, and the Proportion of any other amounts due Us from You. This result is then reduced by Our then current Administrative Charge for benefits under this type of Rider, not to exceed the maximum as specified in this Rider. The amount that remains is the payment that will be made to You.

In the event that the Insured dies after the Written Request but before We make the payment, and We receive Written Notice at Our Main Administrative Office during this period of this event, the request will be considered void, and no payment will be made under this Rider.

**Effect On Contract**

The following values will be reduced by the Proportion at the time the payment is made to You:

1. the future planned premium payable on the basic Policy;

2. the face amount of the Policy at the time of claim;

3. the cash value (Policy Value);

4. any remaining Surrender Charge;

5. the cash Surrender Value; and

6. any Policy debt including any unpaid loan interest.

If this Rider is attached to a variable life insurance policy that permits fund investment in various subaccounts of Our Variable Universal Life Separate Account, the reduction in Policy Value will be achieved through a proportionate reduction in this Policy's share in the value of each subaccount based on the allocation You request at the time of Your accelerated benefit request. If no allocation request is made, the assignment to each subaccount will be made in the same manner as provided for monthly deductions.

Future values under the Policy will be determined in a manner consistent with that under the original Policy, as adjusted to reflect the above reductions. We will mail to You a new policy Schedule Page reflecting any payment made under this Rider.

**Proof of Terminal Illness**

A licensed physician, who is not Yourself or a member of Your family, must provide Us with evidence satisfactory to Us of the Insured's terminal illness. We reserve the right to obtain a second medical opinion from a physician of Our choosing at Our expense.

**Conditions**

Payment under this Rider is subject to the following conditions:

1. The Policy must not have lapsed.

2. We will require the consent of any assignees and irrevocable beneficiaries to any request for payment under this Rider.

3. No payments will be made under this Rider to satisfy the claims, demands, or obligations of any creditor, trustee in bankruptcy or governmental agency, or arising under any court order directed against You, to the extent that We have written notice thereof.

**Rider Termination**          This Rider will terminate on the earliest of:

1. Lapse or surrender of this Policy to which it is attached.

2. Our receipt of Your written request to terminate this Rider; or

3. Payment of any benefit under this Rider.


PHL Variable Insurance Company


*John H. Beers*


Secretary

# Life Plan Options Rider

This rider is part of the policy to which it is attached.  Except as stated in this rider, it is subject to all of the provisions contained in the policy.

## DEFINITIONS

Option Review Period
The 90-day period immediately preceding the 5th, 10th and 15th Policy Anniversaries.

Individual Term Life Rider
As used in this rider form "Individual Term Life Rider" refers to any of the following riders: Individual Term Rider, Individual Term Insurance Rider, Policy Term Rider, Policy Term Insurance Rider, Phoenix Individual Edge Term Rider, or the Variable Policy Term Rider.

## OPTION BENEFITS

Increased Coverage Determination without Medical Exam
Policies that include both this rider and the Individual Term Life Rider are eligible during each Option Review Period, while both such riders are in effect, for an increase in their term insurance rider amount up to a maximum lifetime increase of $1,000,000, with underwriting and our agreement to such increase determined without the inconvenience of an additional medical exam.  Our other ordinary underwriting rules will continue to apply and thus the increase in coverage is still subject to our normal underwriting approval.

Other conditions that apply to this option are as follows:
- The basic policy face amount must be at least $1,000,000 at original issue of the basic policy.
- The insured must be attained age 65 or younger on the last day of the Option Review Period.
- The risk classification of the insured must be standard through Table D (200%) at original issue of the basic policy.
- The insured must be alive and meet our underwriting requirements at the time of your request for the increase in term rider face amount.
- The Individual Term Life Rider must either already be attached to the policy or then currently approved and available for sale in the state of applicable jurisdiction.
- There is a maximum lifetime increase of $1,000,000 per insured life.

Reduced Coverage without Surrender Charge
During each Option Review Period you may request a decrease in the face amount of the policy without our assessment of the partial surrender charge that, under the terms of your basic policy, would otherwise apply.  In such case the surrender charge remaining under the policy will continue to be calculated as if such decrease in face amount had not been made.

Other conditions that apply to this option are as follows:
- The basic policy face amount must be at least $1,000,000 at original issue of the basic policy.
- Total option reductions of the basic policy face amount may not exceed the lesser of 50% of the initial basic policy face amount or $5,000,000 in combined aggregate of all option reductions for all Our policies on the same insured.

UR73

1

EXHIBIT 2 - PAGE 95

**Exchange for Annuity without Surrender Charge**
During each Option Review Period beginning with the 90-day period preceding the 10th policy anniversary, you may request that the policy be surrendered as part of an exchange request to an eligible annuity offered by us.  In such an exchange, we would not assess the surrender charge that would otherwise apply.  In such case, the new annuity will reflect the usual surrender charges that would ordinarily apply for new business.

Other conditions that apply to this option are as follows:
- The basic policy face amount must be at least $1,000,000 at original issue of the basic policy.


## TERMINATION OF THIS RIDER

This rider will terminate on the first of any of the following events to occur:

1.  exercise of the Exchange for Annuity without Surrender Charge Option;

2.  the 15th policy anniversary;

3.  termination of the basic policy.




PHL Variable Insurance Company

*Dona D. Young*

Chairman, President
and Chief Executive Officer

# EXCHANGE OF INSURED OPTION RIDER

This rider is part of the policy to which it is attached. Except as stated in this rider, it is subject to all of the provisions contained in the policy.

**The Exchange Option**
While this rider is in effect and subject to its terms, you have the option to exchange your policy ("the exchange policy") for a new policy on the life of a substitute insured.

**How to Exercise This Option**
To exercise this option, You must file an application with Us at Our Main Administrative Office.  It must be signed by You. We must also receive:

1.  Evidence that You have a satisfactory insurable interest in the life of the substitute insured.

2.  Evidence that the substitute insured is insurable under our established practice in the selection of risks for the amount and plan applied for.  Selection of risks includes health and non-health factors.

3.  The release of any lien against or assignment of your policy.  You may instead submit written approval by the lienholder or assigns of the exchange policy in a form satisfactory to Us with such other documents as We may reasonably require.

4.  The surrender and release of the exchange policy.

5.  Payment of any amounts due to Us for the exchange as described in the Exchange Adjustments.

Unless otherwise provided in the application, the owner and the beneficiary of the new policy will be the same as under the exchange policy.  Any subsequent changes will be governed by provisions of the new policy.

The Date of Exchange will be the policy anniversary following the later of:

1.  Our receipt of the application;

2.  Payment of the Exchange Adjustments, if any; and

3.  Our approval of the insurable interest.

The new policy will take effect on the Date of Exchange. When the new policy takes effect, the exchange policy will terminate.

**The New Policy**
The Policy Date of the new policy will be the Date of Exchange.

The issue age of the Insured under the new policy will be determined based upon the substitute insured's age on his or her birthday nearest the date of issue of the new policy.

The new policy on the life of the substitute insured will be written on any plan of universal life insurance issued with a level face amount issued by Us at the time of the exchange. The new policy will be subject to Our published issue rules (e.g., age and amount limits) for the plan chosen which are in effect at that time. The risk classification and any exclusions applicable to the new policy will be determined in accordance with Our rules and practices in effect on the date of exchange. The rates for the new policy will be based on Our published rates in effect on the Date of Exchange.

UR77                                    - 1 -

EXHIBIT 2 - PAGE 97

The face amount of the new policy will equal the basic face amount of the exchange policy without regard to any riders under the exchange policy, except as provided below. The Policy Value of the exchange policy on the Date of Exchange will be applied as premium to the new policy, but without any issue or sales charge applied under the new policy.

**Exchange Adjustments**
The owner must pay an amount equal to the excess, if any, of the surrender charge in effect on the exchange policy over the surrender charge for the new policy. All such surrender charges will be determined as of the Date of Exchange.

In some cases, the amount of Policy Value that may be applied to the new policy may exceed the premium limit for the new policy. In that event, We will return such excess Policy Value to You in cash.

**Monthly Rider Charges**
There are no Monthly Charges for coverage under this rider.

**Termination of This Rider**
This rider will terminate on the first of any of the following events to occur:

1. Termination of the exchange policy;

2. Lapse or Exchange of the exchange policy;

3. Our receipt at Our Home Office of a Written Request to cancel this rider; and

4. Death of the insured.


PHL Variable Insurance Company

*Dona D. Young*

Chairman, President
and Chief Executive Officer

EXHIBIT 2 RUPAGE 98

**◆PHOENIX**

P.O. Box 8027
Boston, MA 02266-8027
Underwriting Service Center

**Policy Acceptance Form**

Company is defined as indicated below:

☐ Phoenix Life and Annuity Company
☒ PHL Variable Insurance Company

| Agency: | E7500 | Insured(s): | |
|---|---|---|---|
| Policy Number: | 97514671 | | |

**DECLARATION:**

The insured(s) declares that the statements made in the application remain full, complete, and true as of this date; that since the date of the application, no insured has applied to any insurance company or society without receiving the exact policy applied for or had any symptoms, diseases or disorders for which advice has been sought.

All insured(s) must attest to the above declaration. If any insured cannot attest to the above statement, please so indicate by checking the box next to that insured's signature below and complete a Health Statement Form for that insured. **PLEASE NOTE: Home Office approval of the Health Statement Form is necessary before the policy is in effect.**

**AMENDMENTS:**   The application for Policy No. 97514671 is amended as follows:

> **There is no coverage under application #v08311050379328 dated 09/28/2005.**
> **The application Part 1 is hereby amended to reflect the company name as PHL Variable Insurance Company.**

It is agreed that the above declaration and amendments are part of the application and shall be part of the policy.

**DELIVERY RECEIPT:** To be completed when policy is delivered. If a Health Statement Form is required, please consult with your agent before completing this section.

This certifies that as the policy owner, (check ONE only):

☐ I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information.

☐ I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information, and authorize _____ to hold such policy on my behalf.

| Date | _____ | Insured(s) | _____ |
|---|---|---|---|
| Signed at | _____ | | _____ |
| Witness | _____ | | _____ |
| Owner | _____ | | _____ |
| Owner | (If other than Insured) | | _____ |

If owner is a firm or corporation, please give the name of the firm or corporation and the title of the officer signing for the firm or corporation.

**AGENT:** ORIGINAL to Underwriting and Issue, YELLOW copy to Agent, PINK copy to remain with policy.

EXHIBIT 2 - PAGE 99

HHR11ZZ1   10-98

**PHOENIX®**  PO Box 8027  Boston MA 02266-8027

**Application for Life Insurance**
**Part I**

Company is defined as indicated below: (check one)
☑ Phoenix Life Insurance Company  ☐ PHL Variable Insurance Company  ☐ Phoenix Life and Annuity Company

**Section I – Proposed Insured**

[redacted]

Business Address (street name, apt. number, city, state, and zip code)        Bus. Tele. No. (include area)
( )

Email Address

**Section II – Ownership**

☐ A.  Insured
☐ B.  Successive Owners
☐ B1. Owners Jointly
☐ C.  Corporation, its successors or assigns (include state of incorporation)

☐ D. Partnership (include Name of all Partners - if partnership is limited, indicate which partners are general partners)
☐ E. Sole Proprietorship (include Name of Sole Proprietor)
☑ F. Trust (include Name and Date of Trust, Name of Trustee(s) and Grantor)

(Complete section below if A, C, D, E or F are checked)
If Owner is other than Proposed Insured, Premium Notice will be sent to:

[redacted]

Name _____   Date of Birth _____
Relationship _____
Ultimate Owner: Check one. If none checked, insured will be ultimate owner.
☐ Insured   ☐ Executor or administrator of the survivor of the primary and contingent owners

**Section III – Beneficiary Designation**

| Primary Beneficiary | Relationship to Proposed Insured | Date of Birth (if Available) | Social Security No. (if known) |
|---|---|---|---|
| | | | |

If two or more are indicated, each of the Contingent Beneficiaries listed shall receive all equal interest.

| First Contingent Beneficiary | Relationship to Proposed Insured | Date of Birth (if Available) | Social Security No. (if known) |
|---|---|---|---|
| | | | |
| Second Contingent Beneficiary | Relationship to Proposed Insured | Date of Birth (if Available) | Social Security No. (if known) |
| | | | |

If Trust is primary beneficiary: (check one)
☐ Trust under Insured's will

[redacted]                                                      Proposed Insured's death.

OL2773                                  1 of 5          v01131058432852                      +42

EXHIBIT 2 - PAGE 100

**Section IV – Coverage Applied For**

Plan of Insurance: _PHOENIX ACCUMULATOR UL II_

State Policy Amount: $ _10,000,000_

**Section V – VARIABLE/UNIVERSAL PLANS of Insurance - Riders and Features**

First Year Anticipated, BILLED Premium (excluding 1035 Exchange, Lump Sum Funds, etc.): $ _1,450,000_

Unplanned Planned Annual Premium: $ _-0- YR. 2  $525 YER/YR. THEREAFTER_

- ☐ Disability Waiver of a Specified Amount
  Amount $ _____
- ☐ Accidental Death Benefit Rider
- ☐ Death Benefit Protection Rider
  - ☐ Age 70   ☐ Age 80   ☐ Age 100
- ☐ Purchase Protector _____ units
- ☐ Child's Term Rider
- ☐ Family Term Rider
- ☑ Living Benefit Rider
- ☐ Guaranteed Death Benefit Rider
- ☐ Guaranteed Extension Rider
- ☐ Cash Value Accumulation Rider
- ☑ Age 100 + Rider
- ☐ Individual Term Rider $ _____

Death Benefit Option: (check one) If none checked, Option 1 will apply.
- ☑ Option 1 - Level Face Amount
- ☐ Option 2 - Increasing Face Amount

Face Amount Increase Options:
- ☐ _____ % percentage increase
- ☐ $ _____ Fixed Dollar Increase
- ☐ Increase Equal to Premiums Paid

Policy Option: (check one) If none checked, Option A will apply.
- ☐ Policy Option A
- ☐ Policy Option B
- ☐ Policy Option C
- ☐ Other _____
- ☐ Other _____
- ☐ Other _____
- ☐ Other _____

**Temporary Money Market Allocation**

If the state of issue does not require refund of premium during the Right To Cancel Period, but you prefer to temporarily allocate your premiums to the Money Market subaccount until the end of the Right to Cancel Period, as stated in the policy, indicate: ☐ Yes   ☐ No

**Telephone/Electronic Authorization**

I will receive this privilege automatically. By checking "Yes", I am authorizing and directing the Company to act on telephone or electronic instructions from my licensed agent who can furnish proper identification. The Company will use reasonable procedures to confirm that these instructions are authorized and genuine. As long as these procedures are followed, the Company and its affiliates and their directors, trustees, officers, employees, representatives and/or agents, will be held harmless for any claim, liability, loss or cost. ☐ Yes   ☐ No

**Electronic Delivery Authorization**

By checking "Yes", I am authorizing the Company to provide my statements, prospectuses and other information electronically if available. I understand that I must have internet access to use this service and there may be access fees charged by the internet service provider. ☐ Yes   ☐ No

**Section VI – Suitability**

Do you understand that if you have purchased a Variable Life Policy and the Death Benefit may be variable or fixed under certain conditions and that the Death Benefit and Cash Values under any Variable Policy may increase or decrease in amount or duration based on the investment experience of the underlying subaccounts? ☐ Yes   ☐ No

If you are purchasing a Variable Life Policy, do you believe it is suitable to meet your financial objectives? ☐ Yes   ☐ No

If I have purchased a Variable Life Policy, I confirm that I have received the prospectus for that policy and its underlying funds.

Illustrations of benefits including death benefits, policy values and cash surrender values are available on request.

**Section VII – Complete if Temporary Insurance is Requested**

If either of the following questions are answered "Yes" or left blank, no agent or broker is authorized to accept money and a Temporary Insurance Agreement may not be issued, and no coverage will take effect.

Yes   No
- ☐   ☐   1. Within the past two years have you been treated for heart disease, stroke, or cancer or had such treatment recommended?
- ☐   ☐   2. Within the past 60 days have you been scheduled or advised to have any diagnostic test (excluding HIV) tests or surgery not yet performed?

$ _____ has been paid by _____ to the Licensed Agent/Registered Representative indicated in this application, for proposed insurance applied for in this application. This sum is to be applied in accordance with and subject to the terms of the Temporary Insurance Receipt bearing the same number as this application.

OL2778                                    2 of 2          v0113105B432B52                      +02

EXHIBIT 2 - PAGE 101

**Section VIII - TERM/WHOLE LIFE PLANS of Insurance - Riders and Features**

☐ Accidental Death Benefit
☐ Disability Waiver of Premium on Insured
☐ Purchase Protector _____ units
☐ Family Protection
☐ Children's Protection _____ units
☐ Living Benefit Rider
☐ Other _____
Cost of Living is automatic (No COL for Term products) unless this box is checked ☐ I do not desire Cost of Living

Additional Death Benefit Riders
Primary Insurance Term Rider (PITR) $ _____
Other Rider Name _____ Amount $ _____

☐ Paid-Up Additions Purchase Options Rider (PAPOR) (check one)
   ☐ PAPOR A-Flexible   ☐ PAPOR B-Flexible with Optionterm
   Number of years payable _____
Intended premium payments for the first 7 years:
Year 1 _____   Year 5 _____
Year 2 _____   Year 6 _____
Year 3 _____   Year 7 _____
Year 4 _____   Maximum Amount $ _____

**Dividend Option:**
☐ Optionterm
   Optionterm Death Benefit $ _____
   Premium Paying Coverage ☐ Yes  ☐ No or
   % of Increase _____
☐ Accumulate at Interest (ACCUM)
☐ Paid-up Additional Insurance (PUA)
☐ One Year Term with Balance to:
   ☐ Cash   ☐ PUA   ☐ ACCUM   ☐ RP
☐ Reduce Premium (RP)
☐ Cash
☐ Other _____
☐ Other _____

Automatic Premium Loan, if applicable
☐ Yes  ☐ No

Policy Loan Interest Rate, if applicable (If none checked, "Variable" will apply.)
☐ Variable  ☐ Fixed

**Section IX - Mode of Premium Payment** - (Please note, there is a higher cost associated with the purchase of a Whole Life or Term policy, if the mode of payment is other than on an annual pay basis. Please consult with your Licensed Agent/Registered Representative.)

☑ Annual
☐ Monthly (Variable Life insurance only)
☐ Quarterly
☐ PCS (Phoenix Check-O-Matic Service)
   Minimum Monthly Check for Each Service - $25.00
☐ Semi-Annual

Multiple Billing Option - Give # or Details _____
☐ List Bill   ☐ Employee Insurance Counseling Service (EICS)   ☐ Salary Allotment   ☐ Pension   ☐ Money Purchase Pension
☐ Other _____

If electing PCS, complete the following:
Existing Policy Number or PCS File Number _____

Authorization Agreement for Preauthorized Payments
I (we) hereby authorize the Company (Note: Company is defined as indicated on page 1 of application) to initiate debit entries to my (our) checking account and the depository named below.

Information for New Account
Attach a void check to furnish encoding details.
If the depositor's name is not imprinted on the check, fill it in here exactly as it appears in the bank records.

Attach Void Check Here

Signature of depositor (if different from owner) _____

Send premium notices to: (in addition to owner)
☐ Insured at:   ☐ Home Address   ☐ Business Address
☑ Other (Name, Relationship to Owner and Address) ███████

OLX773

## Section X - Existing Life Insurance

Describe all additional coverage in force. Include individual and group. If no coverage inforce, check here ☐

| Company | Issue Date | Plan | Amount | Personal / Business | |
|---|---|---|---|---|---|
| AMERICAN NAT'L. INS. CO. | 1980's | UNIV. LIFE | $ 550,000 | ☑ | ☐ |
| | | | $ | ☐ | ☐ |
| | | | $ | ☐ | ☐ |

Total Life Insurance in force (if none, indicate) $ 550,000    Total Accidental Death Benefit in force (if none, indicate) $ NONE

| Yes | No | | |
|---|---|---|---|
| ☑ | ☐ | 1. | Are there any life insurance policies or annuity contracts, owned by, or on the life of, the applicants or the insureds or the owner(s) or the annuitant? |
| ☐ | ☑ | 2. | With this policy, do you plan to replace (in whole or in part) now or in the future any existing life insurance or annuity contract in force with this policy? |
| ☐ | ☑ | 3. | Do you plan to utilize values from any existing life insurance policy or annuity contract (through loans, surrenders or otherwise) to pay any initial or subsequent premium(s) for this policy? |

For all "Yes" answers above, please provide the following information

| Company | Issue Date | Plan | Amount | Personal / Business | |
|---|---|---|---|---|---|
| SAME AS ABOVE | | | $ | ☐ | ☐ |
| | | | $ | ☐ | ☐ |
| | | | $ | ☐ | ☐ |

## Section XI - Income

| Earned Income | Unreported Income | Net Worth |
|---|---|---|
| a. $ 20,000 /YEAR | b. $ 120,000 /YEAR | c. SEE INFO IN FILE |

## Section XII - Additional Information

1. Have you used tobacco or nicotine products in any form in the last 10 years? If "Yes," please circle the product(s) used: cigarettes, cigars, pipes, snuff, smokeless or chewing tobacco, nicotine patch or gum. If "Yes," check one: ☐ Use currently   ☐ Date quit _____

2. Have you ever applied for life, accident, or health insurance and been declined, postponed, or been offered a policy differing in plan, amount or premium rate from that applied for? (If "Yes," give date, company and reason).

3. Are you negotiating for other insurance? (If "Yes," name companies and total amount to be placed in force.)

4. Do you intend to live or travel outside the United States or Canada? (If "Yes," state where and for how long).

5. Have you flown during the past three years as a pilot, student pilot or crew member? (If "Yes," complete Aviation Questionnaire).

6. Have you participated in the past 3 years or plan to engage in any extreme sport activities such as motorized vehicle, or parachute jumping, or underwater diving, or any other extreme avocation? (If "Yes," complete Avocation Questionnaire).

7. Have you in the past three years been the driver of a motor vehicle involved in an accident, or charged with a moving violation of any motor vehicle law, or had your driver's license suspended or revoked?

8. Have you ever been convicted of a felony or do you have charges pending?

Give full details for all "Yes" answers above. If necessary, use an additional piece of paper and please sign it.

| Question # | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |

EXHIBIT 2 - PAGE 103



**Section XIII - Medical History (Not necessary to complete if medical or paramedical exam has been ordered)**

| Height | Weight | Has your weight changed by 10 pounds or more in the past 2 years? |
|---|---|---|

Have you ever had, or been told by a physician or other health care provider that you have:

1. High blood pressure or hypertension?
2. Pain, pressure, or discomfort in the chest, angina pectoris, palpitations, swelling of the ankles, or undue shortness of breath?
3. Heart disease, coronary artery disease, cardiomyopathy, heart failure, atrial fibrillation, heart rhythm abnormality, heart murmur, congenital heart disease or valvular heart disease?
4. Peripheral vascular disease, claudication, narrowing or blockage of arteries or veins?
5. Asthma, pulmonary fibrosis, chronic cough, emphysema, pneumonia, or any other lung disease?
6. Neurologic disease, seizures, fainting, falls, concussion, stroke, transient ischemic attack (TIA), tremor, neuropathy, weakness, pa... Parkinson's disease, memory loss, dementia, or any other disease of the brain or nervous system?
7. Depression, bipolar disorder, schizophrenia, anxiety, or other psychiatric illness?
8. Arthritis, lupus, or any musculoskeletal or skin disorder?
9. Ulcers, abdominal pain, colitis, Crohn's disease, gall bladder disease, liver disease, hepatitis, jaundice, pancreatitis, or any other disease of the gastrointestinal system?
10. Diabetes, kidney disease, kidney stones, bladder disorder, prostate disorder, protein or blood in the urine?
11. Endocrine disorder, including disorder of the thyroid, parathyroid, adrenal, or pituitary glands?
12. Acquired Immune Deficiency Syndrome (AIDS) or any other immunologic disorder?
13. Anemia, bleeding or clotting disorder, or any other disorder of the blood or bone marrow?
14. Cancer of any type, tumor (benign or malignant), leukemia, lymphoma, or Hodgkin's disease?

15. Are you taking any kind of medicine, therapy, or treatment regularly or at frequent intervals?
16. Have you ever been treated for alcoholism or been advised to limit or stop your use of alcohol?
17. Have you ever used narcotics, barbiturates, amphetamines, hallucinogens, or any prescription drug except in accordance with a physician's instructions?
18. Have you ever been a patient in any hospital, treatment center, or similar facility within the last 10 years?
19. Have you had, or been advised to have, any surgery, X-rays, electrocardiograms, blood studies (excluding HIV or AIDS tests), or other tests within the last 5 years?
20. Other than above, have you had any other physical or psychological disorder or been treated by a physician or other health care provider for any reason within the past 5 years?

Please provide details of "YES" answers (include question number, diagnosis, date of occurrence, hospital or treating physician's name and address, and current status). Use OL1590 if additional space is necessary to record all details.

Phoenix reserves the right to require additional medical information, medical examination or testing to complete the underwriting process.

OL275     5 of 6     v01131058432852     4-02

EXHIBIT 2 - PAGE 104

### Authorization To Obtain Information

I authorize any physician, health care provider, hospital, clinic or other medically-related facility, insurance company or the Medical Information Bureau (MIB), having any records or knowledge of me or my health, to provide any such information to Phoenix Life Insurance Company and its affiliated insurers (Phoenix) or its reinsurers. I authorize any of the above sources to release to Phoenix or its reinsurers any of my information relating to alcohol use, drug use and mental health care.

Medical information will be used only for the purpose of risk evaluation and determining eligibility for benefits under any policies issued. Phoenix may disclose information it has obtained to others as permitted or required by law, including the MIB, our reinsurers and other persons or entities performing business or legal services in connection with this application, any contract issued pursuant to it or in connection with the determination of eligibility for benefits under an existing policy. Information that is not personally identifiable may be used for insurance statistical studies.

If insurance on any minor child is applied for, this authorization extends to records and knowledge of that child and that child's health. To facilitate rapid submission of information, I authorize all of the above sources, except MIB, to give such records or knowledge to any agency employed by Phoenix to collect and transmit such information.

I authorize consumer reporting agencies, insurance companies, motor vehicle departments, my attorneys, accountants and business associates and the MIB to provide any information to Phoenix or its reinsurers that may affect my insurability. This may include information about my occupation, participation in hazardous activities, motor vehicle record, foreign travel, finances, and other insurance coverage in place.

I acknowledge that I have received a copy of the Notice of Information Practices, including information about Investigative Consumer Reports and the Medical Information Bureau. I authorize the preparation of an Investigative consumer report.

This authorization shall continue to be valid for thirty months from the date it is signed unless otherwise required by law. A photocopy of this signed authorization shall be as valid as the original. This authorization may be revoked by writing to Phoenix prior to the time the insurance coverage has been placed in force. I understand my authorized representative or I may receive a copy of this authorization on request.

□ I do  □ I do not (check one) require that I be interviewed in connection with any investigative consumer report that may be prepared.

I have reviewed this application, and the statements made herein are those of the proposed insured and all such statements made by the proposed insured in Part I or and in Part II of this application are full, complete, and true to the best knowledge and belief of the undersigned and have been correctly recorded.

I understand that i) no statement made to, or information acquired by any Licensed Agent/Registered Representative who takes this application, shall bind the Company unless stated in Part I and/or Part II of this application, and ii) the Licensed Agent/Registered Representative has no authority to make, modify, alter or discharge any contract thereby applied for.

I understand and agree that the insurance applied for shall not take effect unless and until each of the following has occurred: the policy has been issued by the Company; the premium required for issuance of the policy has been paid in full during the lifetime of the insured; all the representations made in the application remain true, complete and accurate as of that latest of such dates, and there has been no change in the health of any proposed insured that would change the answers to any of the questions in the application.

I understand that if there is any change in my health or physical condition, or if I visit a physician or am hospitalized, subsequent to the date I complete the application or provide any information to be contained in the application, I will inform the Company as soon as possible.

Under penalty of perjury, I confirm that (a) the Social Security or Tax Identification Number shown above is correct, and (b) that I am not subject to back-up withholding. (Strike this out and initial if not true).

Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud as determined by a court of competent jurisdiction.

If I have applied for the Living Benefit Rider, I confirm that I have received a copy of the disclosure form, Summary of Coverage for Accelerated Benefit Rider.

The Producer hereby confirms he/she has truly and accurately recorded on the application the information supplied by the Proposed Insured and that he/she is qualified and authorized to discuss the contract herein applied for.

Will the proposed insured replace (in whole or in part) any existing life insurance or annuity contract in force with the policy applied for? □ Yes  ☑ No

Will the proposed insured utilize values from another insurance policy (through loans, surrenders or otherwise) or annuity to pay for the initial or subsequent premium(s) for the policy applied for?  □ Yes  ☑ No

Are there any life insurance policies or annuity contracts owned by or on the life of the applicants or the insureds or the owner(s) or the annuitant?  ☑ Yes  □ No

v0113105843282                                                             1-82

EXHIBIT 2 - PAGE 105

09/28/2005  11:46   8062731    GPCH LAB                    PAGE  01

Sep 26_05_01:48p ___ Lynda Lylas              806 858-6738          P.2

**PHOENIX**

EXHIBIT 2 - PAGE 106

**ORIGINAL**

KHAI LEQUANG (SBN 202922)
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017

Attorneys for Plaintiff U.S. Bank Nat'l Association

---

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, a national association, as securities intermediary for LIMA ACQUISITION LP,<br><br>PLAINTIFF(S)<br><br>v.<br><br>PHL VARIABLE INSURANCE COMPANY, a Connecticut corporation,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV12 03046 - RGK MRWx<br><br><br><br>**SUMMONS** |

TO:     DEFENDANT(S):

     A lawsuit has been filed against you.

     Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Khai LeQuang, whose address is Orrick, Herrington & Sutcliffe , 777 S. Figueroa St., Ste 3200, Los Angeles, CA 90017. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ____4/6/12____

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

---

CV-01A (10/11)                       **SUMMONS**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is Michael Wilner.

The case number on all documents filed with the Court should read as follows:

## CV12- 3046 RGK  (MRWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as securities intermediary for LIMA ACQUISITION LP | PHL VARIABLE INSURANCE COMPANY |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>See Attachment A | Attorneys (If Known) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No   ☒ MONEY DEMANDED IN COMPLAINT: $ Amount T.B.D. at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
1) Breach of contract; 2) Breach of covenant of good faith and fair dealing; 3) Unjust enrichment

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☒ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**CV12    03046**

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☒ Yes
If yes, list case number(s): Concurrently filed Complaints involving same parties

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _Dan Zu for KJQ_   Date April 6, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# ATTACHMENT A

ATTORNEYS FOR U.S. BANK NATIONAL ASSOCIATION, as securities intermediary for LIMA ACQUISITION LP

KHAI LEQUANG
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone: (213) 629-2020
Facsimile:  (213) 612-2499

STEPHEN G. FORESTA (*pro hac vice motion to be filed*)
PHILIPP SMAYLOVSKY (*pro hac vice motion to be filed*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 506-5000
Facsimile:  (212) 506-5151