KHAI LEQUANG (SBN 202922)
klequang@orrick.com
MELANIE D. PHILLIPS (SBN 245584)
mphillips@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, California 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

STEPHEN G. FORESTA (admitted *pro hac vice*)
sforesta@orrick.com
PHILIPP SMAYLOVSKY(admitted *pro hac vice*)
psmaylovsky@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone: 212-506-5000
Facsimile: 212-506-5151

Attorneys for Plaintiff
U.S. BANK NATIONAL ASSOCIATION, AS
SECURITIES INTERMEDIARY FOR LIMA
ACQUISITION LP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, a national association, as securities intermediary for LIMA ACQUISITION LP, <br><br> Plaintiff, <br><br> v. <br><br> PHL VARIABLE INSURANCE COMPANY, a Connecticut corporation, <br><br> Defendant. | Case No. CV-12-03046 RGK (MRWx) <br><br> **[PUBLIC VERSION] PLAINTIFF'S STATEMENT OF GENUINE DISPUTES** <br><br> Date: February 25, 2013 <br> Time: 9:00 a.m. <br> Place: Courtroom 850 |

Pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56-2, Plaintiff U.S. Bank National Association ("U.S. Bank"), as securities intermediary for Lima Acquisition LP, hereby submits this Statement of Genuine Disputes in Opposition to Defendant PHL Variable Insurance Company's Motion for Summary Judgment.

## I.   PLAINTIFF'S RESPONSE TO PHL'S STATEMENT OF FACTS

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| 1. Phoenix Variable Life Insurance Company ("PHL") and Phoenix Life Insurance Company ("PLIC") are subsidiaries of The Phoenix Companies ("PNX") (collectively, "Phoenix"). | Affidavit of Neal Regels ("Regels Aff."), ¶ 1; Plaintiff's Second Amended Complaint ("SAC") ¶ 18. | Undisputed. |
| 2. Phoenix is headquartered in Hartford, Connecticut, and its high-level officers direct the operations of the corporation from Hartford, Connecticut. | Regels Aff. ¶ 2; SAC ¶ 18. | Disputed. The asserted fact is false. PLIC and PHL are separate entities. PHL is headquartered in Hartford, Connecticut. PLIC is headquartered in East Greenbush, NY. *See* Declaration of Melanie D. Phillips in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | ("Phillips Decl."), Ex. 29. |
| 3. U.S. Bank is a National Banking Association with its principal place of business in Ohio. | SAC ¶ 17. | Undisputed. |
| 4. ███████████ ████████████ ███████████ ██████ ███████████ ██████████████ ████████ ███████████ ███████████ ██████ ███████████ ██████ | Declaration of Shannon A. Lang ("Lang Decl."), ¶ 2, Ex. B-1: Deposition of Ola Eriksson ("Eriksson Dep."), 62:5-63:5; Lang Decl., ¶ 3, Ex. B-2: Listing Particulars, at 37 (also attached as Ex. 2 to Eriksson Dep.). | Undisputed. |
| 5. Lima LS is incorporated in England and wholly owned by Lima Holdings, which is a Delaware limited liability company. | Lang Decl., Ex. B-2: Listing Particulars, at 37. | Disputed. Lima LS plc is incorporated in England and Wales. *See* Declaration of Ola Eriksson in Support of Plaintiff's Opposition to Defendant's |

- - 2 - -

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | Motion for Summary Judgment ("Eriksson Decl."), ¶2. |
| 6. ███████ ███████ ███████ ███████ | Lang Decl., Ex. B-1: Eriksson Dep., at 9:21–22, 49:14–17, 222:6-9; Ex. B-2: Listing Particulars, at 37. | Undisputed. |
| 7. ███████ ██ ███████ ███████ ██ | Lang Decl., Ex. B-1: Eriksson Dep., at 95:15-22. | Undisputed. |
| 8. ███████ ███████ ███████ | Lang Decl., Ex. B-1: Eriksson Dep., at 101:19-24; Ex. B-2, Listing Particulars, at 13. | Disputed. This asserted fact mischaracterizes Mr. Eriksson's testimony. ███████ ███████ ███████ ███████ ███████ █ ███████ *See* Lang Decl., Ex. B-1 at 101:19-24; *see also* Eriksson Decl., ¶4. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES
CV-12-03046 RGK (MRWx)

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | The asserted fact also directly conflicts with PHL's Asserted Fact No. 11. |
| 9. ██████████ ████████████ ████████████ █████████ ██████████████ ██ █████████ ████████████ | Lang Decl., Ex. B-1: Eriksson Dep., at 24:17-19, 182:19–23; Ex. B-2, Listing Particulars, at 14. | Disputed. The cited evidence does not support the asserted fact, and the asserted fact is false. ████████ ████████████ ██████████████ ████████████████ ████████████ *See* Lang Decl., Ex. B-2 at p. 37. |
| 10. ████████ ████████ ████████████ █████████ ████████ ████████████████ █ | Lang Decl., Ex. B-1: Eriksson Dep., at 130:14-16; Ex. B-2, Listing Particulars, at 37. | Undisputed. |
| 11. ██████ ██████████ ████████████ ██████ ████████ █████ | Lang Decl., Ex. B-1: Eriksson Dep., at 101:19-102:12, 233:1–23; | Disputed. ████████████ ██████████ ████████████████ ████████████ |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | Ex. B-2, Listing Particulars, at 27-28. | ██████████ ██ ██████████████ ██████████████ *See* Lang Decl., Ex. B-1 at 102:7-12. The asserted fact also directly conflicts with PHL's Asserted Fact No. 8. |
| 12. ██████████ ██████████ ██████████ ████████ ██████████ ████████ ████████ | Lang Decl., Ex. B-1: Eriksson Dep., at 78:12-79:23; 100:20-101:12. | Undisputed. |
| 13. ████ ████ ████████ ██████ | Lang Decl., Ex. B-1: Eriksson Dep., at 94:15-24. | Undisputed. |
| 14. ████ ██████████ ██████████ ██████████ ██████████ ██████████ ████████ | Lang Decl., Ex. B-1: Eriksson Dep., at 96:10-97:6; 229:23-230:3. | Disputed. ██████████ ████████ ██████ ██ ████ ██████ ████████ ██████████ |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES
CV-12-03046 RGK (MRWx)

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| ███ | | ████████  ██████████  █ █████ █ █  █████████████  ███████████  Eriksson Decl., ¶46; *see* Lang Decl., Ex. B-1 at 229:23-230:3. ███████████  ████████████  ██████████  ████████  ██████ *See* Eriksson Decl., ¶46. ██████████  █████████████  ██████████ █████  █ ██ █████████  ██████████  █████████ *See* Lang Decl., Ex. B-1 at 96:22-97:3; Eriksson Decl., ¶46. Furthermore, the asserted fact is misleading to the extent it suggests Lima suffered no damages.  PHL's delay in paying on the ████ Policies |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | caused Lima damages ████ ████████████████ ███████████ *See* Declaration of Ethan Cohen-Cole in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Cohen-Cole Decl."), ¶¶5-14. |
| 15. ████████ █ ████████ ████████████ ██████ | Lang Decl., Ex. B-1: Eriksson Dep., at 95:23-96 :8 | Disputed. ███████████ ███████ ████████ ████████████ *See* Lang Decl., Ex. B-1 at 95:23-96:8.  Lima can ████ █████████████ █████████████ ███████████ █████████████ █████████████ █████████████ ██████████ *See* Eriksson Decl., ¶¶43-46. |
| 16. █████ ██████ ██████████ | Lang Decl., Ex. B-1: Eriksson | Disputed. The asserted fact is misleading |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| ██████████████ | Dep., at 87:12-88:7 | to the extent it suggests Lima suffered no damages. ████ |
| ██████████████ | █████████████ | ██████████████████ █ |
| █████████████████ | █████████ | ███████████████ |
| ████████████ | ████████████████ | ████████████████ |
| | ██████████ | █████████████████ |
| | ████████ ; | ██████████████████ |
| | 99:9-100:19 ██ | █████████████████ |
| | █████████ | ███████████████ |
| | █████████ | ███████████████████ |
| | ████████████████ | ██████████████████ |
| | █████████████ ; | ████ *See* Cohen-Cole Decl., ¶¶5-14. |
| | 101:13–18 | |
| | █████████ | |
| | █████████ | |
| | █████████ | |
| | █████████ | |
| | ██████ | |
| | ████████████ | |
| | █████████ | |
| | ████ ; 109:3-12 | |
| | █████████ | |
| | █████████ | |
| | █████████ | |
| | █████████ | |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | ████████<br>██████<br>██████<br>█████<br>228:5-20<br>████████<br>████████<br>█████████<br>█████████<br>██████<br>██████████<br>████<br>████. | |
| 17. ████ ██████████<br>████████████<br>██████████<br>████████████<br>██████<br>█████████<br>███████<br>███████<br>██████ | Lang Decl., Ex. B-1: Eriksson Dep., at 67:20-68:18. | Undisputed. |
| 18. ████████████<br>█████████<br>██████████ | Lang Decl., Ex. B-1: Eriksson Dep., at 68:19-23; | Undisputed. |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| ███████ ███████████ █ | 70:9-71:3. | |
| 19. ███ ███████ ███████ ███████ ██████ ███████ ████████ | Lang Decl., Ex. B-1: Eriksson Dep., at 71:18-20; 90:7-23; 224:6-15. | Disputed. The asserted fact is misleading to the extent it suggests there was no causal connection ███████ ███████ ████████ ███ ███████ ███████ ███████ ███████ ████████ ███████ ███████ █████████ ██████ ███████ ███████ █████████ ████████ |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | ███████████████████ ███████████ *See* Eriksson Decl., ¶¶42-43, 47. The asserted fact is misleading to the extent it suggests Lima suffered no damages. ██████ ████████████████████ ███ █████ ███████████ ██████████ ██████ █████████ ████████████ █████████████████████ ████████████ ██████████████████ ████████████ ██████ *See* Cohen-Cole Decl., ¶¶5-14. |
| 20. ████████████ ████████████ ██████████ ███ ████████████ ██████ | Lang Decl., Ex. B-1: Eriksson Dep., at 231:9–12 ██████████ ██████████ ████████ █████ | Undisputed. |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | |
| 21. PHL issued Policy No. 97514670 (the "Jane Doe Policy #1") and No. 97514671 (the "Jane Doe Policy #2") (collectively the "Jane Doe Policies") to The Jane Doe Life Insurance Trust #2006 (the "Jane Doe Trust"). The Jane Doe Policies were each issued with a face amount of $10,000,000. | Regels Aff. ¶¶ 7–8. | Undisputed. |
| 22. The trustee of the Jane Doe Trust and was Wells Fargo Bank in Los Angeles, California. | Lang Decl., ¶ 4, Ex. B-3: Jane Doe Policy #1, at USBANK3046-00377–424, at 418; SAC ¶ 21. | Undisputed. |
| 23. PHL issued Policy | Regels Aff. ¶ 9. | Undisputed. |

- - 12 - -

| PHL'S<br>Asserted Facts | PHL'S<br>Supporting<br>Evidence | U.S. Bank's Response |
|---|---|---|
| No. 97516307 (the "John Doe Policy) to The John Doe Life Insurance Trust (the "John Doe Trust"). The John Doe Policy was issued with a face amount of $10,000,000. | | |
| 24. In March 2006, PHL recorded separate collateral assignments in favor of JP Morgan Chase Bank, NA, as Collateral Agent ("JPMC") for each of the Doe Policies. | Regels Aff. ¶10; Regels Ex. A-1, A-6, A-11. | Undisputed. |
| 25. In June 2010, PHL received Designation of Owner and Designation of Beneficiary forms, designating U.S. Bank, as securities intermediary as owner and beneficiary of each of the Doe Policies. | Regels Aff. ¶ 11; Regels Ex. A-2, A-7, A-12. | Disputed.<br>Plaintiff disputes the asserted fact, which is based on the Affidavit of Neal Regels, on the ground that PHL has not yet made Mr. Regels available for deposition. *See* Declaration of Khai LeQuang in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("LeQuang Decl."), ¶¶9-19, Exs. 4-8. |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| 26. Subsequently, PHL received Release of Assignment forms on each of the Doe Policies. Although he [sic] releases list "JP Morgan Chase Bank, N.A." as the releasing corporation, they were signed "by" "R. Tarnas, Vice President," of "The Bank of New York Trust Company, N.A., as attorney-in-fact." | Regels Aff. ¶ 12; Regels Ex. A-3, A-8, A-13. | Disputed. The asserted fact is unsupported by the evidence. PHL does not cite any evidence to support its timeline that the Release of Assignment forms were submitted after the Designation of Owner and Designation of Beneficiary forms.  From the face of the documents, it appears that PHL received the Release of Assignment forms earlier, as they are dated May 20, 2010. *Compare* Regels Aff., Exs. A-3, A-8, and A-13 *with* Regels Aff., Exs. A-2, A-7, A-12. Plaintiff also disputes the asserted fact, which is based on the Affidavit of Neal Regels, on the ground that PHL has not yet made Mr. Regels available for deposition.  *See* LeQuang Decl., ¶¶9-19, Exs. 4-8. |
| 27. The releases were | Regels Aff., ¶ 12; | Undisputed. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES
CV-12-03046 RGK (MRWx)

| PHL'S<br>Asserted Facts | PHL'S<br>Supporting<br>Evidence | U.S. Bank's Response |
|---|---|---|
| accompanied by a copy of an "Assignment and Assumption Agreement," which represented that JPMorgan Chase & Co. had transferred its interest in certain "Acquired Corporate Trust Contracts" to The Bank of New York, Inc., (with The Bank of New York Trust Company, N.A., "BoNY") and had granted BoNY a power of attorney to act in JPMorgan Chase & Co.'s name with respect to such "Acquired Corporate Trust Contracts." | Regels Ex. A-3, A-8, A-13. | |
| 28. No documents were provided to PHL showing that any of the Doe Policies were among the "Acquired Corporate Trust Contracts" transferred under the Assignment and Assumption Agreement. | Regels Ex. A-4. | Disputed.<br>The asserted fact is unsupported by the evidence and contradicts other evidence.<br>The inclusion of the Assignment and Assumption Agreement, its terms, and Bank of New York's actions as attorney-in-fact for |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | the ▮▮▮ Policies demonstrated that the ▮▮▮ Policies were among the "Acquired Corporate Trust Contracts." In fact, PHL acted in accordance with this inference by recording the release of assignment for the ▮▮▮ Policies, and confirming that it had done so. *See* Regels Aff., Ex. A-3, A-4, A-5, A-8, A-9. PHL also issued annual statements representing that JP Morgan was no longer an assignee of the ▮▮▮ Policies. *Compare* Eriksson Decl., Ex. 24 *with* Eriksson Decl., Exs. 25, 26. The inclusion of the Assignment and Assumption Agreement, its terms, and Bank of New York's actions as attorney-in-fact for the ▮▮▮ Policy demonstrated that the ▮▮▮ Policy was among the "Acquired Corporate |

| | | |
|---|---|---|
| **PHL'S<br>Asserted Facts** | **PHL'S<br>Supporting<br>Evidence** | **U.S. Bank's Response** |
| | | Trust Contracts." In fact, PHL acted in accordance with this inference by recording the release of assignment for the ▉ Policy. *See* Regels Aff., Exs. A-13, A-14. PHL also issued annual statements representing that JP Morgan was no longer an assignee of the ▉ Policy. *Compare* Eriksson Decl., Ex. 19 *with* Eriksson Decl., Exs. 20, 21. ▉▉▉▉▉ ▉ Phillips Decl., Ex. 15.<br>Plaintiff also disputes the asserted fact, which is based on the Affidavit of Neal Regels, on the ground that PHL has not yet made Mr. Regels available for deposition. *See* LeQuang Decl., |

| PHL'S<br>Asserted Facts | PHL'S<br>Supporting<br>Evidence | U.S. Bank's Response |
|---|---|---|
| | | ¶¶9-19, Exs. 4-8. |
| 29. PHL did not detect these inconsistencies and, on August 10, 2010, notified U.S. Bank of PHL's recording of the Releases. | Regels Aff. ¶ 13; Regels Ex. A-5, A-9, A-14. | Disputed.<br>The cited evidence does not support the asserted fact. PHL has submitted no evidence to support its statement that "PHL did not detect those inconsistencies."  PHL also does not identify any "inconsistencies" or any evidence of any "inconsistencies."<br>Mr. Regel admits that on August 19, 2010, PHL sent letters to U.S. Bank, as securities intermediary, acknowledging that PHL had recorded the Release of Assignment forms. Mr. Regels does not claim that the releases were recorded in error or that there were inconsistencies.  *See* Regels Aff., ¶13.<br>Furthermore, the inclusion of the Assignment and Assumption |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES
CV-12-03046 RGK (MRWx)

| PHL'S<br>Asserted Facts | PHL'S<br>Supporting<br>Evidence | U.S. Bank's Response |
|---|---|---|
|  |  | Agreement, its terms, and Bank of New York's actions as attorney-in-fact for the ▮▮▮ Policies demonstrated that the ▮▮▮ Policies were among the "Acquired Corporate Trust Contracts."  In fact, PHL acted in accordance with this inference by recording the release of assignment for the ▮▮▮ Policies.  *See* Regels Aff., Ex. A-3, A-4, A-5, A-8, A-9.  PHL also issued annual statements representing that JP Morgan was no longer an assignee of the ▮▮▮ Policies.  *Compare* Eriksson Decl., Ex. 24 *with* Eriksson Decl., Exs. 25, 26.  The inclusion of the Assignment and Assumption Agreement, its terms, and Bank of New York's actions as attorney-in-fact for the ▮▮▮ Policy demonstrated that the ▮▮▮ Policy was |

| PHL'S<br>Asserted Facts | PHL'S<br>Supporting<br>Evidence | U.S. Bank's Response |
|---|---|---|
| | | among the "Acquired Corporate Trust Contracts."  In fact, PHL acted in accordance with this inference by recording the release of assignment for the ▮▮▮ Policy.  *See* Regels Aff., Exs. A-13, A-14.  PHL also issued annual statements representing that JP Morgan was no longer an assignee of the ▮▮▮ Policy.  *Compare* Eriksson Decl., Ex. 19 *with* Eriksson Decl., Exs. 20, 21. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ Phillips Decl., Ex. 30 at 166-167 (Entries re 007309, 003450, 004186). |
| 30. In January 2012, PHL was notified of John Doe's death.  PHL initiated its claim examination, which includes a title and | Regels Aff. ¶ 15. | Disputed.<br>The asserted fact that a "title and beneficiary trace" is "included" in PHL's claim examination process contradicts |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| beneficiary trace to confirm the identity of beneficiary(ies) and collateral assignees, if any, of the policy proceeds. | | other evidence that states that PHL only conducts a title and beneficiary search if the record beneficiary is not in PHL's records.  *See* Phillips Decl., Ex. 31. Plaintiff also disputes the asserted fact, which is based on the Affidavit of Neal Regels, on the ground that PHL has not yet made Mr. Regels available for deposition.  *See* LeQuang Decl., ¶¶9-19, Exs. 4-8. |
| 31. During this process, PHL identified the flaw with the releases and immediately requested that Plaintiff provide the schedule identifying the John Doe Policy as one of the assets for which BoNY was authorized to act in JPMC's name. | Regels Aff. at ¶ 17. | Disputed. The cited evidence does not support the asserted fact. PHL's reference to the "releases" here is nonsensical. There was only one policy being reviewed at this time, the ███ (John Doe) Policy, thus only one "release" and not multiple "releases."  In fact, paragraph 17 of Mr. Regel's affidavit is specifically limited to a |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | discussion of the ▆ Policy claim.  Mr. Regels also does not state that there was a "flaw" with the ▆ release.  *See* Regels Aff., ¶17. In addition, the inclusion of the Assignment and Assumption Agreement, its terms, and Bank of New York's actions as attorney-in-fact for the ▆ Policy demonstrated that the ▆ Policy was among the "Acquired Corporate Trust Contracts."  In fact, PHL acted in accordance with this inference by recording the release of assignment for the ▆ Policy.  *See* Regels Aff., Exs. A-13, A-14.  PHL also issued annual statements representing that JP Morgan was no longer an assignee of the ▆ Policy.  *Compare* Eriksson Decl., Ex. 19 *with* Eriksson Decl., Exs. 20, 21. |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | ███████████ ███ ████████████ ████████████████ ██████████████████ ██████████████ ████████████████ ████████████ Phillips Decl., Ex. 15. Plaintiff also disputes the suggestion that PHL's request for information from Plaintiff was in accordance with PHL's company policies. ████ ████████████ ██████████████ ████████████ ████████████ ██████████████ ████████████████ ████████████████ ██████████████████ ████████████ Phillips Decl., Ex. 27. Plaintiff also disputes the asserted fact, which is based on |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | the Affidavit of Neal Regels, on the ground that PHL has not yet made Mr. Regels available for deposition.  *See* LeQuang Decl., ¶¶9-19, Exs. 4-8. ████████████ ████████████ ████████████ ████████████ ████ Phillips Decl., Ex. 30 at 166-167 (Entries re 007309, 003450, 004186). |
| 32. PHL was subsequently informed of Jane Doe's death and commenced its claims examination. | Regels Aff. at ¶ 16. | Undisputed. |
| 33. PHL realized that the Jane Doe Policies, as well as several other policies for which no death claims had been received, suffered similarly flawed releases. | Regels Aff. ¶ 25. | Disputed. The evidence cited does not support the asserted fact. Mr. Regels does not state that there was a "flaw" with the releases.  *See* Regels Aff., ¶25. In addition, the asserted fact contradicts other evidence.  In particular, ████████████ |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | ███████████████ |
| | | ██████████████████ |
| | | ████████████████ |
| | | ███████████████████ |
| | | ███████████████████ |
| | | █████████████ |
| | | ████████ Phillips Decl., Ex. 7; *see also* Phillips Decl., Ex. 33. |
| | | ████████████████ |
| | | ████████████████ |
| | | █████████████████ |
| | | ███████████████████ |
| | | █████████████████ |
| | | ██████████████████ Phillips Decl., Ex. 15. Plaintiff also disputes the asserted fact, which is based on the Affidavit of Neal Regels, on the ground that PHL has not yet made Mr. Regels available for deposition.  *See* LeQuang Decl., ¶¶9-19, Exs. 4-8. |
| | | ██████████████████ |
| | | ███████████████████ |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | ███████████████ ███████████████ ███ Phillips Decl., Ex. 30 at 166-167 (Entries re 007309, 003450, 004186). |
| 34. ██████████ ███████████ ███████████ █████ | Lang Decl., Ex. B-1: Eriksson Dep., at 190:5-15; ¶ 6, Ex. B-5: March 1, 2012 Email (US Bank 3046–006192) (also attached as Ex. 29 to Eriksson dep.). | Disputed. The asserted fact is false, unsupported by the evidence, and contradicts other evidence. First, the releases are not flawed. Mr. Regels does not state that there was a "flaw" with the releases. *See* Regels Aff., ¶25. Mr. Regel admits that on August 19, 2010, PHL sent letters to U.S. Bank, as securities intermediary, acknowledging that PHL had recorded the Release of Assignment forms. Mr. Regels does not claim that the releases were recorded in error or that there were inconsistencies. *See* Regels Aff., ¶13. The inclusion of the Assignment |

- - 26 - -

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | and Assumption Agreement, its terms, and Bank of New York's actions as attorney-in-fact for the ███ Policies demonstrated that the ███ Policies were among the "Acquired Corporate Trust Contracts."  In fact, PHL acted in accordance with this inference by recording the release of assignment for the ███ Policies.  *See* Regels Aff., Ex. A-3, A-4, A-5, A-8, A-9.  PHL also issued annual statements representing that JP Morgan was no longer an assignee of the ███ Policies.  *Compare* Eriksson Decl., Ex. 24 *with* Eriksson Decl., Exs. 25, 26. Second, Plaintiff does not believe, and has never believed, that the releases were flawed. Eriksson Decl., ¶33; Declaration of Russell Mosley in Support of |

| PHL'S<br>Asserted Facts | PHL'S<br>Supporting<br>Evidence | U.S. Bank's Response |
|---|---|---|
| | | Plaintiff's Opposition to Defendant's Motion for Summary Judgment, ("Mosley Decl."), ¶¶3-4.<br><br>Third, PHL never told Plaintiff that PHL believed there were any issues with the releases until after Plaintiff sued PHL. Until PHL told Plaintiff, Plaintiff did not know that PHL had any issue with the releases of the assignments on the ▇▇▇ Policies. *See* Eriksson Decl., ¶¶38-39; Declaration of Stephen Jeffery in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Jeffery Decl."), ¶10; LeQuang Decl., ¶¶3, 4; Lang Decl., Ex. B-7.<br><br>Fourth, there is no evidence that PHL believed that the releases were flawed. In fact, PHL recorded the release of assignment for the ▇▇▇ |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | Policies in 2010.  *See* Regels Aff., Ex. A-3, A-4, A-5, A-8, A-9.  PHL also issued annual statements representing that JP Morgan was no longer an assignee of the ██████ Policies.  *Compare* Eriksson Decl., Ex. 24 *with* Eriksson Decl., Exs. 25, 26. In addition, ████████████████ ███████████████ ██████████████ █████████████████ █████████████████ ████████████████ ████████████ *See* Phillips Decl., Exs. 7, 33. ███████████████ ██████████████ ███████████████ █████████████████ ████████████████ █████████████████ ███████████████ Phillips Decl., Ex. 15. |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | ████████████████<br><br>████████████████<br><br>████████████████<br><br>████████████████<br><br>███ Phillips Decl., Ex. 30 at 166-167 (Entries re 007309, 003450, 004186). |
| 35. PHL regularly and continually updated Plaintiff regarding the status of these claims and the need to resolve the collateral assignment issue, both through written communication and telephone calls. | Regels Aff. ¶¶ 8–21, 22; Regels Ex. A-10, A-15, A-16, A-17. | Disputed.<br>The asserted fact is false, contradicts the evidence, and is not supported by the evidence cited.<br>First, PHL never informed Plaintiff of the need to resolve any issue relating to the collateral assignments of the ████ Policies.<br>Jeffery Decl. ¶¶4, 10, Ex. 1; Eriksson Decl., ¶¶38-39; Mosley Decl., ¶¶3-4; LeQuang Decl., ¶¶3-4; *compare* Jeffery Decl., Ex. 1 *with* Exhibit 6.<br>Second, it is improper and misleading for PHL to assert that its communications with |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | Plaintiff about the ▮▮ (John Doe) Policy were also communications about the ▮▮▮ (Jane Doe) Policies. They were not.  And PHL has no right to claim that Plaintiff *should have* known, without PHL saying so, that PHL's communications about one policy were meant to apply to other policies.  Declaration of William Hager in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Hager Decl."), ¶7. Third, PHL did not regularly communicate to Plaintiff about the ▮▮▮▮ Policies. *See* Jeffery Decl., ¶¶6-9, 20-26; Eriksson Decl., ¶¶34, 35, 38; Mosley Decl., ¶¶3-4. Plaintiff also disputes the asserted fact, which is based on the Affidavit of Neal Regels, on the ground that PHL has not yet |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | made Mr. Regels available for deposition. *See* LeQuang Decl., ¶¶9-19, Exs. 4-8. |
| 36. Plaintiff took the position that because PHL had previously recorded the releases, that PHL was obligated to ignore the potential outstanding collateral assignment to JPMC.  Lima specifically instructed its representatives handling the claims to provide no information to PHL | Lang Decl., Ex. B-1: Eriksson Dep., at 185:4-186:16; 187:22–188:9; 190:2–4; ¶ 5, Ex. B-4: USBANK3047-000566; ¶ 6, Ex. B-5, March 1, 2012 Email (USBANK3046-006192) (also attached as Ex. 29 to the Eriksson Dep.). | Disputed. The asserted facts are false, contradict the evidence, and are not supported by the evidence cited. First, there was no "outstanding collateral assignment."  Mr. Regel admits that on August 19, 2010, Phoenix sent letters to U.S. Bank, as securities intermediary, acknowledging that PHL had recorded the Release of Assignment forms. Mr. Regels does not claim that the releases were recorded in error or that there were inconsistencies.  *See* Regels Aff., ¶13. Second, PHL never asked Plaintiff for information regarding any collateral assignments of the █████ |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | Policies. *See* Jeffery Decl., ¶¶4, 10, Ex. 1; Eriksson Decl., ¶¶38, 39; Mosley Decl., ¶¶3-5; LeQuang Decl., ¶¶3, 4; *compare* Jeffery Decl., Ex. 1 *with* Exhibit 6. |
| | | Third, with respect to the ▮ Policy claim, Plaintiff cited PHL's previous recordation of the release of assignment as evidence that there was not an "outstanding collateral assignment." Plaintiff further informed PHL that it did not have a copy of the specific document that PHL was requesting. Despite these objections, Plaintiff worked with JP Morgan and Bank of New York to obtain further documentation for PHL. *See* Eriksson Decl., ¶¶31, 32, Ex. 18; Mosley Decl., ¶¶3-5; LeQuang Decl., ¶¶5-7, Exs. 1-3; Declaration of Richard Tarnas |

| PHL'S<br>Asserted Facts | PHL'S<br>Supporting<br>Evidence | U.S. Bank's Response |
|---|---|---|
|  |  | in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Tarnas Decl."), ¶¶7-10, Exs. 4-6; Declaration of Thomas Foley in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Foley Decl."), ¶¶8, 10-11, Ex. 3.<br><br>Fourth, Plaintiff did not instruct its "representatives" not to provide PHL with information. Plaintiff instructed Torrey Pines to take any inquiries from PHL *in writing* to avoid any miscommunications and to ensure there was a record of all such communications.  Plaintiff further instructed Torrey Pines to give PHL all information that it requested with respect to the ███████ Policies.  *See* Jeffery Decl., ¶11; Eriksson Decl., ¶40.<br><br>Fifth, Plaintiff also disputes the |

| PHL'S<br>Asserted Facts | PHL'S<br>Supporting<br>Evidence | U.S. Bank's Response |
|---|---|---|
| | | suggestion that PHL's request for information from Plaintiff was in accordance with PHL's company policies. ███ ███████ ████████ ████████ ██████████ ███████████ ████████████ ████████████ ██████████ ████████<br>Phillips Decl., Ex. 27. |
| 37. On or around March 8, 2012, U.S. Bank submitted complete and properly notarized claims forms for the claims on the Doe Policies. | Regels Aff. ¶¶ 22, 24; Lang Decl., ¶ 7, Ex. B-6: Benefits Beneficiary Statements & Collateral Assignee's Affidavits (USBANK3046-001144 - 51). | Disputed.<br>The asserted fact is false and contradicts other evidence. Plaintiff submitted complete and proper claim forms for the █████ Policies on February 23, 2012.  Plaintiff submitted additional notarization forms for the █████ claims on March 8, 2012.  The plain language of the contract does not require |

| PHL'S<br>Asserted Facts | PHL'S<br>Supporting<br>Evidence | U.S. Bank's Response |
|---|---|---|
|  |  | notarization and PHL had not requested notarization on prior death benefit claim. *See* Jeffery Decl., ¶¶5, 7; Eriksson Decl., ¶8, 37, Ex. 23. Plaintiff submitted complete and proper claim forms for the ▉ Policy on January 31, 2012. Plaintiff submitted additional notarization forms for the ▉ Policy on February 22, 2012. *See* Eriksson Decl., ¶¶24, 25, Exs. 13, 14; Jeffery Decl., ¶¶17, 21, Exs. 7, 11. |
| 38. PHL was in the process of gathering pertinent contact information for JPMC and BONY, when Plaintiff abruptly filed suit on April 6, 2012. | Regels Aff. ¶ 25. | Disputed. The cited evidence does not support the asserted fact. Mr. Regels merely states that on or after March 23, 2012, he "began attempting to locate contact information for individuals who could potentially clarify the issues with the JPMC collateral assignments." Regels Aff., ¶25. |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | Mr. Regels does not declare that he was still in the process of gathering pertinent contact information two weeks later, on April 6, 2012. ██████████ ██████████ ██████████ ██████████ ██████████ ██████████ ███████ *See* Phillips Decl., Exs. 7, 33. ████████ ████████ █████████ ██████████ █████████ █████████ ███████ Phillips Decl., Ex. 15. Plaintiff also disputes the asserted fact, which is based on the Affidavit of Neal Regels, on the ground that PHL has not yet |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | made Mr. Regels available for deposition. *See* LeQuang Decl., ¶¶9-19, Exs. 4-8. |
| 39. Neither of the Doe claims was ever denied. | Regels Aff. ¶¶ 26–27. | Disputed. The asserted fact is misleading. In violation of applicable law, PHL did not affirm or deny coverage under the ▮▮▮ (Jane Doe) Policies and ▮▮▮ (John Doe) Policy until after Plaintiff sued PHL. *See* Jeffery Decl., ¶¶6-9, 27; Eriksson Decl., ¶¶34, 38; LeQuang Decl., ¶3. PHL also did not pay the claim until after Plaintiff sued PHL. *Compare* Dkt. 1 *with* Lang Decl., Ex. B-10. Indeed, PHL's Asserted Fact Nos. 40 and 41 demonstrate that PHL never affirmed that it would pay the ▮▮▮ Policies claims or the ▮▮▮ Policy claim before Plaintiff filed suit. Plaintiff also disputes the asserted fact, which is based on |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | the Affidavit of Neal Regels, on the ground that PHL has not yet made Mr. Regels available for deposition. *See* LeQuang Decl., ¶¶9-19, Exs. 4-8. |
| 40. Upon service of this and the John Doe Litigation, PHL's outside counsel informed Plaintiff's counsel about PHL's genuine concerns with the JPMC Release and sought Plaintiff's cooperation to verify the veracity of the Release, affirming that this was the only issue preventing payment of the claims. | Lang Decl., ¶ 9, Ex. B-7: April 24, 2012 Email (PHL3046 6159). | Disputed. The asserted fact does not support the evidence and contradicts other evidence. First, PHL's outside counsel contacted Plaintiff's outside counsel and stated that PHL was "working to process the claim" and requested contact information for individuals at JP Morgan and Bank of New York. This communication did not state that the release of assignment was the only issue preventing payment of the claims. *See* Lang Decl., Ex. B-7. Second, the evidence does not support that PHL's concern about the releases was |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | "genuine." Mr. Regel admits that on August 19, 2010, PHL sent letters to U.S. Bank, as securities intermediary, acknowledging that PHL had recorded the Release of Assignment forms. Mr. Regels does not claim that the releases were recorded in error or that there were inconsistencies. *See* Regels Aff., ¶13. Furthermore, the inclusion of the Assignment and Assumption Agreement, its terms, and Bank of New York's actions as attorney-in-fact for the ████████Policies demonstrated that the █████████ Policies were among the "Acquired Corporate Trust Contracts." In fact, PHL acted in accordance with this inference by recording the release of assignment for the ███████ Policies. *See* Regels Aff., Ex. A-3, A-4, A-5, A-8, A- |

| PHL'S<br>Asserted Facts | PHL'S<br>Supporting<br>Evidence | U.S. Bank's Response |
|---|---|---|
| | | 9.  PHL also issued annual statements representing that JP Morgan was no longer an assignee of the ▮▮▮ Policies.  *Compare* Eriksson Decl., Ex. 24 *with* Eriksson Decl., Exs. 25, 26. The inclusion of the Assignment and Assumption Agreement, its terms, and Bank of New York's actions as attorney-in-fact for the ▮▮ Policy demonstrated that the ▮▮ Policy was among the "Acquired Corporate Trust Contracts."  In fact, PHL acted in accordance with this inference by recording the release of assignment for the ▮▮ Policy.  *See* Regels Aff., Exs. A-13, A-14.  PHL also issued annual statements representing that JP Morgan was no longer an assignee of the ▮▮ Policy.  *Compare* Eriksson Decl., Ex. 19 *with* |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | Eriksson Decl., Exs. 20, 21. Additionally, Bank of New York provided an Officer's Certificate regarding the ███ Policy, which was given to PHL on March 20, 2012. *See* Tarnas Decl., ¶7, Ex. 4; Eriksson Decl., ¶¶31, 32, Ex. 18. ████████ *See* Phillips Decl., Exs. 7, 33. ████ ████████ Phillips Decl., Ex. 15. PHL did not contact JP Morgan |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | about the releases until May 16, 2012.  Tom Foley, from JP Morgan immediately called PHL's outside counsel and left him a voicemail.  PHL's outside counsel never returned Mr. Foley's call.  Foley Decl., ¶¶6, 7, Exs. 1, 2.  PHL did not contact Bank of New York about the releases until May 16, 2012.  Bank of New York had submitted the Release of Assignment forms and had provided a sworn certificate asserting that it had no interest in the ▮ Policy.  Tarnas Decl., ¶¶6, 7, Exs. 1-4. |
| 41. PHL's counsel subsequently informed Plaintiff's counsel again—in writing—of PHL's intent to pay the claims and reiterated the legitimacy of PHL's concerns. | Lang Decl., ¶ 9, Ex. B-8: May 16, 2012 Letter from J Ganer to K LeQuang (USBANK3046 006165–6173 (also attached as | Disputed. The cited evidence does not support the asserted fact. PHL's counsel had not previously indicated that PHL intended to pay the claims.  *See* Response to Asserted Fact No. 40. |

| PHL'S<br>Asserted Facts | PHL'S<br>Supporting<br>Evidence | U.S. Bank's Response |
|---|---|---|
| | Ex. 36 to<br>Eriksson Dep.). | There is no evidence to support the position that PHL's concerns were "legitimate." ███ ███████ ████████ ████████ █████████ █████████ ███████ █████ Phillips Decl., Exs. 7, 33.  Mr. Regel admits that on August 19, 2010, PHL sent letters to U.S. Bank, as securities intermediary, acknowledging that PHL had recorded the Release of Assignment forms.  Mr. Regels does not claim that the releases were recorded in error or that there were inconsistencies.  *See* Regels Aff., ¶13.<br>The inclusion of the Assignment and Assumption Agreement, its terms, and Bank of New York's actions as attorney-in-fact for |

| | PHL'S | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|---|
| | **PHL'S Asserted Facts** | | |

the ▇▇▇ Policies
demonstrated that the ▇▇▇▇
Policies were among the
"Acquired Corporate Trust
Contracts." In fact, PHL acted
in accordance with this
inference by recording the
release of assignment for the
▇▇▇ Policies. Regels Aff.,
Ex. A-3, A-4, A-5, A-8, A-9.
PHL also issued annual
statements representing that JP
Morgan was no longer an
assignee of the ▇▇▇
Policies. *Compare* Eriksson
Decl., Ex. 24 *with* Eriksson
Decl., Exs. 25, 26.
The inclusion of the Assignment
and Assumption Agreement, its
terms, and Bank of New York's
actions as attorney-in-fact for
the ▇▇▇ Policy demonstrated
that the ▇▇▇ Policy was
among the "Acquired Corporate
Trust Contracts." In fact, PHL

- - 45 - -

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | acted in accordance with this inference by recording the release of assignment for the ▮ Policy. *See* Regels Aff., Exs. A-13, A-14. PHL also issued annual statements representing that JP Morgan was no longer an assignee of the ▮ Policy. *Compare* Eriksson Decl., Ex. 19 *with* Eriksson Decl., Exs. 20, 21. Additionally, Bank of New York provided an Officer's Certificate regarding the ▮ Policy, which was given to PHL on March 20, 2012. *See* Tarnas Decl., ¶7, Ex. 4; Eriksson Decl., ¶¶31, 32, Ex. 18. |
| 42. PHL requested contact information for any contacts U.S. Bank or Lima had at BoNY or JPMC who could assist in clearing up the issue. | Lang Decl., Ex. B-7: April 24, 2012 Email (PHL3046 006159). | Disputed. The asserted fact is misleading, as PHL requested these contacts after Plaintiff filed suit and after PHL likely had such contact information. *See* Lang Decl., Ex. B-7. |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | PHL had contact information for individuals at JP Morgan and Bank of New York.  The documentation for the assignments and the releases identified individuals at JP Morgan and Bank of New York.  *See* Regels Aff., Ex. A-3, A-8, A-13.  U.S. Bank had already provided additional documentation, an Officer's Certificate, from Bank of New York.  Eriksson Decl., ¶¶31, 32, Ex. 18; Tarnas Decl., ¶7, Ex. 4.  In addition, PHL had and has business relationships with JP Morgan and Bank of New York.  *See* Phillips Decl., Ex. 26.  Moreover, Neal Regels declares that he began attempting to locate contact information for JP Morgan and Bank of New York over a month earlier.  *See* Regels Aff., ¶23. ████████████ |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES
CV-12-03046 RGK (MRWx)

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | ████████████████████ |
| | | ████████████████████ |
| | | ████████████████████████ |
| | | ████████████████████ |
| | | ██████████████ |
| | | ████████████████████████ |
| | | Phillips Decl., Ex. 30 at 167-169 (Entries re PHL-3046 007859-60, 7862-63). ████ |
| | | ████████████████████████ |
| | | ████████████████ |
| | | ██████████████████████ |
| | | ████████████████ |
| | | ████████████████████████ |
| | | ████████  Phillips Decl., Ex. 30 at 166-168 (Entries re PHL-3046 004419, 004813, 004814, 005235, 005267 and entries dated 11/5/2010). |
| 43. ████████████████ ████████████ ████████████ | Lang Decl., Ex. B-1: Eriksson Dep., at 207:15-208:19. | Disputed. The asserted fact is not supported by the evidence and contradicts other evidence. Plaintiff provided PHL with correspondence from JP Morgan |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | further confirming, consistent with PHL's records, that JP Morgan had no interest in the ███████ (Jane Doe) and ██████ (John Doe) Policies.  Plaintiff also provided PHL with Officer Certificates from Bank of New York further confirming, consistent with PHL's records, that Bank of New York had no interest in the ██████ and ██████ Policies.  *See* Lang Decl., Ex. B-9; Eriksson Decl., ¶¶31, 32, Ex. 18; Tarnas Decl. ¶7, Ex. 4; LeQuang Decl., ¶¶7, 8, Ex. 8. |
| 44. PHL sought to interplead the policy proceeds, again demonstrating its intent and desire to pay the claims.  Plaintiff opposed these efforts. | Cross-Claim and Third-Party Complaint [Doc. 9]; First Amended Crossclaim and First Amended Third-Party Complaint [Docs. 30–31].); | Disputed.<br>The asserted fact is unsupported by the evidence and contradicts other evidence.<br>Plaintiff properly moved to dismiss the Cross-Claim and Third-Party Complaint.  Given that PHL had received and recorded releases of the assignments for the ██████ |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | Motion to Dismiss Cross-Claim for Interpleader [Doc. 23]; Motion to Dismiss Cross-Claim for Interpleader [Doc. 36]. | Policies, and PHL had not yet even attempted to contact JP Morgan or Bank of New York, PHL's Cross-Complaint did not establish a justiciable controversy or proper basis for an interpleader.  Dkt. 23-1. The pretextual nature of PHL's filing was demonstrated by its failure to serve the Cross-Complaint on either JP Morgan or Bank of New York until seven weeks later.  *See* Dkt. 11, 39, 40. Even though PHL filed an interpleader in both this action and the ▉ action, it never deposited any funds with the Court or filed a motion to interplead the funds.  *See generally* Dkt. (reflecting no deposit of funds); *see also U.S. Bank v. PHL Variable Life Insurance Co.*, Case No. 12-cv-03047 (C.D. Cal.), Dkt. 47 |

| PHL'S<br>Asserted Facts | PHL'S<br>Supporting<br>Evidence | U.S. Bank's Response |
|---|---|---|
| | | (granting Plaintiff's motion to dismiss PHL's interpleader on the basis that JP Morgan and Bank of New York were not "adverse claimants who claim or may claim entitlement to the proceeds of the insurance policy at issue."). |
| 45. Ultimately, JPMC and BoNY both confirmed that neither entity had any interest in the policy proceeds. | 45. Lang Decl., ¶ 10, Ex. B-9: July 18, 2012 Letter from K LeQuang to J Ganer (PHL/3046 000908-911) (also attached as Ex. 42 to Eriksson Dep.). | Disputed.<br>The asserted fact does not support the evidence and contradicts other evidence.<br>JP Morgan and Bank of New York both had already confirmed they had no interest in the ███████ (Jane Doe) and ██████ (John Doe) Policies before PHL claims they "ultimately confirmed" this. The inclusion of the Assignment and Assumption Agreement, its terms, and Bank of New York's actions as attorney-in-fact for the ██████ Policies demonstrated that the ████████ |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | Policies were among the "Acquired Corporate Trust Contracts." In fact, PHL acted in accordance with this inference by recording the release of assignment for the ▆▆▆▆ Policies. Regels Aff., Ex. A-3, A-4, A-5, A-8, A-9. PHL also issued annual statements representing that JP Morgan was no longer an assignee of the ▆▆▆▆ Policies. *Compare* Eriksson Decl., Ex. 24 *with* Eriksson Decl., Exs. 25, 26. The inclusion of the Assignment and Assumption Agreement, its terms, and Bank of New York's actions as attorney-in-fact for the ▆▆▆ Policy demonstrated that the ▆▆▆ Policy was among the "Acquired Corporate Trust Contracts." In fact, PHL acted in accordance with this inference by recording the |

- - 52 - -

| PHL'S<br>Asserted Facts | PHL'S<br>Supporting<br>Evidence | U.S. Bank's Response |
|---|---|---|
| | | release of assignment for the ▮▮▮ Policy.  Regels Aff., Exs. A-13, A-14.  PHL also issued annual statements representing that JP Morgan was no longer an assignee of the ▮▮▮ Policy.  *Compare* Eriksson Decl., Ex. 19 *with* Eriksson Decl., Exs. 20, 21. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Phillips Decl., Ex. 15.  Additionally, Bank of New York provided an Officer's Certificate regarding the ▮▮▮ Policy, which was given to PHL on March 21, 2012.  *See* Tarnas Decl., ¶7, Ex. 4; Eriksson Decl., ¶¶31, 32, Ex. 18. PHL did not contact JP Morgan about the releases until May 16, 2012.  Tom Foley, from JP Morgan immediately called |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | PHL's outside counsel and left him a voicemail.  PHL's outside counsel never returned Mr. Foley's call.  Foley Decl., ¶¶6, 7, Exs. 1, 2.  PHL did not contact Bank of New York about the releases until May 16, 2012.  Even though Bank of New York had submitted the Release of Assignment forms and had provided a sworn certificate asserting that it had no interest in the ███ Policy, PHL still questioned Bank of New York regarding the ███ Policies.  Bank of New York then provided a second sworn certificate affirming that it had no interest in the ███ Policies.  Tarnas Decl., ¶¶7-10, 12, Exs. 4, 5, 6. |
| 46. Two days after receiving such proof, PHL wrote checks to U.S. Bank in the amount of $20,305,566.02 | Lang Decl., ¶ 11, Ex. B-10: USBANK 3046-001152-1153; | Disputed. PHL already had "proof" that JP Morgan and Bank of New York had released their interest in the |

| PHL'S<br>Asserted Facts | PHL'S<br>Supporting<br>Evidence | U.S. Bank's Response |
|---|---|---|
| for the Jane Doe Policies and $10,171,094.41 for the John Doe Policy. These payments were delivered to Plaintiff's counsel within a week of PHL receiving confirmation that there were no outstanding collateral assignments. | ¶ 12, Ex. B-11: USBANK 3047-000546-0547; ¶ 13, Ex. B-12: July 25, 2012 Letter from J Ganer to S Foresta. | ▮▮▮▮▮▮▮▮ Policies. The inclusion of the Assignment and Assumption Agreement, its terms, and Bank of New York's actions as attorney-in-fact for the ▮▮▮ Policies demonstrated that the ▮▮▮ Policies were among the "Acquired Corporate Trust Contracts."  In fact, PHL acted in accordance with this inference by recording the release of assignment for the ▮▮▮ Policies.  Regels Aff., Ex. A-3, A-4, A-5, A-8, A-9. PHL also issued annual statements representing that JP Morgan was no longer an assignee of the ▮▮▮ Policies.  *Compare* Eriksson Decl., Ex. 24 *with* Eriksson Decl., Exs. 25, 26. The inclusion of the Assignment and Assumption Agreement, its terms, and Bank of New York's |

| | PHL'S<br>Asserted Facts | PHL'S<br>Supporting<br>Evidence | U.S. Bank's Response |
|---|---|---|---|
| | | | actions as attorney-in-fact for the ▮▮▮ Policy demonstrated that the ▮▮▮ Policy was among the "Acquired Corporate Trust Contracts."  In fact, PHL acted in accordance with this inference by recording the release of assignment for the ▮▮▮ Policy.  Regels Aff., Exs. A-13, A-14.  PHL also issued annual statements representing that JP Morgan was no longer an assignee of the ▮▮▮ Policy. *Compare* Eriksson Decl., Ex. 19 *with* Eriksson Decl., Exs. 20, 21. ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮  Phillips Decl., Ex. 15. In addition to the Release of Assignment forms, Bank of New York provided further |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | confirmation that it had no interest in the ███ Policy on March 21, 2012 and ████ Policies on July 17, 2012. *See* Tarnas Decl., ¶10, Ex. 6. JP Morgan further confirmed that it had no interest in the ████████ Policies on July 18, 2012. *See* Lang Decl., Ex. B-9; Foley Decl., ¶11, Ex. 3. PHL did not actually deliver the payments the ████ claims or ███ claim until July 25, 2012. Lang Decl., Ex. B-12. |
| 47. PHL has continued communicating with JPMC and BoNY to confirm that other similar JPMC collateral assignments with similarly flawed releases are also cleared. | Lang Decl., ¶ 14, Ex. B-13: Letters to JPMC & BoNY (PHL/3046 000908- 911); ¶ 15, B-14: Letters (USBANK3046-001152-1153). | Disputed. First, the releases are not flawed. The inclusion of the Assignment and Assumption Agreement, its terms, and Bank of New York's actions as attorney-in-fact for the ████ Policies demonstrated that the ████ Policies were among the "Acquired Corporate Trust Contracts." In fact, PHL acted |

| PHL'S<br>Asserted Facts | PHL'S<br>Supporting<br>Evidence | U.S. Bank's Response |
|---|---|---|
| | | in accordance with this inference by recording the release of assignment for the ▮ Policies.  Regels Aff., Ex. A-3, A-4, A-5, A-8, A-9.  PHL also issued annual statements representing that JP Morgan was no longer an assignee of the ▮ Policies.  *Compare* Eriksson Decl., Ex. 24 *with* Eriksson Decl., Exs. 25, 26.<br>The inclusion of the Assignment and Assumption Agreement, its terms, and Bank of New York's actions as attorney-in-fact for the ▮ Policy demonstrated that the ▮ Policy was among the "Acquired Corporate Trust Contracts."  In fact, PHL acted in accordance with this inference by recording the release of assignment for the ▮ Policy.  Regels Aff., Exs. A-13, A-14.  PHL also issued |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | annual statements representing that JP Morgan was no longer an assignee of the ▮▮▮ Policy. *Compare* Eriksson Decl., Ex. 19 *with* Eriksson Decl., Exs. 20, 21. Second, PHL has never stated that any releases were "flawed." Mr. Regels does not state that there was a "flaw" with the releases. *See* Regels Aff., ¶25. Mr. Regel admits that on August 19, 2010, PHL sent letters to U.S. Bank, as securities intermediary, acknowledging that PHL had recorded the Release of Assignment forms. Mr. Regels does not claim that the releases were recorded in error or that there were inconsistencies. *See* Regels Aff., ¶13. |
| 48. Phoenix life insurance companies have resisted only a handful of claims over the years (15)—a | Regels Aff. ¶¶ 5–6. | Disputed. The asserted fact is misleading and unsupported by the cited evidence. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES
CV-12-03046 RGK (MRWx)

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| fractional percent of claims incurred (more than 24,500). | | PHL has improperly referred to PHL and PLIC collectively in an effort to mask PHL's egregious conduct.<br><br>PHL is the defendant.  PHL issued the ████ (Jane Doe) Policies and each of the eight policies that PHL resisted paying during a seven-month period after Plaintiff filed a lawsuit against PHL for illegally raising the cost of insurance rates on its policies. Furthermore, if anything, a comparison of PHL's conduct to that of PLIC highlights the impropriety of PHL's claims handling practices.  According to PHL's own evidence, PHL has resisted 10 out of 825 claims, while PLIC has resisted half as many claims out of 23,734 total claims.  Thus, PHL's resistance rate, as measured by the rate of claims resisted, is 5,700% higher |

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| | | than PLIC. Additionally, during the seven-month period immediately following the Plaintiff's filing of its COI Action against PHL, PHL failed and refused to pay seven claims on eight policies totaling $54,800,000. And, since 2008, PHL has resisted or denied 12.37%, 16.20%, and 20.87% of its claims, as measured by death benefits. The industry average in 2011 was only 0.58%. Phillips Decl., Ex. 24 at 139-140, 142-143, 146-147. PHL's rate of resisting and denying death benefit claims far exceeds that of the life insurance industry. Hager Decl., ¶44-45. |
| 49. Interest on policy proceeds under the Jane Doe Policies and the John Doe Policy was paid at 3%. | Regels Aff ¶¶ 29–30. | Undisputed. |
| 50. Of the 6 policies that | *See* Regels Aff. | Disputed. |

- - 61 - -

| PHL'S Asserted Facts | PHL'S Supporting Evidence | U.S. Bank's Response |
|---|---|---|
| Plaintiff has submitted claims on since May 2011, PHL has paid on 5 of them for a total of $38,655,797.61. | ¶¶14, 29, 30, 31; Lang Decl., Ex. B-1: Eriksson Dep., at 216:2-217:4; 203:20–25; 162:14–18. | The asserted fact is misleading, not supported by the evidence, and is false and contradicts other evidence. Four of the six policies that Plaintiff submitted have resulted in litigation because PHL did not pay the claims.  Eriksson Decl., ¶¶20, 34, 38, 41.  PHL only paid the claims on three of the six policies after Plaintiff filed suit and more than five to six months after the claims were initially submitted. *See* Eriksson Decl., ¶42. |

## II.    PLAINTIFF'S ADDITIONAL FACTS

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| ██████████ POLICIES | |
| 51.  On December 28, 2005, PHL issued two $10 million life insurance policies, Policy Nos. 97514670 and 97514671 ("████ Policies"), on the life of ████████. | Lang Decl., Ex. B-3; Eriksson Decl., Exs. 1, 2. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| 52.  The original beneficiary of the ████ Policies was the ████████ Life Insurance Trust #2006 ("████ Insurance Trust"). | Lang Decl., Ex. B-3 at USBANK3046-000418; Eriksson Decl., Ex. 1 at 56, 2 at 104. |
| 53.  On February 1, 2006, the ████ Insurance Trust assigned the ████ Policies as collateral to JPMorgan Chase Bank, N.A. ("JPM"). | Regels Aff., Ex. A-1; Foley Decl., ¶2. |
| 54.  Eight months later, JPM transferred its collateral interest in the ████ Policies to The Bank of New York, Inc. ("BoNY"). | Tarnas Decl., ¶3; Foley Decl., ¶3; Regels Aff., Ex. A-4. |
| 55.  In 2009, the ████ Insurance Trust transferred ownership of the ████ Policies to the ████ Management Trust #2008-1 and the ████ Management Trust #2008-2 (the "████ Management Trusts"). | Phillips Decl., Exs. 3, 4. |
| 56.  In May 2010, JPM and BoNY released their collateral interest in the ████ Policies and submitted Release of Assignment forms to PHL for the ████ Policies and PHL recorded the releases. | Regels Aff., Exs. A-3, A-4, A-8, A-9; *see* Tarnas Decl., ¶6, Exs. 1, 3; Foley Decl. ¶4. |
| 57.  In June 2010, the ████ Management Trusts transferred ownership of and | Regels Aff., Exs. A-2, A-7. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| beneficial interest in the ███ Policies to U.S. Bank and submitted PHL's standard "Designation of Owner" and "Designation of Beneficiary" forms. | |
| 58. On August 3, 2010, PHL issued letters to the ███ Management Trust confirming the change in ownership and beneficiary designation. | Eriksson Decl., ¶39, Ex. 23. |
| 59. On August 19, 2010, PHL issued letters to U.S. Bank confirming that it released the collateral assignments on the ███ Policies. | Regels Aff., Exs. A-5, A-9. |
| 60. ████████████ | Phillips Decl., Ex. 30 at 167-169 (Entries re PHL-3046 007859-60, 7862-63). |
| 61. ████████████ | Phillips Decl., Ex. 30 at 166-168 (Entries re PHL-3046 004419, 004813, 004814, 005235, 005267 and entries dated 11/5/2010). |
| 62. In July 2011, U.S. Bank assigned collateral interests in the ███ Policies to U.S. Bank Trust National | Phillips Decl., Exs. 5, 6. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| Association ("U.S. Bank Trust"). | |
| 63.  In August 2011, PHL issued letters to U.S. Bank confirming this collateral assignment to U.S. Bank Trust. | Phillips Decl., Exs. 9, 34. |
| 64.  PHL raised no issue about any previously released collateral assignment when it confirmed the collateral assignment to U.S. Bank Trust. | *See* Phillips Decl., Exs. 9, 34; Eriksson Decl., ¶39. |
| 65.  ▮▮▮▮▮▮ died on January 28, 2012. | Jeffery Decl., ¶4. |
| 66.  The ▮▮▮▮▮ Policies state that death benefits will be paid "[u]pon receipt . . . of Due Proof of Death that the Insured died while this policy is In Force[.]" | Lang Decl., Ex. B-3 at USBANK3046-0 00397; Eriksson Decl., Exs. 1 at 35, 2 at 83. |
| 67.  On February 9, 2012, Torrey Pines, U.S. Bank's servicer, notified PHL about Ms. ▮▮▮▮▮ death. | Jeffery Decl., ¶4. |
| 68.  On February 17, 2012, PHL sent Torrey Pines a letter requesting additional materials regarding the ▮▮▮▮▮ Policies.  The letter did not say anything about JPM/BoNY collateral assignments or the release of those assignments. | Jeffery Decl., ¶4, Ex. 1. |
| 69.  On February 23, 2012, U.S. Bank's servicer, Torrey Pines, submitted the materials and a claim for death benefits | Jeffery Decl., ¶5; Eriksson Decl., ¶37, Ex. 22. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| on the ████ Policies. | |
| 70.   On February 29, 2012, Torrey Pines called PHL to inquire about the status of the claims for the ████ Policies. PHL told Torrey Pines that PHL would respond to the claim by March 2, 2012. | Jeffery Decl., ¶6, Ex. 2. |
| 71.   PHL did not respond. | Jeffery Decl., ¶¶6-7. |
| 72.   ████████████████████ ████████████████████ ██████████████ ████████████████ ██████████████ ████████████████ ████████████████ ███████ | Phillips Decl., Ex. 7; *see also* Phillips Decl., Ex. 33. |
| 73.   On March 5, 2012, Torrey Pines again called PHL to ask about the status of the claim.  PHL told Torrey Pines that the forms needed notarized signatures. | Jeffery Decl., ¶7. |
| 74.   On March 8, 2012, Torrey Pines re-submitted the claims forms with notarized signatures. | Jeffery Decl., ¶7, Ex. 3. |
| 75.   Again, PHL did not respond. | Jeffery Decl., ¶8. |
| 76.   Torrey Pines contacted PHL again on March 27, 2012 to find out the status of the claims on the ████ Policies. | Jeffery Decl., ¶8. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| PHL told Torrey Pines that the Policies were being "reviewed" and that the review should be completed within five to seven days. | |
| 77.  PHL did not respond. | Jeffery Decl., ¶9. |
| 78.  On April 3, 2012, Torrey Pines again called PHL to find out the status of the claims on the ████ Policies.  Torrey Pines was unable to obtain any information and was told that a supervisor was unavailable. | Jeffery Decl., ¶9. |
| 79.  U.S. Bank initiated this action on April 6, 2012. | Dkt. 1. |
| 80.  Only after this case was filed did PHL inform U.S. Bank that it was concerned that JPM/BoNY's collateral assignments of the ████ Policies, which were released nearly two years earlier, were released in error. | Eriksson Decl., ¶39; Jeffery Decl., ¶10; LeQuang Decl., ¶4; Lang Decl., Ex. B-7. |
| 81.  By PHL's own admission, it did nothing to investigate these alleged concerns with either JPM or BoNY until after U.S. Bank sued PHL. | Phillips Decl., Ex. 8; *see also* Lang Decl., Ex. B-8. |
| 82.  PHL violated its own policies and procedures by not asking JPM and BoNY, the previous collateral assignees, | Phillips Decl., Ex. 27. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| for "a completed Affidavit as to Extent of Interest," when the claims handler had a question regarding whether the collateral assignment has been released. | |
| 83. More than a month after receiving the claim, Neal Regels "began attempting to locate contact information for individuals who could potentially clarify the issues with the [JPM liens]." | Regels Aff., ¶25. |
| 84. PHL did not contact JPM or BoNY about the ███████ Policies until May 16, 2012 (*i.e.*, over one month after U.S. Bank initiated this action), when PHL's outside counsel, Jarrett Ganer, sent a letter inquiring about the Policies. | Foley Decl., ¶6, Ex. 1; Tarnas Decl., ¶12, Ex. 5. |
| 85. After receiving the letter, Tom Foley, a JPM representative, responded by calling Mr. Ganer and leaving him a voicemail stating that JPM had sold its interest in the ███████ Policies to BoNY. | Foley Decl., ¶7; LeQuang Decl., ¶5, Ex. 1. |
| 86. Mr. Ganer never returned Mr. Foley's call. | Foley Decl., ¶¶7-8, Ex. 2; LeQuang Decl., ¶5, Ex. 1. |
| 87. PHL further delayed payment on U.S. Bank's claim by filing an interpleader action against JPM and BoNY. | Dkt. 12. |
| 88. PHL waited more than a month to serve | Dkt. 12, 32, 33, 39, 40. |

- - 68 - -

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| its interpleader action on either JPM or BoNY. | |
| 89. Although PHL "unconditionally" offered to deposit the death benefits with the Court, PHL never did so. | *See* Dkt. 12; *see generally* Dkt. (reflecting no deposit of funds). |
| 90. On July 17, 2012, BoNY provided Plaintiff with an Officer's Certificate stating that the ███████ Policies were acquired by BoNY from JP Morgan. | LeQuang Decl., ¶8, Ex. 3; Tarnas Decl., ¶7-10, Ex. 6. |
| 91. Khai LeQuang, counsel for Plaintiff, contacted Thomas Foley at JPM regarding the assignments in June 2012. Mr. Foley stated that JPM had sold its corporate trust assets to BoNY and would take direction from BoNY. | Foley Decl., ¶8, Ex. 2; LeQuang Decl., ¶5. |
| 92. On July 18, 2012, JP Morgan sent a letter to PHL and Plaintiff further restating that it had no interest in the ██████ Policies (or ██████ Policy). | Foley Decl., ¶11, Ex. 3; Lang Decl., Ex. B-9. |
| 93. On behalf of Plaintiff, Orrick forwarded both BoNY's Officer Certificate and JP Morgan's letter to PHL on July 18, 2005. | Lang Decl., Ex. B-9. |
| 94. On July 25, 2012, PHL transmitted a check to U.S. Bank in the amount of $20,305,566.02, representing the face value of the ██████ Policies plus a | Lang Decl., Ex. B-10. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| nominal amount of interest. | |
| 95. ███████████████ ███████████ ████████████████ ████████████████ ██████████████ ████████████ ████ | Eriksson Decl., ¶43. |
| 96. ██████████████ ███████████████ ██████████████ ███████ | Eriksson Decl., ¶44. |
| 97. ██████████████ ███████████ ████████████ █████████ █████████████ ████████████ ███████ | Eriksson Decl., ¶47. |
| 98. ██████████ █████████████ ██████████████ ████████████████ █████████████ ███████ | Eriksson Decl., ¶47. |
| 99. █████████████ | Eriksson Decl., ¶47. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| ██████████████████████ | |
| ██████████████████████ | |
| ██████████████████████ | |
| ██████████████████████ | |
| ██████████████████████ | |
| ██████████████ | |
| 100. ████████████████ | Eriksson Decl., ¶42, 47; Cohen-Cole Decl., ¶¶5-14. |
| 101. ██████████████████████████ | Eriksson Decl., ¶48 |
| 102. PHL disclaimed any responsibility for the validity of assignments. | Lang Decl., Ex. B-3 at USBANK3046-000389; Eriksson Decl., Ex. 1 at 27, 2 at 75. |
| 103. PHL's statements reflect that the JPM/BoNY collateral assignments of the ████████ Policies had been released in 2010 and that U.S. Bank was the sole owner, as securities intermediary, at the time the ████████ Policy claims were submitted. | *Compare* Eriksson Decl., Ex. 24 *with* Eriksson Decl., Exs. 25, 26; Eriksson Decl., Ex. 24; *see also* Regels Aff., Exs. A-2, A-3, A-5, A-7, A-8, A-9. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| ██████ **POLICY** | |
| 104. On November 4, 2005, PHL issued a $10 million life insurance policy, Policy No. 97516307 ("██████ Policy"), on the life of ██████████. | Eriksson Decl., Ex. 3. |
| 105. The original beneficiary of the ██████ Policy was the ██████████ Irrevocable Insurance Trust ("██████ Insurance Trust"). | Eriksson Decl., Ex. 3 at 150. |
| 106. On March 2, 2006, the ██████ Insurance Trust assigned the ██████ Policy as collateral to JPM. | Regels Aff., Ex. A-11. |
| 107. Seven months later, JPM transferred its collateral interest in the ██████ Policy to BoNY. | Foley Decl., ¶¶2-4; Tarnas Decl., ¶¶2-4; Regels Aff., Ex. A-3. |
| 108. In 2008, the ██████ Insurance Trust transferred ownership of the ██████ Policy to the ██████ Management Trust #2008-1 (the "██████ Management Trust"). | Phillips Decl., Ex. 11. |
| 109. In May 2010, JPM and BoNY released their collateral interest in the ██████ Policy and submitted Release of Assignment forms to PHL for the ██████ Policy and PHL recorded the release. | Foley Decl., ¶5; Tarnas Decl., ¶6; Regels Decl., Ex. A-13, A-14. |
| 110. In June 2010, the ██████ Management | Regels Decl., Ex. A-12. |

- - 72 - -

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| Trust transferred ownership of the ▮▮▮ Policy to U.S. Bank. | |
| 111. On August 3, 2010, PHL issued letters to the ▮▮▮ Management Trust confirming the change in ownership and beneficiary designation. | Phillips Decl., Ex. 12. |
| 112. On August 19, 2010, PHL issued letters to U.S. Bank confirming that it released the collateral assignment on the ▮▮▮ Policy. | Regels Aff., Ex. A-14. |
| 113. In July 2011, U.S. Bank assigned a collateral interest in the ▮▮▮ Policy to U.S. Bank Trust. | Phillips Decl., Ex. 13. |
| 114. In August 2011, PHL issued letters to U.S. Bank confirming this collateral assignment to U.S. Bank Trust. | Phillips Decl., Ex. 14. |
| 115. PHL raised no issue about any previously released collateral assignment when it confirmed the collateral assignment to U.S. Bank Trust. | *See* Phillips Decl., Ex. 14; Eriksson Decl., ¶33. |
| 116. Mr. ▮▮▮ died on January 7, 2012. | Jeffery Decl., ¶¶13, 17, Exs. 7, 9. |
| 117. The ▮▮▮ Policy states that death benefits will be paid "[u]pon receipt . . . of Due Proof of Death that the Insured died while this policy is In Force[.]" | Eriksson Decl., Ex. 3 at 131. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES
CV-12-03046 RGK (MRWx)

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| 118. On January 19, 2012, Torrey Pines notified PHL of the insured's death. | Jeffery Decl., ¶14; Eriksson Decl., ¶24. |
| 119. On January 31, 2012, PHL requested that Plaintiff provide a copy of a Schedule of Contracts from the Purchase Agreement between JPM and BoNY. | Jeffery Decl., ¶16, Ex. 8; Eriksson Decl., ¶26, Ex. 14; Regels Aff., Ex. A-16. |
| 120. On February 10, 2012, Plaintiff submitted a proof of claim. | Jeffery Decl., ¶17, Ex. 7; Eriksson Decl., ¶13. |
| 121. Making the request for the Schedule of Contracts to Plaintiff was in violation of PHL's own policies and procedures, which require a claims handler to seek "a completed Affidavit as to Extent of Interest . . . from the collateral assignee" when there is a question regarding whether the collateral assignment has been released. | Phillips Decl., Ex. 27. |
| 122. On February 8, 2012, U.S. Bank informed PHL that it did not have the "Schedule of Contracts" from the "Purchase Agreement of 4/7/06." Plaintiff noted that PHL had already recorded the release of assignment for the JPM/BoNY collateral assignment and provided PHL with a copy of that release. | Eriksson Decl., ¶27, Ex. 15. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES
CV-12-03046 RGK (MRWx)

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| 123. Torrey Pines provided PHL with the original policy and certified death certificate for Mr. ▋ on February 13, 2012. | Jeffery Decl., ¶18, Ex. 9. |
| 124. On February 14, 2012, PHL responded by letter again requesting the "Schedule of Contracts." | Regels Aff., Ex. A-17; Jeffery Decl., ¶19, Ex. 10; Eriksson Decl., ¶28, Ex. 16. |
| 125. In a follow-up phone call, PHL told U.S. Bank that it was investigating the release of the JPM/BoNY collateral assignment and that it would send a letter explaining the issue.  PHL did not send this letter. | Eriksson Decl., ¶29; Jeffery Decl. ¶20. |
| 126. On February 24, 2012, Plaintiff sent PHL another letter stating that it did not have the "Schedule of Contract" and requesting payment of the ▋ claim. | Eriksson Decl., ¶30, Ex. 17. |
| 127. PHL refused to pay the claim on the ▋ Policy. | Eriksson Decl., ¶31. |
| 128. In March 2012, Ola Eriksson contacted Richard Tarnas at BoNY and requested a copy of Schedule 2.1(a)(3) to the Purchase Agreement. | Tarnas Decl., ¶7; Eriksson Decl., ¶31. |
| 129. Mr. Tarnas advised Mr. Eriksson that it could not provide Schedule 2.1(a)(3) because it was confidential, but provided | Tarnas Decl., ¶7, Ex. 4; Eriksson Decl., ¶¶31, 32, Ex. 18. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| a sworn officer's certificate confirming that BoNY had properly released the lien, consistent with PHL's records. | |
| 130. On March 21, 2012, U.S. Bank sent another letter to providing PHL with the BoNY Officer's Certificate certifying that BoNY had purchased JPM's interest in the ▓▓▓▓ Policy as part of the Purchase Agreement and had properly released its interest. | Eriksson Decl., ¶32, Ex. 18. |
| 131. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | Phillips Decl., Ex. 15. |
| 132. PHL still refused to pay the ▓▓▓▓ claim. | Eriksson Decl., ¶33. |
| 133. Mr. Regels claims that on March 23, 2012, he "began attempting to locate contact information for individuals who could potentially clarify the issues with the JPMC collateral assignments." | Regels Aff., ¶25. |
| 134. U.S. Bank initiated a civil action against PHL on the ▓▓▓▓ Policy on April 6, 2012. | Eriksson Decl., ¶34; *U.S. Bank v. PHL Variable Life Insurance Co.*, Case No. 12-cv-03047 (C.D. Cal.), Dkt. 1. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| 135. At no time before Plaintiff filed the ███ Action did PHL ever advise Plaintiff that it was affirming or denying coverage on the ███ Policy. | Eriksson Decl., ¶34. |
| 136. PHL further delayed payment on U.S. Bank's claim by filing an interpleader action against JPM and BoNY. | *U.S. Bank v. PHL Variable Life Insurance Co.*, Case No. 12-cv-03047 (C.D. Cal.), Dkt. 13. |
| 137. PHL then waited seven weeks to serve its interpleader action on either JPM or BoNY. | *U.S. Bank v. PHL Variable Life Insurance Co.*, Case No. 12-cv-03047 (C.D. Cal.), Dkt. 13, 32, 33, 37, 38. |
| 138. Although PHL "unconditionally" offered to do so, PHL never deposited the death benefit with the Court in connection with its interpleader. | *See generally U.S. Bank v. PHL Variable Life Insurance Co.*, Case No. 12-cv-03047 (C.D. Cal.), Dkt. (reflecting no deposit of funds). |
| 139. PHL did not contact JPM or BoNY about the ███ Policy until May 16, 2012, more than a month after the ███ case was filed, when Jarrett Ganer sent a letter to them. | Phillips Decl., Ex. 8; Lang Decl., Ex. B-8; Tarnas Decl., ¶12, Ex. 5; Foley Decl., ¶6, Ex. 1. |
| 140. Tom Foley, from JP Morgan, responded to Mr. Ganer's letter by calling Mr. Ganer and leaving him a voicemail stating that JPM had sold its interest in the ███ Policies to BoNY. | Foley Decl., ¶7. |
| 141. Mr. Ganer never returned Mr. Foley's | Foley Decl., ¶7, Ex. 2; LeQuang |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES
CV-12-03046 RGK (MRWx)

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| call. | Decl., ¶5, Ex. 1. |
| 142. Khai LeQuang, counsel for Plaintiff, contacted Thomas Foley at JPM regarding the assignments in June 2012 and he restated that JPM had sold its corporate trust assets to BoNY and would take direction from BoNY. | Foley Decl., ¶8, Ex. 2; LeQuang Decl., ¶5. |
| 143. Only July 18, 2012, JP Morgan sent a letter to PHL and Plaintiff further restating that it had no interest in the ▮▮ Policy (or ▮▮ Policies). | Foley Decl., ¶11, Ex. 3; Lang Decl., Ex. B-9. |
| 144. On behalf of Plaintiff, Orrick forwarded these statements to PHL on July 18, 2005. | LeQuang Decl., ¶¶7, 8, Ex. 3; Lang Decl., Ex. B-9. |
| 145. On July 25, 2012, PHL transmitted a check to U.S. Bank in the amount of $10,171, 094.41 | Lang Decl., Ex. B-12. |
| ▮▮ POLICY ||
| 146. On January 21, 2008, PHL issued a $3 million life insurance policy, Policy No. 97528505 (", Policy"), on the life of ▮▮. | Eriksson Decl., ¶10, Ex. 4. |
| 147. The ▮▮ Policy states that death benefits will be paid "[u]pon receipt . . . of Due Proof of Death that the Insured died while this policy is In Force[.]" | Eriksson Decl., Ex. 4 at 168. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| 148. The original beneficiary of the ▮▮ Policy was the ▮▮▮ 2008A Irrevocable Trust ("▮▮ Insurance Trust"). | Eriksson Decl., Ex. 4. |
| 149. The original beneficiary of the ▮▮ Insurance Trust was Mr. ▮▮▮' wife, ▮▮. | Phillips Decl., Ex. 17 at 60. |
| 150. Ultimately, ownership of the ▮▮ Policy was transferred to U.S. Bank. | *See* Eriksson Decl., ¶¶3, 4. |
| 151. Mr. ▮▮ died on November 4, 2011. | Eriksson Decl., ¶10. |
| 152. Ten days later, unbeknownst to Lima and U.S. Bank, and for reasons that remain unclear, PHL unilaterally contacted Ms. ▮▮, who was neither the owner nor the beneficiary of the ▮▮Policy, and requested documentation from her. | Eriksson Decl., ¶11. |
| 153. Approximately six weeks later, U.S. Bank submitted its claim under the ▮▮ Policy to PHL. | Eriksson Decl., ¶12, Ex. 6. |
| 154. On January 6, 2012, PHL sent a letter to U.S. Bank stating that there were "issues" regarding Mr. ▮▮ consent to the ▮▮ Policy. | Eriksson Decl., ¶13, Ex. 7. |
| 155. In its January 6, 2012 letter, PHL demanded that U.S. Bank produce several categories of irrelevant | Eriksson Decl., ¶13, Ex. 7. |

| Plaintiff's Additional Facts | Supporting Evidence |
| --- | --- |
| documents, including personal private information about Mr. ▇ estate plan and net worth, which Plaintiff clearly did not have, such as documents "reflecting the income and net worth of [Mr. ▇] at the time the policy was applied for" and documents "reflecting any estate plan developed for [Mr. ▇].". | |
| 156. U.S. Bank responded on January 20, 2012, setting forth evidence demonstrating that Mr. ▇ consented to the ▇ policy, including: Mr. ▇' submission to medical examinations; Mr. ▇' signing of the policy application; Mr. ▇' release of medical information to PHL; Mr. ▇' completion of the policy acceptance form. | Eriksson Decl., ¶14, Ex. 8. |
| 157. PHL responded on January 27, 2012, stating that Ms. ▇ had "raised issues concerning [Mr. ▇'] lack of consent to the insurance and the circumstances surrounding the application of the Policy and the establishment of the Trust." | Eriksson Decl., ¶15, Ex. 9. |
| 158. U.S. Bank responded on February 16, 2012, sending PHL a copy of a document titled "Acknowledgement and Consent," | Eriksson Decl., ¶16, Ex. 10. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| which was signed by ▮▮▮ and was notarized, in which they affirmed that the ▮ Policy was obtained on their own "initiative," "voluntarily," "willingly," and "without any undue influence or financial duress." | |
| 159. PHL wrote to U.S. Bank again on March 1, 2012 and did not mention the Acknowledgement and Consent, but renewed its demand for the documents it requested in its January 6, 2012 letter. | Eriksson Decl., ¶17, Ex. 11. |
| 160. U.S. Bank made a final demand for payment on March 9, 2012 via written letter to PHL. | Eriksson Decl., ¶18, Ex. 12. |
| 161. PHL did not respond. | Eriksson Decl., ¶19. |
| 162. On April 6, 2012, when PHL still had not paid the claim, U.S. Bank filed suit. | Eriksson Decl., ¶20; *U.S. Bank v. PHL Variable Life Ins.*, Case No. 12-cv-00877 (D. Minn.), Dkt. 1. |
| 163. At no time before U.S. Bank filed the ▮ Action did PHL ever affirm or deny coverage under the ▮ Policy. | Eriksson Decl., ¶21; Mosley Decl., ¶5, Ex. B. |
| 164. The ▮ Action is now set for trial on November 1, 2013. | *U.S. Bank v. PHL Variable Life Ins.*, Case No. 12-cv-00877 (D. Minn.), Dkt. 26. |
| **JACKSON POLICY** | |
| 165. On September 19, 2007, PHL issued a | Declaration of Karen Benjamin in |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| $1.8 million life insurance policy, Policy No. 97525116 ("Jackson Policy"), on the life of William F. Jackson. | Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Benjamin Decl."), ¶3, Ex. 1 at 8. |
| 166. Jackson died on December 14, 2011. | Benjamin Decl., ¶5. |
| 167. The Jackson Policy states that death benefits will be paid "[u]pon receipt of due proof of death of the Insured[.]" | Benjamin Decl., ¶3, Ex. 1 at 15. |
| 168. On January 23, 2012, the Jackson Trust submitted its claim under the Jackson Policy to PHL. | Benjamin Decl., ¶6, Ex. 2. |
| 169. PHL did not respond. | Benjamin Decl., ¶6. |
| 170. Over one month later, on February 28, 2012, the Jackson Trust sent a follow-up letter to PHL requesting payment. | Benjamin Decl., ¶¶6, 7. |
| 171. At that point, PHL advised the Jackson Trust for the first time that its claim would not be paid unless and until it completed a questionnaire ("Post-Claim Questionnaire"), insisting that the Post-Claim Questionnaire was necessary to ensure that the Jackson Policy was supported by an insurable interest. | Benjamin Decl., ¶8. |
| 172. The information elicited by the Post-Claim Questionnaire, however, seeks information beyond "due proof of | Benjamin Decl., ¶8, Ex. 4. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| death."  For example, the Post-Claim Questionnaire probed into the Jackson Trust's current beneficiaries. | |
| 173. The Jackson Trust objected to providing the Post-Claim Questionnaire.  However, PHL insisted that it be provided. | Benjamin Decl., ¶¶10, 11, 12. |
| 174. PHL sent a letter to the Jackson Trust on April 2, 2012 stating that a Post-Claim Questionnaire needed to be completed. | Benjamin Decl., ¶12, Ex. 5. |
| 175. The Jackson Trust responded by letter, dated April 12, 2012, and provided an affidavit containing facts sufficient to demonstrate the existence of an insurable interest. | Benjamin Decl., ¶13, Ex. 6; *see* Benjamin Decl., Ex. 6 at 61. |
| 176. PHL still did not pay the claim.  Instead, PHL responded via letter on May 7, 2012, stating that the Post-Claim Questionnaire was necessary to "confirm that an insurable interest existed at the time the Policy was issued" and that "absent your cooperation, [PHL] will be forced to review the circumstances surrounding the issuance of the Policy through alternative means." | Benjamin Decl., ¶14, Ex. 7.¶ |
| 177. On May 24, 2012, the Jackson Trust filed suit against PHL. | Benjamin Decl., ¶15. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| 178. In August, 2012, PHL and the Jackson Trust settled the claim. | Benjamin Decl., ¶16. |
| 179. The Jackson Trust, however, was never made whole:  In addition to the delay in payment, the Trust was forced to incur thousands of dollars in attorneys' fees and costs that it never recovered. | Benjamin Decl., 18.¶ |
| **CLOSE POLICY** ||
| 180. On September 11, 2007, PHL issued a $5 million life insurance policy, Policy No. 97523816 ("Close Policy"), on the life of William Close. | Declaration of John Collins in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Collins Decl."), ¶4, Ex. 1 at 11. |
| 181. ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ | Collins Decl., ¶4, Ex. 1 at 34. |
| 182. ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ | Collins Decl., ¶21. |
| 183. Ownership of the Close Policy was ultimately transferred to Bank of Utah. | Declaration of Joshua Eyre in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Eyre Decl."), ¶2. |
| 184. Mr. Close died on November 18, 2011. | Collins Decl., ¶6. |
| 185. The Close Policy states that death benefits will be paid "[u]pon receipt of due proof of death of the Insured[.]" | Collins Decl., ¶¶4,5, Ex. 1 at 18. |

- - 84 - -

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| 186. On January 4, 2012, Bank of Utah submitted its claim under the Jackson Policy to PHL. | Collins Decl., ¶8; Eyre Decl., ¶4. |
| 187. Two weeks later, at PHL's request, Bank of Utah sent PHL a notarized version of the claim form. | Collins Decl., ¶¶9, 10; Eyre Decl., ¶¶5, 6. |
| 188. PHL stated that the claim would be reviewed within seven business days— which did not happen. | Collins Decl., ¶11, Ex. 6; Eyre Decl., ¶7, Ex. 4. |
| 189. Throughout February and March 2012, Bank of Utah telephoned PHL on at least eight separate occasions to inquire about the status of its claim. | Collins Decl., ¶¶12-20; Eyre Decl., ¶¶8-14. |
| 190. PHL repeatedly advised Bank of Utah that the Close claim was still under review. | Collins Decl., ¶¶12, 15, 18-20, Exs. 8, 11-13; Eyre Decl., ¶8, 10, 12, 13, 14, Exs. 6, 8-10. |
| 191. On one occasion, PHL stated that the claim would be delayed due to its size. | Collins Decl., ¶13, Ex. 7; Eyre Decl., ¶9, Ex. 5. |
| 192. On another occasion, PHL stated that the claim was delayed in order to confirm that Mr. Close truly was "retired," as he had indicated on his policy application form. | Collins Decl., ¶16, Ex. 9; Eyre Decl., ¶11, Ex. 7. |
| 193. On May 24, 2012, PHL filed suit against Bank of Utah seeking declaratory relief on yet another theory, alleging that even | Collins Decl., ¶21; Eyre Decl., ¶15. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| though Ms. Close was the ultimate beneficiary of the Close Policy at the time it was issued, the Close Policy is void ab initio for lack of an insurable interest. | |
| 194. In all of its telephone calls with Bank of Utah, PHL had not raised this issue before it filed suit. | Collins Decl., ¶¶12-22; Eyre Decl., ¶16. |
| 195. On July 3, 2012, Bank of Utah filed a counterclaim for breach of contract and other claims.  PHL never affirmed or denied coverage under the Close Policy. The case is currently set for trial on October 1, 2013. | Collins Decl., ¶¶22- 24; Eyre Decl., ¶16. |
| 196. To this day, PHL has not paid Bank of Utah's claim. | Collins Decl., ¶25. |
| **LEVY POLICY** | |
| 197. On October 27, 2006, PHL issued a $5 million life insurance policy, Policy No. 97519119 ("Levy Policy"), on the life of Milton Levy. | Phillips Decl., Ex. 19 at 91. |
| 198. ███████████████████████ ██████████████████ ████████████████ | Phillips Decl., Ex. 21 at 117. |
| 199. Mr. Levy died on May 16, 2012. | Phillips Decl., 20. |
| 200. A month after Mr. Levy died, the Levy | Phillips Decl., Ex. 20. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| Trust notified PHL of Mr. Levy's death and provided PHL with a copy of his death certificate. | |
| 201. The Levy Trust telephoned PHL at least five times—on June 7, 12, 18, and 20 and July 2, 2012—to inquire about its claim. | Phillips Decl., Exs. 20, 22. |
| 202. On July 6, 2012, when PHL responded to the Levy Trust, PHL insisted that a Post-Claim Questionnaire be completed. | Phillips Decl., Ex. 35. |
| 203. ███████████████████████ | Phillips Decl., Ex. 23. |
| 204. After PHL failed to pay the claim or affirm or deny coverage, the Levy Trust filed suit alleging claims for breach of contract and unfair trade practices. | *Wells Fargo Bank, N.A., Trustee of the Milton Levy 2006-1 Ins. Trust v. PHL Variable Life Ins. Co.*, Case No. 3:12-cv-3760 (N.D. Tex.), Dkt. 1. |
| 205. The Levy Action is still pending; no trial date has been set. | *See generally Wells Fargo Bank, N.A., Trustee of the Milton Levy 2006-1 Ins. Trust v. PHL Variable Life Ins. Co.*, Case No. 3:12-cv-3760 (N.D. Tex.) Dkt. (reflecting no trial date). |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| **GRIGGS POLICY** | |
| 206. On October 26, 2006, PHL issued a $10 million life insurance policy, Policy No. 97519312 ("Griggs Policy"), on the life of Roberta Griggs. | Declaration of Elizabeth Ferry in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Ferry Decl."), ¶2, Ex. 1. |
| 207. ███████████████████ ███████████████████ ██████████████ Ownership of the Griggs Policy was ultimately transferred to the ESF QIF Trust ("ESF"). | Ferry Decl., ¶1. |
| 208. Ms. Griggs died on October 14, 2011. | Ferry Decl., ¶4. |
| 209. On November 16, 2011, ESF submitted its claim under the Griggs Policy to PHL. | Ferry Decl., ¶5, Ex. 2. |
| 210. PHL responded by demanding completion of a post-claim questionnaire and production of several categories of documents, including documents pertaining to the current beneficiary of the Griggs Policy and any previous transfers of interest in the Griggs Policy. | Ferry Decl., ¶6, Ex. 3. |
| 211. On March 15, 2012, PHL filed suit against ESF seeking declaratory relief on the ground that the Griggs Policy is void ab initio for lack of an insurable interest. | *PHL Variable Ins. Co. v. ESF QIF Trust*, Case No. 1:12-cv-00319-LPS (D. Del.), Dkt. 1. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| 212. ESF filed a counterclaim against Phoenix, on May 9, 2012, alleging, *inter alia*, that Phoenix committed fraud. | Ferry Decl., ¶8. |
| 213. To this day, PHL refuses to pay ESF's claim. | Ferry Decl., ¶7. |
| 214. The Griggs Action is still pending, and no trial date has been set. | *See generally PHL Variable Ins. Co. v. ESF QIF Trust*, Case No. 1:12-cv-00319-LPS (D. Del.) Dkt. Dkt. (reflecting no trial date). |
| **ADDITIONAL FACTS** | |
| 215. William Hager, a former State Insurance Commissioner, has opined that PHL's conduct with respect to the ▉▉▉ Policies – and each of the policies described above – was improper and unreasonable, and failed to meet acceptable levels of insurer conduct within the life insurance industry. | Hager Decl., ¶¶6-42. |
| 216. Plaintiff's expert, William Hager, also has opined that "PHL's pattern of resisting, denying, or delaying claims in circumstances similar to the ▉▉▉ Policies reflects more than just isolated incidents, is suspiciously systemic, and is beyond the norms of the insurance industry." | Hager Decl., ¶¶13-46. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| 217. In 2012, PHL's Audit Committee announced that PHL's financial statements for 2009, 2010, and 2011 (among others) would have to be restated due to so-called accounting "errors" that were deemed "material," and could result in a loss of as much as $94,000,000. | Phillips Decl., Ex. 36. |
| 218. In 2008, PHL's parent company, The Phoenix Companies, Inc. ("PNX"), incurred $1.3 billion in investment losses. | Phillips Decl., Ex. 37. |
| 219. Between September 19, 2008 and March 6, 2009, PNX's share price plummeted from $13.98/share to $0.29/share. | *See* Google Finance: http://www.google.com/finance?q=PNX&ei=rgEQUZjsA5C0iAKrHg (last accessed February 4, 2013). |
| 220. In 2009, 2010, and 2011, PHL resisted claims at a rate of 12.37%, 16.20%, and 20.87%, respectively. | Phillips Decl., Ex. 24 at 139-140, 142-143, 146-147. |
| 221. The industry average for resisting claims was only 0.58% in 2011. | Phillips Decl., Ex. 24 at 149. |
| 222. PHL receives a financial benefit from its delay in paying claims. | Plaintiff has sought discovery to specifically support this fact, including information about PHL's yield, but PHL has refused to produce it. Plaintiff has moved to compel. Dkt. 121, 121-1. |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| 223. In 2010 and 2011, PHL raised the cost of insurance (COI) rates on hundreds of its existing policies. | Eriksson Decl., ¶6. |
| 224. On November 16, 2011, U.S. Bank initiated a civil action against PHL for breach of contract and unfair competition.  (The "COI Action"). | Eriksson Decl., ¶7; filed as *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. CV11-09517 (C.D. Cal.), subsequently *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12-cv-06811-CM-JCF (S.D.N.Y.). |
| 225. In the COI Action, U.S. Bank alleged that PHL targeted its rate increases at institutional policyholders like Plaintiff and that PHL raised COI rates to force policyholders to lapse their policies so that PHL would never have to pay the death benefits on those policies while keeping the premiums paid to date | Eriksson Decl., ¶7; *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. CV11-09517 (C.D. Cal.), 12-cv-06811-CM-JCF (S.D.N.Y), Dkt. 47. |
| 226. Prior to the COI Action, Plaintiff submitted one life insurance claim to PHL, and the claim was paid in nine days. | Eriksson Decl., ¶8. |
| 227. ██████████████████ ██████████████ █████████████████ ███████████ | Phillips Decl., Ex. 30 at 166-167 (Entries re 007309, 003450, 004186). |

| Plaintiff's Additional Facts | Supporting Evidence |
|---|---|
| 228. ███████████████ ████████████████ ████████████████ ████████████ | *E.g.*, Phillips Decl., Ex. 27, 31. |
| 229. PHL has not produced prior versions of its claims policies and procedures, despite agreeing to in response to Plaintiff's discovery requests. | Plaintiff has moved to compel. Dkt. 121, 121-1. |
| 230. PHL's repeated bad-faith conduct has increased the expected costs of any life insurance policy and has significantly diminished the value of any PHL policy in particular. | *See* Eriksson Decl. ¶ 49. |

### III.   PLAINTIFF'S RESPONSE TO PHL'S CONCLUSIONS OF LAW

1.      CUTPA provides that "[a]ny person who suffers any ascertainable loss of money or properly, real or personal, as a result of the use or employment of a method, act, or practice prohibited [by the statute] may bring an action . . . to recover actual damages."  Plaintiff's CUTPA claim fails as a matter of law because it has not suffered recoverable "ascertainable harm."  Plaintiff has not suffered any damages because of the alleged delay in receipt of policy proceeds.

**CONTESTED.**  Plaintiff has suffered an "ascertainable loss" under Conn. Gen. Stats. § 42-110g(a) and legally cognizable damages resulting from the delay in receipt of policy proceeds.  "An 'ascertainable loss' means a measurable deprivation, and occurs '[w]henever a consumer has received something other than what he bargained for.  'That loss is ascertainable if it is measurable even though the precise amount of the loss is not known.'"  ███████ Order (citing *Hinchcliffe v.*

1  *Am. Motors Corp.*, 440 A.2d 810, 813-15 (Conn. 1981)).  "Under CUTPA, there is

2  no need to allege or prove the amount of the ascertainable loss.'"  *Id.*  Here,

3  Plaintiff was deprived of the Policies' proceeds for nearly four and half months

4  after the claim was submitted, well over the 40 day limit by which PHL was

5  required to affirm or deny coverage under the Policies.  During that time, PHL

6  deprived Plaintiff of the opportunity cost of the funds.  This satisfies the

7  ascertainable loss requirement.  *See United Techs. Corp. v. Am. Home Assur. Co.*,

8  118 F. Supp. 2d 174, 176-77, 181 (D. Conn. 2000) (finding "ascertainable loss"

9  where insurer's "strategy" of failing to conduct reasonable investigations and

10  delaying payment on claims caused plaintiff to lose both the opportunity to invest

11  those sums and the opportunity to obtain a "prompt denial that could be

12  immediately tested by litigation").  The attorneys' fees necessarily incurred by

13  Plaintiff in prosecuting this action to secure the benefits of the ████████ Policies

14  are also damages that satisfy the "ascertainable loss" requirement.  *See Lees v.*

15  *Middlesex Ins. Co.*, 219 Conn. 644, 654 (1991) ("[T]he court may award punitive

16  damages and reasonable attorneys' fees for a violation of CUTPA.  These []

17  damages [] could be awarded even if the plaintiff's principal damages were proven

18  to be only the amount of her loss covered by the policy."); *see also Steadfast Ins.*

19  *Co. v. Purdue Frederick Co.*, 2006 WL 1149189 , at *2 (Conn. Super. Ct. April 11,

20  2006).

21  2.     Plaintiff is not entitled to punitive damages under CUTPA. Plaintiff

22  has no evidence that PHL's conduct was "recklessly indifferent, intentional and

23  wanton, malicious, violent, or motivated by evil."

24      **CONTESTED.**  Plaintiff has proffered evidence demonstrating that PHL

25  engaged in a consistent pattern of intentional misconduct in the handling of claims

26  under large life insurance policies.  Among other things, PHL intentionally ignored

27  Plaintiff and other policyholders, strung them along for weeks or months while

28  PHL conducted a pretextual or one-sided investigation solely to find an excuse not

1   to pay the claim or delay payment of the claim or failed to a conduct reasonable

2   investigation or any investigation at all, repeatedly and consistently failed to affirm

3   or deny coverage within a reasonable time on claims submitted on the ███████

4   Policies, as well as six other separate claims, engaged in prohibited post-claims

5   underwriting, manufactured various pretexts for not paying or delaying payment on

6   claims, and retaliated against policyholders for enforcing their legal rights against

7   PHL.  Moreover, PHL was motivated by its own financial needs and placed its own

8   interest far above those of its policyholders.  This type of blatant, wanton and

9   willful misconduct meets the threshold requirements for the award of punitive

10  damages under CUTPA/CUIPA.  *See United Techs. Corp. v. Am. Home Assur. Co.*,

11  118 F. Supp. 2d 181, 176-77 (D. Conn. 2000) (sufficient evidence for grant of

12  punitive damages where insurer's pattern of failure to perform reasonable

13  investigation and delay in payment of claims placed insured in "claims 'limbo'").

14  Plaintiff's expert, a former State Insurance Commissioner, has opined that PHL's

15  conduct on seven claims on eight policies during a seven-month period was

16  unreasonable and improper and violated acceptable standards in the life insurance

17  industry.

18  3.      PHL does not have a "general business practice" of unfair claims

19  handling.  In order to prevail under CUTPA, it must be shown that the wrongdoing

20  is engaged in as a matter of habit or custom and is "prevalent," "usual," or

21  "widespread."  Notwithstanding whether PHL engages in unlawful conduct under

22  CUTPA, the incidences of alleged "unfair claims handling" are isolated and

23  sporadic and do not constitute a general business practice under CUTPA.

24          **CONTESTED.**  Anything "more than a single act of wrongful conduct" is

25  sufficient to rise to the level of a general business practice.  *U.S. Bank Nat. Ass'n v.*

26  *PHL Variable Ins. Co.*, No. 12-03047, Order at 3 (C.D. Cal. Nov. 15, 2012) [Dkt.

27  91] ("██████ Order") (two or more cases have been found sufficient to plead a

28  CUIPA violation and holding that at least three other cases Plaintiff identified in the

1   ████ Action were sufficient); *Sambuco v. Aetna Cas. & Sur. Co.*, No CV89

2   0100647S, 1991 WL 86160, at *2 (Conn. Super. Ct. May 14, 1991); *Cole v. Aetna*

3   *Life & Cas. Co.*, 70 F. Supp. 2d 106, 114 (D. Conn. 1999) (denying insurer's

4   motion to dismiss where two instances of wrongful conduct were sufficient to

5   sustain a CUTPA claim).  Plaintiff has met this standard by presenting evidence, in

6   the form of documentary evidence, testimony, and affidavits that PHL engaged in

7   unfair claims handling on at least six claims besides the claim on the ████

8   Policies.  *United Techs. Corp. v. Am. Home Assur. Co.*, 118 F. Supp. 2d 181,185-86

9   (D. Conn. 2000); *Vincoli v. Hartford Underwriters Ins. Co.*, No.

10   FSTCV095009591S, 2009 WL 4845768, at *4 (Conn. Super. 2009).  In each of

11   these claims, Plaintiff has proffered evidence that PHL used the same or similar

12   bad-faith tactics to avoid or delay payment of claims:  ignoring policyholder

13   inquiries, manufacturing a pretext for having to "investigate" the claim; conducting

14   a sham investigation; dragging out the claims process by failing to respond to

15   policyholder inquiries, making demands for unnecessary documents, and ultimately

16   forcing the policyholder to sue PHL to obtain benefits on the policy, only paying

17   the claim once faced with a reckoning.  Plaintiff's expert, William Hager, has

18   opined that PHL's pattern of resisting, denying, or delaying claims in circumstances

19   similar to the ████ policies reflects more than just isolated incidents, is

20   suspiciously systemic, and is beyond the norms of the insurance industry.

21   4.      PHL does not engage in unfair claims handling under CUTPA.  In

22   order to prevail under CUTPA, a defendant must violate an enumerated practice

23   under CUTPA/CUIPA.  PHL has not been shown to have violated CUTPA.

24        **CONTESTED.**  PHL has engaged in at least four CUIPA violations in

25   handling the claim on the Doe Policies.  First, PHL violated Conn. Gen. Stats. §

26   38a-816(6)(b), which requires an insurer acknowledge and act with reasonable

27   promptness upon communications with respect to claims.  Following the

28   submission of Plaintiff's claim, PHL did not communicate with Plaintiff at all until

1  Plaintiff commenced this action on April 6, 2012.  This was more than 40 days after

2  PHL was statutorily required to affirm or deny coverage under the Policies pursuant

3  to Cal. Code Regs., tit. 10, § 2695.7(b).  Second, PHL violated Conn. Gen. Stats. §

4  38a-816(6)(e) by failing to affirm or deny coverage within a reasonable time after

5  proof of loss statements were completed.  The claim was submitted on February 23,

6  2012 and PHL did not affirm or deny coverage until more than 40 days later.

7  Third, PHL failed to "promptly provide a reasonable explanation of the basis in the

8  insurance policy in relation to the facts or applicable law for denial of a claim or for

9  the offer of a compromise settlement," in violation of Conn. Gen. Stats. § 38a-

10  816(6)(n).  PHL did not provide a reason at all until Plaintiff sued PHL.  Even then,

11  PHL's excuse was unreasonable, false, and pretextual.  Finally, PHL did not

12  conduct a reasonable investigation based on all of the available information, in

13  violation of Conn. Gen. Stats. § 38a-816(6)(d).  In fact, PHL conducted virtually no

14  investigation at all.  PHL's failure to communicate with Plaintiff, coupled with the

15  suspicious lack of evidence supporting its efforts to conduct an investigation,

16  supports the conclusion that PHL intentionally sought to delay the resolution of the

17  claim.  *See United Techs. Corp. v. Am. Home Assur. Co.*, 118 F. Supp. 2d 181, 185-

18  86 (D. Conn. 2000) (insurer's "minimal activity" in claim investigation and its

19  failure to communicate any coverage decision, resulted in a state of "perpetual

20  claims limbo," and entitled trier of fact to conclude insurer was engaged in a

21  purposeful effort to prevent or postpone definitive resolution of the claims).

22  5.     Plaintiff's claim for breach of the Implied Covenant of Good Faith and Fair

23  Dealing is governed by the law of the State of Connecticut.

24      **CONTESTED.**  California law applies to this claim.  First, PHL, in multiple

25  prior litigations of the same type, has consistently argued that California law should

26  apply.  As a result, PHL is judicially estopped from now arguing that Connecticut

27  law should apply.  *See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,

28

1    692 F.2d 983, 998-1000 (9th Cir. 2012); *Johnson v. Oregon*, 144 F.3d 1361, 1368

2    (9th Cir. 1998).

3        Further, even if PHL were not judicially estopped, under California's choice-

4    of-law analysis, California law would apply in this case.  Under California's

5    choice-of-law analysis, "California law will be applied unless it conflicts with the

6    foreign law and both California and the foreign jurisdiction have significant

7    interests in having their law applied." *Trans Meridian Trading Inc. v. Empresa*

8    *Nacional de Comercializacion de Insumos*, 829 F.2d 949, 954 (9th Cir. 1987).

9    "Where significant interests conflict, the court must assess the comparative

10   impairment of each state's policies." *Id.*

11       California law does not conflict with Connecticut law regarding an insurer's

12   breach of the implied covenant of good faith and fair dealing.  To prove bad faith

13   under California law, a plaintiff must prove that the insurer unreasonably or without

14   proper cause denied or delayed payment of policy benefits. *See Gruenberg v. Aetna*

15   *Ins. Co.*, 9 Cal. 3d 566, 579 (1973).  *See McCulloch v. Hartford Life & Acc. Ins. Co.*,

16   363 F. Supp. 2d 169, 177-78 (D. Conn. 2005) (noting that under Connecticut law, a

17   plaintiff must prove that the insurer "engaged in conduct designed to mislead or

18   deceive [*i.e.* acted without proper cause], or that it neglected or refused to fulfill

19   some duty or contractual obligation not prompted by an honest mistake [*i.e.* acted

20   unreasonably).  California also has a legitimate interest in applying California bad

21   faith law because the policies were issued in California and are governed by

22   California law.

23   6.    PHL has not breached the Implied Covenant of Good Faith and Fair Dealing.

24   Plaintiff has no evidence that the dispute regarding payment of policy proceeds was

25   not genuine and maintained in good faith.

26       **CONTESTED.**  To begin with, Plaintiff is not required to prove that PHL's

27   delay in paying the claim on the ███████ Policies was not based on genuine belief

28   of a dispute, and PHL's "genuine belief" is not a defense to Plaintiff's claim.  The

"genuine dispute" doctrine applies only to a dispute concerning whether the claim

is covered.  *See, e.g., Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir.

2001) (explaining that "a bad faith claim can be dismissed on summary judgment if

the defendant can show that there was a genuine dispute *as to coverage . . . .*");

*Chateau Chamberay Homeowners Assoc. v. Associated Int'l Ins. Co.*, 90 Cal. App.

4th 335, 347 (2001) (stating that "an insurer denying or delaying payment of policy

benefits due to the existence of a genuine dispute with its insured as to the existence

of coverage liability or the amount of the insured's coverage claim is not liable in

bad faith even though it might be liable for breach of contract.").  However, "when

it is undisputed that the insurer is obligated to pay the claim and 'the only question

is as to whom[,] the [insurer] cannot rely upon a [genuine dispute] to avoid the

general proposition that delay in paying an admittedly payable claim may be

actionable." *Stonebreaker v. Guardian Life Ins. Co.*, No. 11CV797 WQH (WVG),

2012 WL 621503, at *10 (S.D. Cal. Feb 23, 2012) (quoting *United Investors Life

Ins. Co. v. Grant*, Case No. 2:05-cv1716-MCE-DAD, 2007 WL 521804, at *2 n.7

(E.D. Cal. Feb. 15, 2007)).  The issue in this case is not a dispute over coverage, but

rather an issue of who was entitled to receive the benefits of the policy; hence, no

genuine dispute need be shown.

Moreover, "[d]enial or delay in paying benefits gives rise to tort damages"

where the denial or delay was unreasonable.  *Wilson v. 21st Century Ins. Co.*, 42

Cal. 4th 713, 723 (2007); *accord United Investors Life Ins. Co. v. Grant*, 387 Fed.

App'x 683, 687 (9th Cir. 2010); *Nasiri v. Allstate Indem. Co.*, 41 Fed. App'x 76, 79

(9th Cir. 2002).  Plaintiff has produced evidence that PHL was unreasonable in

delaying payment of the claim.  For example, there is evidence that PHL did not

investigate its third-party beneficiary claim in good faith and filed an interpleader

without first conducting an investigation, all in contravention of PHL's own

policies—this is evidence of unreasonableness to support a claim for breach of the

1   implied covenant of good faith and fair dealing.  *See United Investors Life Ins.*, 387
2   Fed. App'x at 687-88.
3         There is also evidence that PHL failed to reasonably communicate with
4   Plaintiff, which also supports a breach of the implied covenant of good faith and
5   fair dealing.  *See Delgado v. Heritage Life Ins. Co.*, 157 Cal. App. 3d 262, 278
6   (1984).  The evidence also suggests that PHL's concern about liens, expressed by
7   outside counsel after Plaintiff sued PHL, was pretextual.  ███████████████
8   █████████████████████████████████████████████████████████
9   ████████████████████████████████  which directly contradicts the
10  statement in his affidavit that he did not pay the claim due to the previously released
11  liens.
12        Moreover, there is substantial evidence that PHL failed to conduct a
13  reasonable investigation into the claim.  This also supports a breach of the implied
14  covenant of good faith and fair dealing.  *See Wilson*, 42 Cal. 4th at 726 (reversing
15  summary judgment where triable issues existed as to whether insurer "thoroughly
16  investigated and fairly evaluated the claim"); *Uberti v. Lincoln Nat'l Life Ins. Co.*,
17  144 F. Supp. 2d 90, 103-04 (D. Conn. 2001).
18        A reasonable juror could also conclude from the evidence that PHL delayed
19  paying the claim on the ██████ Policies as part of its efforts to mitigate prior and
20  potential future losses and in retaliation for Plaintiff filing the COI Action.  Such
21  wrongful motives would constitute bad faith.
22  7. Plaintiff has suffered no damages for an alleged breach of the Implied Covenant
23  of Good Faith and Fair Dealing.
24        **CONTESTED.**  The damages that Plaintiff has suffered—for lost
25  opportunity/capital costs or time value of money and attorney's fees—are all
26  ascertainable and legally available damages under a breach of the implied covenant
27  of good faith and fair dealing.  *See McDowell v. Union Mut. Life Ins. Co.*, 404 F.
28  Supp. 136, 141 (C.D. Cal. 1975) (California law holds that "insurance companies

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES
CV-12-03046 RGK (MRWx)

1  that erroneously withhold payments from their insureds, and deprive them of the

2  security they bargained for, must be held to account for the consequences of their

3  conduct."); *Fischer v. Valley Forge Life Ins. Co.,* 2003 WL 21356833, at *6 (Cal.

4  Ct. App. June 12, 2003) (where an insurer unreasonably delays payment of a claim,

5  the insurer is responsible for prejudgment interest of 10% from the date that

6  payment reasonably should have been made); *see also Wells Fargo Bank, N.A. v.*

7  *FSI, Fin. Solutions, Inc.,* 196 Cal. App. 4th 1559, 1575 (2011) (noting that damages

8  are appropriate "based on a customer's exchange of a favorable credit arrangement

9  for a less favorable credit arrangement."); *Comunale v. Traders & Gen. Ins. Co.,* 50

10  Cal. 2d 654, 659 (1958); *M.P.H. Recovery LLC v. Bank of Am., N.A.,* 2006 WL

11  1828464, at *4 (Conn. Super. Ct. June 16, 2006).  In this case, all of the damages

12  that Plaintiff has suffered are a result of PHL's "unreasonable delay in paying

13  benefits" and the resulting breach of the implied covenant of good faith and fair

14  dealing.

15  8. To the extent Plaintiff's claim for an alleged breach of the Implied Covenant of

16  Good Faith and Fair Dealing is governed by California law, Plaintiff cannot recover

17  attorney's fees because they were not reasonably incurred.

18      **CONTESTED.**   In California, "[w]hen an insurer's tortious conduct

19  reasonably compels the insured to retain an attorney to obtain the benefits due

20  under a policy, it follows that the insurer should be liable in a tort action for that

21  expense."  *Brandt v. Superior Court*, 37 Cal. 3d 813, 817 (1985); *see also*

22  *McGregor v. Paul Revere Life Ins. Co.*, 369 F.2d 1099, 1100-01 (9th Cir. 2004).

23  Further, "Connecticut courts have found attorneys fees as a potential component of

24  damages.  The law is well established that legal expenses, including attorneys' fees,

25  may be recovered as damages when they are incurred as a result of a party's

26  wrongful conduct."  *Fountain Pointe, LLC v. Calpitano*, No. CV106004936, 2012

27  WL 1435170, at *3 (Conn. Super. Ct. Apr. 2, 2012) (citing *Celentano v. Oaks*

28  *Condo. Ass'n*, 265 Conn. 579, 616-18, 830 A.2d 164 (Conn. 2003) (affirming

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES
CV-12-03046 RGK (MRWx)

1     finding that plaintiffs breached their duty of good faith and fair dealing, for which

2     the trial court awarded defendants damages consisting exclusively of "legal

3     expenses.")).  Hence, attorney's fees in this action for a breach of the implied

4     covenant of good faith and fair dealing are appropriate.

5         There is absolutely no evidence at all that the attorneys' fees in this action

6     were not "reasonably incurred."  Attorneys' fees are not "reasonably incurred"

7     when there is evidence of padding, duplicative work, an unnecessary extension of

8     the litigation, or other unethical legal conduct.  *See Karapetian v. Kia Motors Am.*,

9     751 F. Supp. 2d 1139, 1142-43 (C.D. Cal. 2010).  Not only does PHL provide no

10    evidence of this nature, they would be completely unable to show any evidence of

11    this nature.  Plaintiff's attorneys have taken only the reasonable and ethical steps

12    necessary to make the Plaintiff whole.

13    9.      PHL is entitled to summary judgment against each of Plaintiff's claims.

14         **CONTESTED.**  *See* Plaintiff's responses to PHL's Conclusion of Law Nos.

15    1-8, above, and Plaintiff's Memorandum of Points and Authorities in Support of

16    Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

17    Dated: February 4, 2013        ORRICK, HERRINGTON & SUTCLIFFE LLP

18

19                         By: _____

20                            KHAI LEQUANG

                                Attorneys for Plaintiff

21                      U.S. BANK NATIONAL ASSOCIATION,

                     AS SECURITIES INTERMEDIARY FOR

22                             LIMA ACQUISITION LP

23

24

25

26

27

28